**Honorable Ronald B. Leighton**

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| PATTY THOMAS, JENNIFER DOWLING, KELLY DYE, JR., ROBERT GIBSON, LAURA WISBY, DAVID RINK, JUDY BRASHEAR, DAVID MASTENBROOK, ARMOND MCWELL, SOLIMAN SAYEDI, and BRUCE JOHNSON, individually and on behalf of all other similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>KELLOGG COMPANY and KELLOGG SALES COMPANY,<br><br>Defendants. | CASE NO.: 3:13-cv-05136-RBL<br><br>**KELLOGG COMPANY AND KELLOGG SALES COMPANY'S FIRST MOTION FOR PROTECTIVE ORDER**<br><br>NOTE ON MOTION CALENDAR:<br>April 15, 2016<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

I. RELEVANT BACKGROUND. ................................................................................... 1

II. CERTIFICATION THAT KELLOGG HAS ENGAGED IN A GOOD FAITH MEET AND CONFER CONFERENCE WITH PLAINTIFFS IN AN EFFORT TO RESOLVE KELLOGG'S OBJECTIONS TO PLAINTIFFS' MOST RECENT 30(B)(6) DEPOSITION NOTICE. ........................................................................... 3

III. ARGUMENT. ............................................................................................................... 4

    a. STANDARD FOR GRANTING PROTECTIVE ORDER. ............................... 4
    b. THE "MATTERS FOR EXAMINATION" DESCRIBED BY PLAINTIFFS SHOW GOOD CAUSE FOR THE ISSUANCE OF A PROTECTIVE ORDER. ............................................................................................................. 5

        1. Plaintiffs Have Already Covered The Matters For Examination. .................. 5
        2. Plaintiffs Have Not Described the Matters for Examination With Reasonable Particularity. ................................................................................ 8
        3. The Matters For Examination Seek Information Outside The Scope of Rule 26. ..................................................................................................... 9

    c. PLAINTIFFS' DEMAND FOR A TWO-DAY DEPOSITION PROVIDES GOOD CAUSE FOR THE ENTRY OF A PROTECTIVE ORDER. ..................... 11

IV. CONCLUSION. ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Federal Cases**

*Alexander v. F.B.I.*,
    188 F.R.D. 111 (D.D.C. 1998) ...................................................................................................9

*Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*,
    67 F.3d 766 (9th Cir. 1995) .......................................................................................................4

*Fid. Mgmt. & Research Co. v. Actuate Corp.*,
    275 F.R.D. 63 (D. Mass. 2011) ...............................................................................................10

*Fox v. State Farm Ins. Co.*,
    No. C15-535RAJ, 2016 WL 304784 (W.D. Wash. Jan. 26, 2016) ..........................................10

*Hardin v. Wal-Mart Stores, Inc.*,
    No. 08-CV-0617 AWI BAM, 2011 WL 11563217 (E.D. Cal. Dec. 2, 2011) ..............................9

*Little v. City of Seattle*,
    863 F.2d 681 (9th Cir. 1988) .....................................................................................................5

*Murphy v. Kmart Corp.*,
    255 F.R.D. 497 (D.S.D. 2009) ...................................................................................................9

*United States v. Columbia Broadcasting System, Inc.*,
    666 F.2d 364 (9th Cir. 1982) .....................................................................................................5

*Watkins v. Infosys*,
    No. C14-247-JCC, 2015 WL 1424107 (W.D. Wash. Mar. 27, 2015) .....................................12

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................................1, 2
Fed. R. Civ. P. 26(c) .........................................................................................................................1, 4
Fed. R. Civ. P. 26(c)(1)(D) ...................................................................................................................5
Fed. R. Civ. P. 30(b)(1) ........................................................................................................................2
Fed. R. Civ. P. 30(b)(6) ..................................................................................................................2, 12
Fed. R. Civ. P. 30(d)(1) ..................................................................................................................8, 12
Local Civil Rule 7 .................................................................................................................................1
Local Civil Rule 26 ...............................................................................................................................1
Local Civil Rule 26(c)(1) .....................................................................................................................3

**Regulations**

29 C.F.R. § 541.104 ............................................................................................................................11

KELLOGG COMPANY AND KELLOGG
SALES COMPANY'S FIRST MOTION FOR
PROTECTIVE ORDER (3:13-cv-05136-
RBL)

GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814
Telephone:  (916) 442-1111

ii

**Other Authorities**

8A Fed. Prac. & Proc. Civ. § 2104.1 (3d ed.) .......................................................................................12

Advisory Comm. Notes, Fed. R. Civ. P. 26 (2015)...................................................................8, 11

Advisory Comm. Notes, Fed. R. Civ. P. 26(c) (1970) ..................................................................5

KELLOGG COMPANY AND KELLOGG SALES COMPANY'S FIRST MOTION FOR PROTECTIVE ORDER (3:13-cv-05136-RBL)

GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814
Telephone: (916) 442-1111

iii

Pursuant to Federal Rule of Civil Procedure 26(c) and Local Civil Rules 7 and 26, Defendants Kellogg Company and Kellogg Sales Company ("Kellogg") move for a protective order in response to Plaintiffs' 30(b)(6) deposition notice dated March 29, 2016. Plaintiffs' notice disregards the confines of the Federal Rules of Civil Procedure in several respects. First, it seeks duplicative/repeat corporate testimony. Plaintiffs have already deposed Kellogg on the vast majority of the listed topics. Second, the notice is incredibly burdensome, failing to describe most topics with any reasonable particularity and asking for information far outside the scope of Rule 26. Indeed, the notice describes 75 separate topics (including subparts) on which Plaintiffs seek to depose Kellogg. The defects with the notice establish good cause for a protective order. If Plaintiffs desire to proceed at all, the Court should direct them to serve an amended 30(b)(6) deposition notice that reasonably narrows and clarifies the remaining topics for deposition, leaving out topics already covered in prior sessions. Moreover, because this is not Plaintiffs' first, second or even third 30(b)(6) deposition, Kellogg also asks that the Court limit Plaintiffs to one additional corporate deposition, to cover no more than ten *new* matters, and to last no more than 7 hours in one day. After all, Plaintiffs have already deposed seven Kellogg representatives (in addition to 13 other Kellogg employees). In support of this Motion, Kellogg states as follows:

## I.     RELEVANT BACKGROUND.

This is a "hybrid" wage and hour misclassification case. Plaintiffs Patty Thomas, Jennifer Dowling, Kelly Dye, Jr., Robert Gibson, Laura Wisby, David Rink, Judy Brashear, David Mastenbrook, Armond McWell, Soliman Sayedi, and Bruce Johnson (the "Named Plaintiffs") purport to represent both (a) a nationwide collective group, brought pursuant to the Fair Labor Standards Act ("FLSA"), and (b) 11 different state-law classes brought pursuant to Fed. R. Civ. P. 23 and based on the state law of nine separate states. (*See* Third Amended Complaint, Doc. 216, "TAC;" *see also* Stipulated Dismissal of Plaintiffs' Fourteenth Cause of Action, Doc. 351, filed 3/15/2016). Plaintiffs allege that Kellogg incorrectly classified their positions as sales representatives as exempt from the FLSA and state wage laws and failed to pay them overtime wages. (*See generally* TAC, Doc. 216). On January 9, 2014, the Court conditionally certified this case as a collective action. (*See* Order Conditionally Certifying FLSA Collective Action, Doc.

KELLOGG COMPANY AND KELLOGG
SALES COMPANY'S FIRST MOTION FOR
PROTECTIVE ORDER (3:13-cv-05136-
RBL) - 1

GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814
Telephone: (916) 442-1111

166).  The Named Plaintiffs, however, have not yet moved for class certification pursuant to Rule 23.

To date, Plaintiffs have taken 20 depositions of 15 different witnesses.  They took 13 individual depositions pursuant to Fed. R. Civ. P. 30(b)(1) and seven corporate depositions (*i.e.*, depositions of Kellogg) pursuant to Fed. R. Civ. P. 30(b)(6).[1]

Plaintiffs' notice of the first corporate deposition purported to focus on "issues pertaining to FLSA conditional certification."  (*See* 9/4/2013 Notice, **Exhibit A**, the "2013 Notice").  Kellogg objected to many of the topics described in this notice.  (*See* 10/4/2013 Letter, **Exhibit B**).  Subject to these objections, however, Kellogg designated Human Resources Director Linda Bussell as its corporate representative.  Plaintiffs deposed Ms. Bussell on October 9, 2013.

Plaintiff's second corporate deposition notice purported to focus on "issues pertaining to electronically stored information."  (*See* 6/13/2014 Notice, **Exhibit C**, the "2014 ESI Notice").  Kellogg objected to many of the topics described in this deposition notice as well.  (*See* 6/16/2014 Letter, **Exhibit D**).  Subject to these objections, however, Kellogg designated Ginger Clifton, Steven Young, James Dombkiewicz and John Whitaker as corporate designees.  Plaintiffs deposed these designees on June 19, 2014 and January 14, 2015, continuing Mr. Dombkiewicz's deposition on August 12, 2015.

Finally, corporate deposition notice number three − confusingly noticed pursuant to Fed. R. Civ. P. 30(b)(1), but also listing specific corporate matters for deposition − purported to focus on "Kellogg's work and/or sales with Wal-Mart and Sam's."  (*See* 12/18/2014 Notice, **Exhibit E**, the "2014 Wal-Mart Notice").  Kellogg objected to this deposition notice on several grounds, but ultimately notified Plaintiffs that Kellogg would designate Scott Salmon on the topics Plaintiffs identified.  (*See* 4/14/2015 Letter, **Exhibit F**).  Plaintiffs deposed Mr. Salmon on April 21, 2015.  Because Plaintiffs did not exhaust seven (7) hours deposing Mr. Salmon, they have noticed his continued deposition for April 26, 2016.

In addition to the corporate designees identified above, Plaintiffs have deposed nine fact

---

[1] Plaintiffs confusingly noticed one corporate deposition pursuant to Fed. R. Civ. P. 30(b)(1).  Plaintiffs deposed designee Scott Salmon based on this notice on April 21, 2015.

| KELLOGG COMPANY AND KELLOGG SALES COMPANY'S FIRST MOTION FOR PROTECTIVE ORDER (3:13-cv-05136-RBL) - 2 | GREENBERG TRAURIG, LLP<br>1201 K Street, Suite 1100<br>Sacramento, CA 95814<br>Telephone:  (916) 442-1111 |
|---|---|

witnesses, all of whom are current Kellogg employees. These include: Bradley Chew (on 2/24/2015 and 1/13/2016), Cheryl O'Connell (on 2/25/2015), Lisha Pennington (on 3/10/2015 and 1/13/2016), Randy Nilles (on 3/11/2015), Nathaniel Christopher Kelly (on 3/12/2014 and 1/14/2016), James Kaminski (on 3/13/2015 and 1/13/2016), Kim Reed (on 1/14/2016), Logan Groulx (on 1/15/2016), and Keith Oldre (on 1/20/2016)

In late 2015, Plaintiffs served another 30(b)(6) deposition notice, causing another set of objections from Kellogg. Counsel for Plaintiffs and counsel for Kellogg met and conferred several times over the next few months, and Plaintiffs revised their notice twice during the course of these discussions. On March 29, 2016, Plaintiffs served the third iteration of their corporate deposition notice. (**Exhibit G**, the "2016 Notice"). Kellogg, however, maintains its objections, and the final 2016 Notice does not cure the defects that Kellogg has identified in discussions to date. (*See* **Exhibit H**, Chart summarizing matters noticed for deposition and Kellogg's objections thereto). At this point, the parties have reached an impasse.

## II. CERTIFICATION THAT KELLOGG HAS ENGAGED IN A GOOD FAITH MEET AND CONFER CONFERENCE WITH PLAINTIFFS IN AN EFFORT TO RESOLVE KELLOGG'S OBJECTIONS TO PLAINTIFFS' MOST RECENT 30(B)(6) DEPOSITION NOTICE.

Pursuant to Local Civil Rule 26(c)(1), Kellogg certifies, through its undersigned counsel, that it has engaged in a series of good-faith meet and confer conferences with Plaintiffs in an effort to resolve Kellogg's objections to Plaintiffs' most recent 30(b)(6) deposition notice (Ex. G). In fact, Plaintiffs served at least two earlier versions of the 2016 Notice, which Kellogg objected to and which the parties discussed on several telephone conferences over the past several months.[2] Kellogg objected to several of the topics Plaintiffs have identified in noticing corporate depositions in the past (*see* Exs. B, D, and F), and Kellogg continues to maintain these objections (*see* Ex. H).

Plaintiffs, however, have been dismissive of Kellogg's objections. For example, during the first 30(b)(6) deposition Plaintiffs took, Kellogg's counsel raised an objection that had been made

---

[2] The parties have found telephonic "meet and confer" efforts to be effective in the past. Moreover, As Plaintiffs' lead counsel is in New York, and Defendants' lead counsel is in Philadelphia, in-person meet and confer would place undue hardship on all sides without adding to the quality of the communication.

by letter prior to the deposition. Counsel for Plaintiff responded:

> Frankly, I find these objection letters to be quite amusing and of very little import because under the Federal Rules the thing is that I get to designate the topics and ask whatever questions I want and you can either answer them, make an objection as to form, or refuse to have your client testify, in which case they – you know, you run the risk of a stern lecture and possibly sanctions. So the letter to me doesn't insulate you in the process, in my opinion.

(Transcript of Deposition of Linda Bussell, Exhibit I, at 65:10-21).

Despite Plaintiffs' dismissal of Kellogg's objections to their 30(b)(6) deposition notices in the past, Kellogg has met and conferred with Plaintiffs on the 2016 Notice (which itself was served after meet and confer sessions, eliminating four topics, though Plaintiffs have recently sought to add additional topics). Most recently, counsel for the parties participated in conference calls on Tuesday, March 22, 2016, Wednesday, March 23, 2016, Friday, April 1, 2016, and Monday, April 4, 2016 in an effort to reach agreement on the length and content of the deposition. These discussions did result in a slightly shorter 30(b)(6) notice, but Plaintiffs remain insistent on an additional two full days of deposition. Kellogg disagrees that two more days are appropriate.

### III. ARGUMENT.

#### a. STANDARD FOR GRANTING PROTECTIVE ORDER.

Kellogg objects to the 2016 Notice because: (1) its topics are repetitive (rendering the notice harassing, overbroad and unduly burdensome); (2) many topics are not described with reasonable particularity; and (3) yet other topics seek information outside the scope of Rule 26. Contrary to Plaintiffs' counsel's view, Kellogg does have recourse with respect to these objections. *See, e.g.*, *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 771 (9th Cir. 1995) (stating if party objects to 30(b)(6) notice, it may seek protective order). Kellogg's objections provide good cause for the entry of a protective order.

A court may issue a protective order "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense" upon a showing of "good cause." Fed. R. Civ. P. 26(c). Protective orders act as a safeguard for parties and other persons in light of the otherwise broad reach of discovery. *See* Fed. R. Civ. P. 26(c), Advisory Comm. Notes (1970);

*United States v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 368-369 (9th Cir. 1982).  Rule 26 states that courts may issue protective orders, among other things, "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D).  Courts in the Ninth Circuit have wide discretion to manage discovery.  *See, e.g.*, *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

### b. THE "MATTERS FOR EXAMINATION" DESCRIBED BY PLAINTIFFS SHOW GOOD CAUSE FOR THE ISSUANCE OF A PROTECTIVE ORDER.

#### 1. Plaintiffs Have Already Covered The Matters For Examination.

A comparison of Plaintiffs' 2016 Notice to Plaintiffs' 2013 Notice and Plaintiffs' 2014 Wal-Mart Notice reveals that Plaintiffs have already covered many topics at issue. For example:

| Matter As Described in 2016 Notice, Ex. G | Matter As Described in 2013 Notice, Ex. A | Matter As Described in 2014 Wal-Mart Notice, Ex. E |
|---|---|---|
| Kellogg's (and its Morning Foods and Snacks divisions) business purposes during the period covered by this suit. (¶ 1 of 2016 Notice). | Kellogg's business purpose and activities. (¶ 3 of 2013 Notice). | NA |
| Kellogg's organizational structure and divisions for the period covered by this suit.  (¶ 2 of 2016 Notice). | Kellogg's organizational structure and divisions.  (¶ 4 of 2013 Notice). | Kellogg's organizational structure and divisions as it applies to Wal-Mart and Sam's.  (¶ 1 of 2014 Wal-Mart Notice). |
| The process by which Kellogg sells Kellogg's products to stores/chains that are serviced by TMs and RSRs, including:<br>a. Demand sensing;<br>b. Demand planning;<br>c. Forecast predictions;<br>d. Making products;<br>e. Negotiations with chains/stores.<br>f. The role of District Managers and Zone Managers;<br>g. The role of Account Managers, Account Executives, or similar positions;<br>h. The terms of agreements under which Kellogg obtains commitments for shelf space, facings, displays, floor space, quantity of product to be delivered to it customers, and stock room space;<br>i. Agreements concerning auto ships, autodocs, buy downs, specials, | The sales process by which Kellogg sells product to grocery stores and similar chain stores, including but not limited to:<br>a. The role of Account Managers or similar positions;<br>b. The terms of agreements under which Kellogg obtains commitments for shelf space, facings, displays, and stock room space;<br>c. How Kellogg and grocery stores and chains handle specials, discounts, deals and coupons;<br>d. How Kellogg and grocery stores and chains handle returns and/or credits;<br>e. The process by which Kellogg product is ordered for delivery to such stores (including any changes | The process by which Kellogg sells snack and morning foods products to Wal-Mart and Sam's, including but not limited to:<br>a. The development and contents of any agreements with Wal-Mart and Sam's, including master agreements and contracts/agreements that are in the possession of Kellogg's National Account Executives.<br>b. The process by which Kellogg product is ordered for delivery to Wal-Mart and Sam's stores (including any changes thereto).<br>c. The process by which |

| | | |
|---|---|---|
| discounts, deals and coupons;<br>j. Ad pricing, ad budgets, and the internal and external processes by which Kellogg offers discounts to its customers;<br>k. The process by which Kellogg product is ordered for delivery to chains and stores (including any changes thereto).<br>l. The process by which stores and chains deliver Kellogg's products to their warehouses and/or stores.<br>m. How Kellogg and stores and chains handle returns and/or credits;<br>n. The negotiation of the sale price of Kellogg's products to stores and chains;<br><br>(¶ 3 of 2016 Notice). | thereto);<br>f. The transfer of funds from such stores to Kellogg for product received or sold; and<br>g. The transfer of title to Kellogg's products.<br><br>(¶ 15 of 2013 Notice). | Wal-Mart and Sam's delivers Kellogg products to Wal-Mart's and Sam's warehouses and/or stores.<br>d. The approval (and rejection) process of placing new displays and/or products in Wal-Mart and Sam's stores.<br>e. The terms of agreements under which Kellogg obtains commitments for shelf space, facings, floor space, displays, and stock room space.<br>f. The development of planograms.<br>g. Agreements concerning buy downs.<br>h. The facts, circumstances, and processes by which Kellogg agrees to buy downs with Wal-Mart and Sam's (¶ 3 of 2014 Wal-Mart Notice), and<br><br>Sales expectations and forecasts of Kellogg's snack and morning foods products (¶ 5 of 2014 Wal-Mart Notice). |

*See Exhibit H for a complete list of all 2016 Notice topics that Plaintiffs previously noticed and have already obtained corporate deposition testimony.

Plaintiffs also took deposition testimony on many of the 2016 Notice topics in depositions pursuant to the 2014 ESI Notice. For example, the 2016 Notice seeks information about records Kellogg maintains that might show the hours Retail Sales Representatives ("RSRs") and Territory Managers ("TMs") worked. (*See* 2016 Notice, Ex. G, at ¶¶ 11-12, seeking in part "electronic timestamps associated with work by RSRs and TMs"). Plaintiffs covered this topic ad nauseam. (*See, e.g.*, 2014 ESI Notice, Ex. C, at ¶¶ 5, 7, 9-17, identifying as matters for deposition "All processes related to any in-house software and services used by Kellogg regarding labor tracking [and] timekeeping" and several more specific topics related to any "timestamps" Kellogg may

have, including timestamps associated with voice messaging systems, SAP and Enterprise-level software platforms, mileage reporting data, handheld devices, web portals, etc). Kellogg designees have already testified on this topic (*see, e.g.*, Transcript of Deposition of John Whitaker, **Exhibit J**, at 48-50, discussing timestamps associated with GPS data, Transcript of Deposition of James Dombkiewicz, **Exhibit K**, at 64-67, discussing timestamp data associated with product ordering).

The 2016 Notice is not only repetitive and overlapping from notice to notice, the 2016 Notice is internally repetitive and overlapping. For example, Topic 4 seeks information about RSRs' and TMs' job duties, and Topic 6 separately seeks information about "[t]he primary job duty for RSRs and TMs." Topic 11 identifies as a topic for deposition "policies and practices regarding RSRs and TMs work hours," while Topic 17 takes the broader and all-encompassing view, identifying all "handbooks, policies, and practices concerning RSRs and TMs." These repeat matters make unnecessary work, and at this point unduly burden Kellogg employees who must prepare for testimony.

The repetitive and overlapping nature of the matters described in the 2016 Notice warrant the protective order Kellogg seeks. Allowing Plaintiffs to ask questions on the very same topics they have already noticed and deposed corporate witnesses on a second, or perhaps more accurately, a *seventh* time, unduly burdens Kellogg. By way of demonstration, Plaintiffs included the "job duties" topic in their 2013 Notice. (*See* 2013 Notice at ¶¶ 6-7). Kellogg designated Linda Bussell on this topic, and Plaintiffs deposed her at length on the job duties of RSRs and TMs. (*See* 10/4/2013 Letter, Ex. B, at 3-4; Bussell Dep. Tr., Ex. I, at 32-33, 44-47, 63, 86-88, 97, 107-13, 141-42, 164-65, 176-77). Kellogg should not have to go through the same process all over again.

Furthermore, the repetitive and overlapping nature of the 2016 Notice renders it disproportionate and therefore outside the scope of the newly amended Rule 26(b). Discovery is limited to relevant matters that are proportional to the needs of the case. The objective of the proportionality consideration "is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." Advisory Comm. Notes, Fed. R. Civ. P. 26 (2015).

1  Here, the repetition and overlap demonstrate that – even with respect to topics that are otherwise
2  relevant – there is little to be gained from a corporate deposition pursuant to the 2016 Notice.
3  Kellogg designees have been deposed on these topics and Kellogg has nothing more to say.
4  Forcing Kellogg to repeat depositions, on the other hand, places an undue burden on Kellogg and
5  allows Plaintiffs to use the 30(b)(6) discovery mechanism not to gather information, but to poke
6  and prod Kellogg's designees, presumably in the hope of obtaining testimony that arguably differs
7  from the last designee.  Rule 30 protects parties, like Kellogg, from such tactics, and is precisely
8  why the Rule expressly states that unless otherwise ordered or stipulated, "a deposition is limited to
9  one day of 7 hours."  Fed. R. Civ. P. 30(d)(1).  In other words, this case does not need repeat
10 depositions on topics already covered and the Rule is actually designed to promote that fact.

### 2.   Plaintiffs Have Not Described the Matters for Examination With Reasonable Particularity.

Repetitive nature of the 2016 Notice aside, good cause exists for the entry of a protective order because, in many respects, it is impossible for Kellogg to designate witnesses pursuant to the 2016 Notice.  Many of the topics in the notice are so ambiguous that Kellogg simply cannot designate any discrete set of witnesses.  Specifically, Plaintiffs list as matters for deposition:

- Kellogg's "business purposes" (2016 Notice, Ex. G, at ¶ 1);
- Kellogg's "organizational structure and divisions" (*id.* at ¶ 2);
- "The process by which Kellogg sells Kellogg's products to stores/chains" (¶ 3);
- "Equipment RSRs and TMs are provided," (¶ 7);
- "The degree to which RSRs and TMs are engaged in physical labor," (¶ 8);
- "The performance, tracking, and evaluations of RSRs and TMs and their activities," (¶ 9);
- "trainings provided by Kellogg or its agents to class members" (¶ 10);
- "policies and practices regarding RSRs and TMs work hours" (¶ 11);
- "wage-and-hour records" (¶ 15);
- "handbooks, policies, and practices concerning RSRs and TMs" (¶ 17);
- "The facts underlying Kellogg's defenses" (¶ 19);

- "The location of any records relevant to this case" (¶ 23);
- "The identity of any witnesses to RSRs and TMs primary job duty" (¶ 25); and
- "Damages in this case" (¶ 26).

Descriptions such as these in corporate deposition notices provide ample good cause for the entry of a protective order when the noticing party refuses to engage on focusing the area of inquiry. For example, in *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 506 (D.S.D. 2009), the court granted the defendant's protective order in part, ordering the plaintiff "to file a second amended Rule 30(b)(6) notice that reasonably narrows or clarifies [the] line of inquiry [at issue]." In *Murphy*, the court reviewed a notice describing as matters for deposition: "(1) the corporate history of four corporate entities, (2) the corporate relationship between these entities, and (3) the bankruptcy of 2001." *Id.* The court concluded that, "[w]ithout further clarification, [the defendant] could not reasonably designate and properly prepare a corporate representative to testify on its behalf." *See also Hardin v. Wal-Mart Stores, Inc.*, No. 08-CV-0617 AWI BAM, 2011 WL 11563217, at *2 (E.D. Cal. Dec. 2, 2011) (refusing to compel corporation to designate witness where plaintiff's Rule 30(b)(6) notices did not adequately particularize matters); *compare* ¶ 23 of 2016 Notice, identifying "location of any records relevant to this case," *with Alexander v. F.B.I.*, 188 F.R.D. 111, 121 (D.D.C. 1998) (finding that matter identified in 30(b)(6) notice as "any other matters relevant to this case" on its face fails to comply with requirement that matters be identified with reasonable particularity).

In sum, the ambiguity of the topics identified for deposition in the 2016 Notice warrants the entry of a protective order ruling that Kellogg need not designate a witness to.

> **3.     The Matters For Examination Seek Information Outside The Scope of Rule 26.**

Rule 26 limits discovery to non-privileged matters, and a "[c]ourt must limit discovery where it is not 'proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit.'" *Fox v. State Farm Ins. Co.*, No. C15-535RAJ, 2016 WL 304784, at *1 (W.D. Wash. Jan. 26, 2016).

The 2016 Notice describes matters for deposition that are outside the scope of Rule 26 because they are privileged or work product. For example, the "primary job duty" of the positions at issue (¶ 6), "whether Kellogg acted in good faith, or willfully" (¶ 22), "damages" (¶ 26), and, to a large degree, "past wage and hour litigation" (¶ 20), all encompass information almost exclusively within the province of privilege and work product. That is, all of these topics probe Kellogg's legal opinions. Kellogg does not dispute that Plaintiffs may seek information about the facts. For example, Kellogg produced Ms. Bussell to testify about RSRs' and TM's job duties and the basis of the exemptions at issue. Plaintiffs are not, however, entitled to deposition testimony describing Kellogg's legal analysis and conclusions. Topics like "primary job duty" (as opposed to simply "job duty") and "whether Kellogg acted in good faith, or willfully" (as opposed to simply "what Kellogg knew about X") take matters for deposition too far. *See Fid. Mgmt. & Research Co. v. Actuate Corp.*, 275 F.R.D. 63, 64 (D. Mass. 2011) (finding a deposition improper with respect to inquiry about borderline-protected issues, stating: "The reason is simple—complaints and answers, including affirmative defenses, are drafted by attorneys, and asking a 30(b)(6) witness, usually a non-lawyer, to answer this type of question after being prepared in the manner of 30(b)(6) witnesses makes it extremely difficult to distinguish between 'facts' (not protected) and the issue of why those facts have legal consequences, which usually has a work-product (lawyer's mental impressions) dimension. This problem is more acute since it is most likely that the lawyer was the source of the information which was provided to the 30(b)(6) witness so that he could answer the questions on behalf of the corporation and bind the corporation to those answers.") (internal citations omitted).

The 2016 Notice also describes matters for deposition that are outside the scope of Rule 26 because they are not relevant, or, to the extent they are relevant to some small degree, the degree of relevance does not warrant further discovery. For example, the job duties and pay policies of positions that are not at issue in this case (*see* 2016 Notice, Ex. G, at ¶¶ 4-5) are not relevant. This

is particularly so with respect to managerial positions (District Managers, Zone Managers, Productivity Managers). To the extent Plaintiffs want information about these positions in the context of finding out how they fit within the overall field sales team, Kellogg previously designated Ms. Bussell on this topic and Plaintiffs deposed her. (*See* 10/4/2013 Letter, Ex. B, at 3-4, stating that Kellogg would designate a representative "to testify regarding the structure of its U.S. sales organization and, more specifically, how District Managers, RSRs, TMs, Merchandisers, etc. fit into that structure."). Furthermore, to the extent Plaintiffs argue that hourly PTM and TSR positions are relevant given 29 C.F.R. § 541.104 (*see* Pls.' Mot. to Compel Discovery, Doc. 311, filed 7/9/2015, at 11), Plaintiffs already have information on this subject (*see* Orders, Docs. 337 and 343, compelling production of time and pay data for PTM and TSR positions). Because the job duties and pay of positions not at issue in this case is not an important or primary issue and Plaintiffs already have information on it. The burden and expense of yet another corporate deposition, fail to satisfy the proportionality consideration of Rule 26.

### c. **PLAINTIFFS' DEMAND FOR A TWO-DAY DEPOSITION PROVIDES GOOD CAUSE FOR THE ENTRY OF A PROTECTIVE ORDER.**

Finally, Plaintiffs state that they "expect the deposition to last at least two consecutive days." This warrants a protective order in and of itself. (*See* 2016 Notice, Ex. G). Plaintiffs cannot dictate the corporate representatives Kellogg designates, and no single Kellogg representative can be deposed for more than one seven-hour day. *See* Fed. R. Civ. P. 30(d)(1); Fed. R. Civ. P. 30(b)(6). With respect to corporate depositions, courts generally interpret the Federal Rules as limiting the testimony of each representative designated to 7 hours. *See* § 2104.1, 8A Fed. Prac. & Proc. Civ. § 2104.1 (3d ed.). If Plaintiffs have new topics to cover, Kellogg is willing to compromise and designate representatives for one additional, seven-hour corporate deposition. But Plaintiffs demand that Kellogg produce at least two additional representatives to testify for at least fourteen more hours on topics that the parties have already gone over in the past. This is not only unnecessary, it is annoying and oppressive. It justifies a protective order in and of itself. To the extent the Court permits any additional corporate deposition testimony, it should limit that

testimony to 7 hours.  *Cf. Watkins v. Infosys*, No. C14-247-JCC, 2015 WL 1424107, at *2 (W.D. Wash. Mar. 27, 2015) ("the Federal Rules require that . . . a deposition is limited to one day of seven hours.  The 30(b)(6) deposition of Defendant . . . is expected to comply with this rule absent a stipulation.") (internal citations omitted).

## IV.  CONCLUSION.

For the foregoing reasons, Kellogg Company and Kellogg Sales Company move for a protective order ruling that they are not required to designate any representatives in response to Plaintiffs' March 29, 2016 deposition notice (Ex. G).  Kellogg further asks that the Court order that if Plaintiffs desire to proceed at all, they must serve an amended 30(b)(6) deposition notice that reasonably narrows and clarifies any remaining topics for deposition, and that Plaintiffs are limited to one additional corporate deposition on no more than ten matters ***not already covered***, to last no more than one day of 7 hours.

Respectfully Submitted,

DATED:  April 5, 2016

**GREENBERG TRAURIG, LLP**

*/s/  James M. Nelson*
JAMES M. NELSON, WSBA No. 44652
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814
Telephone: (916) 442-1111
Fax: (916) 448-1709
nelsonj@gtlaw.com

JAMES N. BOUDREAU, *pro hac vice*
GREENBERG TRAURIG, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 988-7833
Fax: (215) 988-7801
boudreauj@gtlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 5, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by ECF System.

*/s/ James M. Nelson*
JAMES M. NELSON, WSBA No. 44652

**SERVICE LIST**

*Counsel for Patty Thomas,*
*The FLSA Collective Action Class, and the Washington Class*
Michael C. Subit
msubit@frankfreed.com
FRANK, FREED, SUBIT & THOMAS, LLP
Suite 1200
Hoge Building
705 Second Avenue
Seattle, Washington 98104-1729
Telephone:  (206) 682-6711
Facsimile:  (206) 682-0401

Dan Getman
dgetman@getmansweeney.com
Matt Dunn
mdunn@getmansweeney.com
Michael J.D. Sweeney
msweeney@getmansweeney.com
GETMAN & SWEENEY, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370
Facsimile: (845) 255-8649