HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PATTY THOMAS, et al.,

    Plaintiffs,

v.

KELLOGG COMPANY, et al.,

    Defendants.

CASE NO. C13-5136-RBL

ORDER ON *IN CAMERA* REVIEW
OF WILLARD BISHOP REPORT

[Dkt.#s 311, 347]

    THIS MATTER is before the Court on Kellog's Motion for Reconsideration [Dkt. #347] of the Court's Order [Dkt. #337] compelling production of the "Willard Bishop Report." This Report was prepared by an outside consulting firm to analyze the "time motion" of RSRs like the plaintiffs in this case. At Kellogg's request, the Court has reviewed the Report (and the engagement letter, confidentiality agreement, and an email string related to the Report's dissemination) *in camera*.

    Kellogg's claims that the Report is protected from disclosure by the attorney-client privilege, because it was commissioned by its in-house counsel for the purpose of obtaining information that the attorneys could then use to provide legal advice to the company. It also

claims that the Report was commissioned and prepared after, and "because of," this litigation, and that it is therefore protected from disclosure under the work product doctrine.

The Plaintiffs argue that Kellogg's own Rule 30(b)(6) deponent did not know who commissioned the study, only that it was facilitated by the "sales organization" and for the purpose of making the RSR positions "more effective in growing sales." In short, they argue that the fact an attorney was "in the loop" does not make the communications privileged.

The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice. The party asserting attorney-client privilege or work product immunity has the burden of proving that the privilege or doctrine applies. *U.S. v. Blackman,* 72 F.3d 1418, 1423 (9th Cir.1995); *Verizon CA Inc. v. Ronald A. Katz Tech.,* 266 F.Supp.2d 1144, 1147 (C.D. Ca. 2003). The privilege extends only to protect the disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). To meet this burden, a party must demonstrate that a communication was made for the purpose of obtaining or providing legal advice, rather than for business or administrative purposes. There is a heightened concern where the attorney is "in house," because his non-legal business or administrative communications are not privileged. *See Chandola v. Seattle Housing Auth.*, No. C13-557 RSM, 2014 WL 4685351, at *3 (W.D. Wash. Sept. 19, 2014). The privilege may not be used to "place a cloak of secrecy" around communications involving an attorney. *In re Fischel,* 557 F.2d 209, 212 (9th Cir. 1977).

A review of the report confirms that it was not prepared for Kellogg's attorneys so they could provide legal advice; it was patently prepared to assist Kellogg's in making its workforce more efficient and "effective in growing sales"—quintessential business advice.

The engagement letter (sent by Willard Bishop to a Mr. Martin at "DSD cost control"), the agreement, and the Report itself all confirm what the 30(b)(6) witness explained: the Report was a study of the efficiencies or "effectiveness" of the RSRs.  Willard Bishop engineers shadowed "best in class" RSRs and "good, average RSRs" supporting "supercenters" and large medium and small supermarkets, tracking how much time they spent on each task. Willard Bishop was engaged to "review current in-store labor activities for the purpose of assessing and verifying the actual processes and activities currently in use across regions and customers with an aim of identifying best practices for possible system-wide implementation." [*See* Confidentiality and Non-Disclosure Agreement at 1, page 0007]. The agreement also articulated Kellogg's understanding of "the competitive need to evaluate and possibly update and standardize its labor allocations and standards, and that any such update or standardization of its business practices has legal and business implications." [Id.]

But other than that, none of the documents references any legal issue or litigation.  And while virtually all business decisions can or do have "legal implications" that does not mean that every business decision run through an in-house attorney is attorney-client privileged.

It is certainly not the case that adding an attorney to an email string or a distribution list makes widely disseminated, business communications privileged. The only email string provided for *in camera* review demonstrates this point. Ironically, however, that is the one document in the *in camera* review that *is* privileged: Mr. Martin sought legal advice from Kellogg's in-house counsel about how to protect the attorney client privilege.

Documents disseminated beyond those with a "need to know" *for legal advice purposes* are not privileged. Including an attorney in the distribution list does not make a communication privileged, where it is not made to seek or provide legal advice.  The engagement letter, the

agreement, and the Report are not protected from discovery in this case by the attorney-client privilege. The Motion for Reconsideration on this point is DENIED.

Nor is the Report work product. The only evidence that it was prepared "because of" the litigation is that it was commissioned after the litigation commenced. But it does not reference the litigation at all. Willard Bishop's own articulation of what it does for its clients generally, and what it did for Kellogg here, deal with business efficiency, not legal issues. Its Report focuses on efficiency and productivity issues, exclusively.

It is possible, of course, that Kellogg commissioned the study with a hidden motive that even Willard Bishop did not know: that it wanted to investigate the hours its RSRs spent not for the stated purposes of increasing "effectiveness in growing sales," and improving efficiency, but to rebut the Plaintiffs' factual claims in this lawsuit. It could have done so, and said so: "We are hiring you to evaluate the factual basis for the claims in this litigation, and the results of your work are for the purpose of providing information to our attorneys for their use in providing legal advice and defending us from this case."

But there is nothing like that in any of the communications, and the Report itself does not reflect in any way that it was prepared "because of" the litigation, or in support of Kellogg's defense. The work product doctrine does not protect these communications. The Motion for Reconsideration on this basis is also DENIED.

For this reason the issues of waiver and substantial need are not addressed.

//

//

//

1 | While the documents are not protected from discovery, they are confidential and
2 | proprietary, and the Plaintiffs attorneys will treat them as such.
3 | IT IS SO ORDERED.
4 | Dated this 20th day of May, 2016.

Ronald B. Leighton
United States District Judge