1

2

**Honorable Ronald B. Leighton**

3

4

5

6

7

8

9

10

11

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

12

13

14

**PATRICIA THOMAS, et al.,**

     **Plaintiffs,**

15

16

**v.**

17

**KELLOGG COMPANY and KELLOGG SALES COMPANY,**

18

     **Defendants.**

19

**CASE NO.: 3:13-cv-05136-RBL**

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR: AUGUST 19, 2016**

**ORAL ARGUMENT REQUESTED**

**PORTIONS FILED UNDER SEAL**

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL)

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1

**TABLE OF CONTENTS**

2  I. Introduction ........................................................................................................... 1

3  II. Facts ..................................................................................................................... 1

4     A.  Kellogg Sells Its Products to Chain Customers at the Corporate Level ................................ 1

5     B.  Plaintiffs' Job Duties ...................................................................................... 4

6       1.  Plaintiffs Service Kellogg's Corporate Level Sales ................................. 5

7       2.  Plaintiffs' Job Duties Are Documented By Kellogg ................................. 7

8       3.  Non-Exempt TSRs Perform the Same Duties as TMs .................................. 9

9       4.  Kellogg Closely Supervises Plaintiffs ..................................................... 9

10     C.  Kellogg Pays Plaintiffs and TSRs Approximately the Same Hourly Rate ........................... 11

11     D.  Neither Sales Experience nor Sales Training Are Required for Plaintiffs' Work ................ 11

12     E.  Kellogg Does Not Pay Plaintiffs Commission ................................................... 12

13  III.     LEGAL ARGUMENT .................................................................................. 12

14     A.  Plaintiffs Are Not Making Sales Within the Meaning of §203(k) of the FLSA ................. 14

15       1.  Kellogg Sells Its Product to Chain Customers at the Corporate Level ....................... 15

16       2.  Plaintiffs Do Not Make Sales ............................................................... 15

17     B.  Plaintiffs' Primary Job Duty Is Non-Exempt Work ............................................ 18

18       1.  Servicing Kellogg's Sales Contracts Are Plaintiffs' Most Important Job
19          Duties ................................................................................................. 19

20       2.  Plaintiffs Spend the Majority of Their Time Servicing Preexisting
21          Contracts ............................................................................................ 21

22       3.  Kellogg Closely Supervises Plaintiffs' Non-Exempt Work ....................... 22

23       4.  Kellogg Pays Plaintiffs a Similar Hourly Wage as Territory Service
24          Managers Earn for Non-Exempt Work ..................................................... 23

25       5.  Plaintiffs Lack External Indicia of Salespeople. ..................................... 23

26  IV.     Conclusion .......................................................................................... 24

27

28  PLAINTIFFS' SUMMARY JUDGMENT               Getman & Sweeney, PLLC
MOTION (3:13-cv-05136-RBL) - i                  9 Paradies Lane,
                                       New Paltz, NY 12561
                                       Telephone: (845) 255-9370

1

2

# TABLE OF AUTHORITIES

3

**CASES**

4

*A.H Phillips, Inc. v. Walling,* 324 U.S. 490 (1945) ........................................................ 14

5

*Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388 (1960) ...................................................... 14

6

*Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104 (9th Cir. 2001) ........................................ 20

7

*Beauford v. Actionlink, LLC*, 781 F.3d 396 (8th Cir. 2015) .......................................... 17

8

*Campanelli v. Hershey Co.*, 765 F.Supp.2d 1185 (2011) ...................................... passim

9

*Cancilla v. Ecolab, Inc.*, 12 Civ. 03001 CRB, 2013 WL 1365939 (N.D. Cal. April 3,

10

   2013) ............................................................................................................................ 19

11

*Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433 (E.D.N.Y. 2015) ..................................... 19

12

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) ......................... 22, 23

13

*Dalheim v. KDFW–TV,* 918 F.2d 1220 (5th Cir.1990) ................................................... 20

14

*Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir. 1982) ....................................... 20

15

*Donovan v. Nekton, Inc.,* 703 F.2d 1148 (9th Cir. 1983) .............................................. 14

16

*Drummond v. Herr Foods Inc.*, 13 Civ. 5991, 2014 WL 5343642 (E.D. Pa. Oct. 21,

17

   2014) ........................................................................................................................ 21, 24

18

*Gieg v. DDR, Inc.,* 407 F.3d 1038 (9th Cir. 2005) ........................................................ 14

19

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001) ....................................................... 19

20

*Hodgson v. Klages Coal & Ice Co.,* 435 F.2d 377 (6th Cir.1970) ............................ 16, 17

21

*Hurt v. Commerce Energy, Inc.*, 1:12 Civ. 00758, 2013 WL 4427257 (N.D. Oh. Aug.

22

   15, 2013) ................................................................................................................... 23, 24

23

*Indergit v. Rite Aid Corp.*, 293 F.R.D. 632 (S.D.N.Y. 2013) ........................................ 18

24

*Jewel Tea Co. v. Williams*, 118 F.2d 202 (10th Cir. 1941) ........................................... 22

25

*Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903 (E.D. La. 2009) .......................... 20

26

*Killion v. Kehe Distributors LLC*, 761 F.3d 574 (6th Cir. 2014) ............................... 16, 17

27

28

Getman & Sweeney, PLLC
9 Paradies Lane,
New Paltz, NY 12561
Telephone: (845) 255-9370

*Marzuq v. Cadete Enterprises, Inc.*, 807 F.3d 431 (1st Cir. 2015) ...................................... 11, 20, 23

*McCall v. First Tennessee Bank National Assoc*, 3:13 Civ. 00386, 2014 WL 2159007

    (M.D. Tenn. May 23, 2014) ...................................................................................... 20

*McCartt v. Kellogg USA, Inc.*, 139 F. Supp. 3d 843 (E.D. Ky. 2015) ................................. 19

*Miller v. Farmer Bros. Co.*, 136 Wash. App. 650 (2007) ................................................... 17

*Miranda-Albino v. Ferrero, Inc.*, 455 F. Supp. 2d 66 (D. P.R. 2006)......................................... 17, 24

*Mitchell v. Ky Fin. Co.*, 359 U.S. 290 (1959).................................................................... 14

*N.J. Dep't of Labor v. Pepsi-Cola*, A-918-00T5, 2002 WL 187400 (N.J. Super. Ct.

    App. Div. Jan. 31, 2002) ........................................................................................ 17

*Rehberg v. Flowers Baking Company of Jamestown, LLC*, ---F.Supp.3d---, 2016 WL

    626565 (W.D. N.C. Feb. 16, 2016) ........................................................................ 21

*Skipper v. Superior Dairies, Inc.*, 512 F.2d 409 (5th Cir. 1975)........................................ 22

*Smalley v. Home Depot U.S.A.*, Inc., 11 Civ. 02951-JCS, 2013 WL 1402348 (N.D. Cal.

    Apr. 5, 2013) .......................................................................................... 11, 21, 23

*Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496 (6th Cir. 2007)............................ 20

*Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642 (W.D. Wash. 2011) ...................... 19

**STATUTES**

29 U.S.C. §203 ................................................................................................... 13, 14, 15

29 U.S.C. §213 ................................................................................................................ 12

U.C.C. §2-106............................................................................................................ 15

U.C.C. §2-204............................................................................................................ 15

U.C.C. §2-207............................................................................................................ 15

U.C.C. §2-306............................................................................................................ 15

**REGULATIONS**

29 C.F.R. §541.2............................................................................................................ 14

29 C.F.R. §541.500........................................................................................................ 12

Getman & Sweeney, PLLC
9 Paradies Lane,
New Paltz, NY 12561
Telephone: (845) 255-9370

29 C.F.R. §541.503.................................................................................. 16, 17, 18, 22

29 C.F.R. §541.700.................................................................................. passim

Getman & Sweeney, PLLC
9 Paradies Lane,
New Paltz, NY 12561
Telephone: (845) 255-9370

## I.     Introduction

Plaintiffs move this Court pursuant to Fed. R. Civ. P. 56 for an order granting them partial summary judgment that Defendants misclassified them as exempt from the overtime requirements of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and that they are non-exempt employees entitled to overtime for hours worked more than 40 in a week under the FLSA.

Kellogg is a large producer of food that sells its products to chain grocery customers for the customers to sell in their individual store locations. Kellogg has teams of dedicated sales people who negotiate sales contracts with the chain grocery customers. Pursuant to those contracts, Kellogg provides chain customers with the product they need to sell to their customers.

Plaintiffs are Kellogg employees who service the corporate sales contracts and monitor compliance at the store level. Plaintiffs' job duties are not in dispute because Kellogg regularly conducts industrial studies of the job tasks that Plaintiffs perform and the time it takes to perform each of those tasks. Those studies clearly show that Plaintiffs are not making sales of Kellogg product but are servicing the contracts negotiated by Kellogg's dedicated sales people on the corporate level. Nevertheless, Kellogg classified Plaintiffs as exempt from federal and state overtime laws as outside salespeople.

Given the undisputed facts regarding Plaintiffs' job duties, Kellogg cannot establish that Plaintiffs are exempt from the FLSA. Accordingly, Plaintiffs respectfully request that the Court grant them summary judgment on the outside sales exemption issue.

## II.     Facts

### A.     Kellogg Sells Its Products to Chain Customers at the Corporate Level

Kellogg[1] is one of the nation's largest producers of food products. Ex. 1, Bussell Dec. at ¶ 3.[2] It sells its food products to chain grocery customers who, in turn, resell the products to end use customers through their individual retail stores around the country. *Id.* at ¶5. Kellogg does not sell

---

[1] Kellogg refers to the Defendants Kellogg and Kellogg Sales Company
[2] Declaration of Linda Bussell In Support of Defendants' Opposition To Plaintiffs' Motion For Conditional Certification and Court-Authorized Notice, Dkt. 133-5, ("Bussell Dec.").

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 1

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1    its products directly to consumers. *Id*. It makes its money from selling its products to chain

2    customers. *Id*. at ¶5; Ex. 2, Holton Dep.[3] pp. 66:12-72:11.

3    Kellogg begins planning its product sales long before it manufactures them. Ex. 2, Holton

4    Dep. pp. 167:3-16, 544:18-545:14. In the January prior to a sales year, Kellogg's production,

5    marketing, and finance divisions meet to forecast demand for the next sales year on a product

6    category-by-category basis. *Id*. at pp. 163:5-7, 164:9-19, 166:24-168:15, 544:18-545:14. They use

7    sophisticated forecasting systems to coordinate production, financial, marketing and sales activity.

8    *Id*. at pp. 133:7-17, 163:5-8, 166:19-167:16, 269:20-270:11, 544:18-547:4. The process is critical

9    to plan production, commodity, finance, and marketing capacity for the coming year. *Id*.

10   These early internal meetings result in a general sales plan that Kellogg then breaks down into

11   more detailed sales plans that allocate product sales to individual chain customers, such as

12   Walmart, Kroger, and Target. *Id*. at pp. 87:3-14, 165:19-170:18, 541:10-543:9. Kellogg allocates

13   the product that it will sell to each of its chain customers based on myriad factors, including sales

14   history, economic forecasting, production and distribution capacity, and financing considerations.

15   *Id*. at pp. 541:10-19, 544:18-547:4. Kellogg's marketing and sales divisions review and comment

16   on the allocations before Kellogg finalizes its sales plan in September. *Id*. at pp. 162:13-25,

17   165:19-166:8, 168:16-170:14, 539:18-540:22.

18   Once Kellogg's internal sales plan is finalized, Kellogg negotiates year-long master sales

19   requirement contracts with chain customers. Ex. 2, Holton Dep. pp. 87:20-88:12, 542:18-543:9;

20   Ex. 3, Master Sales Contract. Kellogg's Leadership Team begins negotiating with chain customers

21   as early as September for implementation in the following sales year. Ex. 2, Holton Dep. pp.

22   165:19-166:8. These are top-level sales contracts determining the volume of products that the

23   customer expects to need, the price the customer will pay for the products, the promotions that will

24   support retail demand, and other sale terms such as delivery, payment, and credits. Ex. 2, Holton

25   Dep. pp. 85:19-88:12, 90:19-91:6, 98:14-99:2, 103:15-24, 541:10-19, 543:10-24; Ex. 4, Salmon

26   

27   [3] 30(b)(6) Deposition of Kellogg Company and Kellogg Sales Company ("Holton Dep.").Mr. Holton, Senior V.P. of U.S. Sales for Kellogg's Snacks, was designated as Kellogg's 30(b)(6) deponent. Holton Dep. p. 14:9-19.

28

Dep.[4] p. 84:2-20; Ex. 3, Master Sales Contract. The chain customers enter the sales terms into their internal systems, including pricing, delivery, payment, and product return terms. Ex. 5, Reed Dep.[5] p. 185:15-186:13; Ex. 6, O'Connell Dep.[6] p. 40:23-41:20.

Along with other terms, the master sales contract includes terms by which Chain Customers can earn Kellogg Merchandising Funds ("KMF"), a/k/a trade dollars based on their volume of business with Kellogg and can spend KMF on additional promotions such as buy-one-get-one free promotions, discounts on product prices, couponing, and advertising to increase the chain store customers sales to its retail customers. Ex. 2, Holton Dep. pp. 135:20-139:5; Ex. 3, Master Sales Contract, p. 5; Ex. 7, Publix Business Review.

As the sales year progresses, Kellogg's Sales Account Teams constantly evaluate the achievement of the master sales contract goals, measuring consumption through the inventory shipped to customers. Ex. 2, Holton Dep. pp. 89:13-90:2, 94:14-95:13; Ex. 5, Reed Dep. pp. 191:23-192:18; Ex. 8, Kelly Dep.[7] p. 46:20-23; Ex. 4, Salmon Dep. pp. 82:24-83:10; Ex. 3, Master Sales Contract; Ex. 7, Publix Business Review. These teams meet with the chains' buyers on a corporate level regularly, often weekly or more frequently. Ex. Holton Dep. pp. 89:20- 90:2, 153:16-21, 182:16-183:18; Ex. 5, Reed Dep. p. 192:8-12; Ex. 8, Kelly Dep. p. 46:20-23; Ex. 4, Salmon Dep. pp. 82:24-83:10. If retail sales fall below projections, Kellogg's Sales Account Teams attempt to sell additional promotions to the chain customers, which the customers pay for with their accumulated KMF. Ex. 2, Holton Dep. p. 551:2-11; Ex. 9, Bussell Dep.[8] p. 109:8-9; Ex. 10, Contracts; Ex. 11, KMF Funds. The promotions include detailed forecasts of the expected increase in retail demand that allow Kellogg and the chain customer to understand how much additional product the customer will need. Ex. 2, Holton Dep. pp. 544:10- 545:3; Ex. 6, O'Connell Dep. p. 102:11-23; Ex. 11, KMF Funds. The promotions can and often do include commitments by

---

[4] Salmon Deposition ("Salmon Dep."). He is Kellogg's Chief Customer Officer. Salmon Dep. p. 76:7-8.
[5] Reed Deposition ("Reed Dep."), Kellogg's Senior V.P. of U.S. Morning Foods. Reed Dep. p. 11:16:19.
[6] O'Connell Deposition ("O'Connell Dep"). She is a Kellogg Account Executive. O'Connell Dep. p. 10:17-18
[7] Kelly Deposition ("Kelly Dep."). He is Kellogg's Senior Director of Region Account Sales. Salmon Dep. p. 5:24-25.
[8] 30(b)(6) Deposition of Kellogg Company and Kellogg Sales Company. Ms. Bussell, Kellogg's Human Resource Director, was Kellogg's 30(b)(6) designee in 2013 ("Bussell Dep."). Bussell Dep. p. 9:21-22.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 3

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1  customers to set up special displays of Kellogg product in the customers' stores. Ex. 2, Holton Dep.

2  pp. 121:17-22, 142:4-20, 148:7-149:12, 191:5-193:24, 220:14-223:15, 225:23-248:4; Ex. 9, Bussell

3  Dep. p. 78:11-79:13, 99:22-100:4; Ex. 10, Contracts, pp. 1, 3, 4; Ex. 12, Customer Authorization

4  for Display; Ex. 13, Planned Display Location; Ex. 14, Cartrail Display; Ex. 15, Walmart Display

5  Plan; Ex. 16, Fight Hunger Display Plan. Kellogg does not regularly track displays or the amount

6  of product sold from a display in individual stores. Ex. 2, Holton Dep. p. 577:13-578:2, 583:15-

7  584:15; Ex. 9, Bussell Dep. p. 100:15-19, 120:16-121:2, 127:15-128:5; Ex. 17, Oldre Dep.[9] p.

8  47:13-48:3; Ex. 18, Deposition of James Kaminski[10] p. 212:6-8.

9  ## B.  Plaintiffs' Job Duties

10  After Kellogg completes the sales contracts with chain customers, it uses different models to

11  service the contracts. Ex. 1, Bussell Dec. ¶¶6-7. Kellogg's "Morning Foods Division" uses a

12  "Warehouse Model" in which Kellogg delivers the product covered by the sales contract to the

13  chain customers' warehouse. Ex. 1, Bussell Dec. ¶7; Ex. 2, Holton Dep. pp. 564:13-566:4; Ex. 19,

14  DSD Benefits, p. 16. The customers are then responsible for delivering to and managing product at

15  the store level. Ex. 1, Bussell Dec. ¶ 7; Ex. 9, Bussell Dep. pp. 34:7-11, 109:16-24; Ex. 2, Holton

16  Dep. p. 293:22-294:20. Kellogg's "Snack Division" uses a "Direct Store Delivery Model" ("DSD

17  Model"). Ex. 1, Bussell Dec. ¶6. In the DSD Model, Kellogg delivers the product covered by the

18  sales contract directly to the chain customers' individual stores. Ex. 1, Bussell Dec. ¶ 6; Ex. 2,

19  Holton Dep. pp. 87:20-88:12, 542:18-543:9; Ex. 19, DSD Benefits, p. 16. Kellogg is then

20  responsible for managing Kellogg's product inventory in the customer's individual stores. Ex. 1,

21  Bussell Dec. ¶ 6; Ex. 9, Bussell Dep. p. 110:3-8. As a result of the DSD Model, Kellogg's

22  employees perform the in-store functions that are performed by the customer's employees under

23  the "Warehouse Model." Ex. 2, Holton Dep. p. 295:6-12; Ex. 19, DSD Benefits, p. 3. In other

24  words, Kellogg provides the labor to service the sales contract in the DSD Model. *Id.*

25

26
---
[9] Oldre Deposition ("Oldre Dep."). He is Kellogg's V.P. of DSD Operations, Eastern Region. Oldre Dep. p. 6:1-4.

27  [10] Mr. Kaminski is the Direct of West Region Retail Organization for Morning Foods. *See,* Kaminski Dep. p. 94:13-16

28  PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 4

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1    Plaintiffs in this case are Territory Managers[11] (TMs) who work in Kellogg's DSD Model and

2    Retail Sales Representatives[12] (RSRs) who work in the Warehouse Model. Third Amended

3    Complaint, Dkt. #216 at ¶¶ 2, 139; Answer, Dkt #232 at ¶¶ 2, 139; Holton Dep. p. 47:5-10. In both

4    cases, their primary job duty is to service the sales contracts Kellogg strikes at the corporate level.

5        **1.    Plaintiffs Service Kellogg's Corporate Level Sales**

6        Kellogg's sales contracts with its chain customers provide the customer the Kellogg product

7    it needs to meet retail demand in its stores at a certain price and on certain terms. What products a

8    store will carry and where they will be placed in the stores is generally decided on the corporate

9    level through display plans such as planograms. Ex. 9, Bussell Dep. p. 76:6-18, 79:4-13, 80:16-18;

10   Ex. 2, Holton Dep. p. 114:5-19; Ex. 20, Planograms. These plans show what Kellogg product will

11   be on display in a store and where. Ex. 9, Bussell Dep. pp. 76:16-77:16, 79:4-13; Ex. 4, Salmon

12   Dep. p. 184:18-23; Ex. 2, Holton Dep. pp. 114:16-19, 148:7-25. A typical contract planogram

13   would appear as follows:



20   Ex. 21, Shaw Planogram, p. 3; *see also* Ex. 20, Planogram; Ex. 2, Holton Dep. pp. 114:16-19.

21       Chain customers spend their Kellogg Merchandising Funds to purchase specific promotions

22   throughout the year. Ex. 2, Holton Dep. pp. 136:2-138:20. Those agreements determine what

23   products will be put on promotion and how. Ex. 2, Holton Dep. pp. 135:20-136:13, 139:2-5; *see*

24   Exs. 3, 10-16. Plaintiffs then service those promotions by implementing them on the individual

---

[11] TMs work in Kellogg's Snacks Division and are part of the DSD Model. Ex. 1, Bussell Dec. ¶ 10. In 2012 Kellogg changed the TM title to RSR-DSD. *Id.* In this motion, the term TM includes the RSR-DSD title.

[12] RSRs work in Kellogg's Morning Foods Division and are part of the Warehouse Model. Ex. 1, Bussell Dec. ¶ 16.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 5

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

store level. Ex. 9, Bussell Dep. pp. 74:2-5, 101:18-102:9, 122:9-19; Ex. 2, Holton Dep. pp. 295:13-296:21, 560:6-17. Neither TMs nor RSRs negotiate the promotion agreements, planograms or display planners. Ex. 9, Bussell Dep. pp. 74:6-12, 80:19-20, 134:18-25. That responsibility is left to the Sales Account Teams at the corporate level. Ex. 9, Bussell Dep. pp. 70:7-16, 80:16-18; Ex. 2, Holton Dep. p. 111:22-112:2.

In the Warehouse Model, the store employees of Kellogg's customers are charged with servicing the corporate contracts at the store level. Ex. 9, Bussell Dep. p. 74:2-5. They order inventory, bring product out of the store room, stock shelves, build displays, and post the appropriate signage for promotions. Ex. 2, Holton Dep. pp. 293:3-294:20; Ex. 9, Bussell Dep. pp. 101:9-102:4. RSRs are charged with ensuring that stores are displaying products properly by monitoring the store employees' work and making suggestions for additional displays. Ex. 9, Bussell Dep. p. 102:5-8; Ex. 22, 2010 RSR Study, p. 3 (listing activities). RSRs also help manage store inventory by advising stores on the amount of inventory needed to keep the shelves and displays full. Ex. 9, Bussell Dep. p. 102:5-8. Stores are free to take or disregard this advice. *Id.*. 183:4-18. RSRs typically visit 60 to 80 stores doing this work. Ex. 1, Bussell Dec. ¶ 16; Ex. 2, Holton Dep. p. 746:24-747:5.

In the DSD model, TMs do the contract service work that store employees do under the Warehouse Model including managing store inventory. Ex. 2, Holton Dep. p. 295:6-12; Ex. 19, DSD Benefits, p. 3. TMs are not required to obtain store approval to replenish inventory because the inventory levels are determined by the corporate sales contracts which call for only the product that is required to meet retail demand. Ex. 9, Bussell Dep. p. 126:2-24; Ex. 2, Holton Dep. pp. 305:11-14, 306:25-307:14. The chain customer does not pay for any product that its stores do not sell. Ex. 9, Bussell Dep. pp. 136:15-137:9; Ex. 2, Holton Dep. pp. 176:9-177:22, 191:5-193:24; Ex. 23, Nilles Dep.[13] p. 184:20-22. If demand changes, stores can reject product deliveries and if they do not use the product, they receive credit for it from Kellogg. *Id.* The TMs job is to ensure that

---

[13] Randy Nilles Deposition ("Nilles Dep."). Mr. Nilles was a District Manager with Kellogg. Nilles Dep. p. 12:2-3.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 6

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1   stores do not run out of Kellogg product between deliveries by keeping inventory within the

2   available storage space at the store. Ex. 9, Bussell Dep. p. 122:9-12. Kellogg disciplines TMs for

3   ordering too much inventory or too little. *Id.* at 128:11-20. Because they do this service work, TMs

4   visit far fewer stores than RSRs. Ex. 1, Bussell Dec. ¶ 12.

5        RSRs and TMs also ensure that the individual retail stores of Kellogg's chain customers'

6   are complying with the contracts Kellogg strikes at the corporate level. Ex. 9, Bussell Dep. p. 74:2-

7   5. They do this by making sure that product is in its designated location on the shelves, displays are

8   erected in accordance with the promotions agreed to at the corporate level, and promotion signage

9   is in place. Ex. 9, Bussell Dep. pp. 74:2-5, 92:7-9, 115:21-24, 141:9-11, 122:9-23; Ex. 2, Holton

10  Dep. pp. 295:13-296:21. They remind store management about the promotions and convey

11  information to them such as the type of product, the reduced price of the product, and the agreed

12  upon margin for the chain customer. Ex. 2, Holton Dep. p. 565:6-15; Ex. 17, Oldre Dep. p. 32:13-

13  21; *see*, Ex. 13, Planned Display (showing profit margin within tables on each page). When RSRs

14  and TMs encounter contract violations in individual stores they report the non-compliance to the

15  Sales Account Teams to address. Ex. 2, Holton Dep. pp. 230:2-234:18; Ex. 24, Sales Account

16  Team Email, p. 1.

17        **2.   Plaintiffs' Job Duties Are Documented By Kellogg**

18        Kellogg regularly conducts industrial studies of the job tasks that TMs and RSRs around the

19  country perform and the time it takes to perform those tasks. Ex. 25, 2006 TM Study; Ex. 26, 2008

20  TM Study; Ex. 22, 2010 RSR Study; Ex. 27, 2013 TM Study. It then uses those studies as the

21  building blocks to assign work to TMs and RSRs around the country. Ex. 2, Holton Dep. pp. 350:9-

22  352:5, 457:2-8, 466:24-467:11, 468:20-23; Ex. 28, Pennington Dep.[14] p. 33:13-18; Ex. 9, Bussell

23  Dep. pp. 147:23-149:14; Ex. 29, Syracuse Itinerary; Ex. 30, Workload Model; Ex. 58, 2008 Labor

24  Budgeting.

25

26  _____

    [14] Lisha Pennington Deposition ("Pennington Dep."). She is a Kellogg Productivity Manager. Pennington Dep. p.

27  18:13-15.

28  PLAINTIFFS' MOTION FOR PARTIAL                          Getman & Sweeney, PLLC
    SUMMARY JUDGMENT                                        9 Paradies Lane
    (3:13-cv-05136-RBL) - 7                                 New Paltz, NY 12561
                                                            Telephone: (845) 255-9370

The most recent industrial study that Kellogg produced, from 2013, is based on engineers studying 71 TMs and TSRs from the Pacific NorthWest to the East Coast through 410 store visits and written surveys.[15] Ex. 27, 2013 TM Study,  pp. 2, 4, 5. The studies showed the job tasks that TMs and TSRs, who work in the Snacks Division under the DSD Model, perform and the time they spend on each task:



*Id.* at pp. 11, 51-2.

For the RSRs, who work in the Morning Foods division under the Warehouse Model, Kellogg performed a similar industrial study in 2010 identifying RSR job tasks and times as:



[15] Kellogg also performed studies in 2006 and 2008 that identified consistent job tasks and timing. See, Ex. 25 and 26.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 8

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1  Ex. 22, 2010 RSR Study, p. 10.

2       Kellogg relies on the studies as accurate and representative of its TMs and RSRs who work

3  throughout the country. Ex. 2, Holton Dep. pp. 460:20-462:4; Ex. 31, Groulx Dep.[16] p. 25:6-15;

4  Ex. 28, Pennington Dep. p. 87:8-18. Kellogg applies the studies' results and finding to all TMs and

5  RSRs, using the studies to develop labor standards and system-wide best practices across the

6  country. Ex. 31, Groulx Dep. pp. 22:24- 23:2, 25:3-8; Ex. 28, Pennington Dep. pp. 48:6-20, 87:8-

7  18; Ex. 2, Holton Dep. pp. 457:2-8, 459:19-460:2, 641:7-642:24; Ex. 29, Syracuse Itinerary; Ex.

8  32, Johnson Itinerary; Ex. 30, Workload Model; Ex. 58, 2008 Labor Budgeting. In addition,

9  Kellogg designs TMs' territories based on the studies' time estimates and driving time. Ex. 28,

10  Pennington Dep. pp. 31:21-32:15, 43:5-18, 50:20-51:11, 87:8-18, 89:21-25; Ex. 29, Syracuse

11  Itinerary. Kellogg designs the territories to require more than 40 hours of work each week. Ex. 28,

12  Pennington Dep. p. 87:8-18; Ex. 2, Holton Dep. pp. 603:11-23, 619:17-25.

     **3.    Non-Exempt TSRs Perform the Same Duties as TMs**

14       Kellogg assigns employees to help TMs perform their work. Ex. 9, Bussell Dep. p. 162:5-

15  12; Ex. 1, Bussell Dec. ¶ 13. These employees, called Territory Service Representative (TSR) and

16  Part Time Merchandisers (PTM), are assigned to help TMs based on the amount of Kellogg

17  product stores in a territory receive. Ex. 2, Holton Dep. p. 290:14-22; Ex. 1, Bussell Dec. ¶ 13; Ex.

18  28, Pennington Dep. p. 69:8-20; Ex. 30, Workload Model, p. 7; Ex. 58, 2008 Labor Budgeting.

19  Kellogg's internal studies show that TSRs perform many of the same job duties as TMs and RSRs.

20  Ex. 27, 2013 TM Study, pp. 11,19; Ex. 26, 2008 TM Study, p. 13. The difference between TSR and

21  TM work is the amount of time they spend on tasks and their ultimate responsibility for the work.

22  *Id.*; Ex. 2, Holton Dep. p. 21:7-16. Moreover, TSRs and PTMs are paid on an hourly basis and are

23  paid overtime for any hours they work over 40 in a week. Ex. 1, Bussell Dec. ¶ 6; Ex. 2, Holton

24  Dep. pp. 624:8-625:10.

25       **4.    Kellogg Closely Supervises Plaintiffs**

---

[16] Logan Groulx Deposition ("Groulx Dep."). Mr. Groulx is an industrial engineer and works for Kellogg as a Continuous Improvement Project Manager. Groulx Dep. pp. 6:1-4, 12:11-15

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 9

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1    Kellogg dictates Plaintiffs' schedules and provides them with itineraries which the list the
2 individual chain stores that Plaintiffs are required to visit, the days they are to visit the store, and
3 the type of activity they are to perform. Ex. 2, Holton Dep. pp. 733:21-734:15; Ex. 29, Syracuse
4 Itinerary; Ex. 32, Johnson Itinerary. They also contain the sequence in which TMs are to visit the
5 stores. Ex. 28, Pennington Dep. pp. 57:4-58:6. TMs are required to visit stores in their territory
6 when Kellogg delivers product so that the product can be promptly placed on the store floor or in
7 its designated location in the backroom. *Id*.

8    Kellogg closely monitors and supervises Plaintiffs' work throughout the workweek.
9 Kellogg maintains contact with Plaintiffs throughout the workday by using different devices
10 including company issued cell phones, handheld computers, laptops, and iPads. Ex. 2, Holton Dep.
11 763:7-10. Kellogg requires TMs and RSRs to use a GPS tracking application to record the number
12 of business miles they drive and the time of arrival at each location throughout the workday. Ex. 2,
13 Holton Dep. pp. 669:7-670:14, 684:8-24; Ex. 33, Motus Data; Ex. 34, Crowell Written Warning.
14 Kellogg's Sales Account Teams, District Managers, and Zone Managers, or other supervisors
15 communicate with Plaintiffs via cell phone, email, and text multiple times during the day. Ex. 35,
16 Gibson Dep. pp. 86:1-88:19; Ex. 36, Hoak Dep. pp. 144:14-145:18; Ex. 37, McWell Dep. pp.
17 104:12-105:7; Ex. 2, Holton Dep pp. 230:20-234:18; Ex. 27, 2013 TM Study, pp. 34, 41; Ex. 24,
18 Sales Account Team Email. Through the handhelds, Kellogg monitors TMs' ordering activity. Ex.
19 38, Young Dep. pp. 34:23-35:24; Ex. 39, Oldre Letter; Ex. 40, Handheld User Manual, pp. 2, 3. If
20 a TM fails to timely sync the handheld or upload orders, Kellogg reprimands them. Ex. 41, Email
21 Re Sync Policy and Discipline. Kellogg regularly directs TMs to order additional products in order
22 to meet Kellogg's delivery goals. Ex. 2, Holton Dep. pp. 207:8-209:8; Ex. 42, Account Team
23 Email; Ex. 43, Emails Directing Orders. Kellogg also records the number of cases TMs move from
24 the back room and merchandise on the store floor and the number of hours TMs work throughout
25 the week. Ex. 44, Merchandising Survey; Ex. 45, Perteete Dep. pp. 247:20-251:2.

26

27

28 PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 10

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

Kellogg regularly reviews Plaintiffs' work. Supervisors regularly work with TMs to critique their service to the chain stores and follow up with the TMs if they exhibit any deficiencies in their performance. Ex. 23, Nilles Dep. pp. 11:16-17, 181:13-182:3; Ex. 46, Kivett Dep. pp. 139:13-140:4; Ex. 47, Work-Withs. Similarly, supervisors conduct semi and annual performance reviews of TMs' work. Ex. 48, Mid-Year and Annual Reviews. Further, if a TM is kicked out of one of his stores because the store is dissatisfied with the TM's level of service then the TM may be terminated. Ex. 23, Nilles Dep. p. 181:13-20; Ex. 49, KELLOGG-293518. A similar review is conducted by the RSRs' supervisors. Ex. 48, pp. 3-6 (Wendy Hixson).

### C.   Kellogg Pays Plaintiffs and TSRs Approximately the Same Hourly Rate

The salary and bonus that Kellogg pays many TMs works out to approximately the same hourly wage or less than TSRs earn for the performing similar work. Ex. 50, Wage Analysis (showing Plaintiffs' weighed average hourly rate of $12.57); Russo Dec. ¶ 18. For example, Plaintiff Wisby earned an average weekly wage of $989.10 and worked an average of 67 hours per week. Ex. 50, Wage Analysis. Her effective hourly rate was $12.99, which is $2.04 less per hour than the average TSR hourly rate of $14.33.[17] Ex. 50.

### D.   Neither Sales Experience nor Sales Training Are Required for Plaintiffs' Work

Prior sales experience is not a job requirement for TMs or RSRs. Ex. 1, Bussell Dec., Ex. A, p. 20, Bates 001007 and Ex. B, p. 25 (see Education & Experience sections). Kellogg's primary requirements for the job include a high school diploma or GED, proficiency working in Word, Excel, and PowerPoint, the ability to drive a car, and the ability to lift 50 pounds. *Id.* Kellogg does not require TMs and RSRs to receive sales training as a condition of employment. Ex. 51, Plaintiffs' Testimony of No Training; Ex. 52, Daugherty Dep p. 48:4-8. While Kellogg provides a training course for RSRs and TMs in Battle Creek, Michigan and Elmhurst, Illinois, over 600 Plaintiffs did not attend the course. Ex. 53, Plaintiffs' Summary Testimony.

---

[17] Plaintiff Wisby's effective hourly rate is calculated by dividing $989.10 by the sum of 40 hours at the regular rate and 27 overtime hours at time and one-half. See, *Marzuq v. Cadete Enterprises, Inc.*, 807 F.3d 431, 444-45 (1st Cir. 2015) (applying the hourly rate calculation for comparison in misclassification cases); *Smalley*, 2013 WL 1402348, at *12 (N.D. Cal. Apr. 5, 2013)(same).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 11

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

**E.     Kellogg Does Not Pay Plaintiffs Commission**

Neither RSRs nor TMs are paid commissions; both are paid on a salary plus bonus method. Ex. 2, Holton Dep. pp. 432:6-9, 687:7-688:9. RSR bonuses are based on the performance of the business division and their own individual evaluations not on sales. Ex. 2, Holton Dep. pp. 432:6-9, 711:19-712:4; Ex. 54, RSR Compensation Plan. Kellogg currently pays TMs salaries plus a bonus that is based on whether sales in their territories meet forecasted sales.  Ex. 9, Bussell Dep. p. 50:3-11; Ex. 2, Holton Dep. p. 717:17-20. TMs are currently eligible for the bonus if the store sells at least 97% of the forecasted product sales. Ex. 55, TM Bonus Schedules; Ex. 2, Holton Dep. pp. 706:20-708:18. While the bonus level increases with the volume of product the stores sell, it does so only up to 105% of the forecasted sales. Ex. 2, Holton Dep. p. 697:19-25; Ex. 55, TM Bonus Schedules. TMs receive no additional bonus for any volume above 105% of the forecast. *Id*.

Before April 2011 Kellogg used a commission compensation program. Ex. 56, TM Compensation Change Statement; Ex. 9, Bussell Dep. p. 50:12-18. Kellogg ended the commissions because Kellogg found it was not an effective way to compensate TMs for their work. Ex. 2, Holton Dep. pp. 688:5-689:15. Moreover, Kellogg uses the salary plus bonus compensation program for a wide variety of other employees, including District Managers, Zone Managers, Account Executives, Senior Director of Sales. Ex. 57, Bonuses for Other Kellogg Employees; Ex. 2, Holton Dep. p. 632:5-13; O'Connell Dep. p. 136:3-137:3.

## III.  LEGAL ARGUMENT

Pursuant to the FLSA, 29 U.S.C. §213(a)(1), Congress exempts "bona fide outside sales employees" from the minimum wage and overtime protections of the FLSA. The FLSA statute leaves it to the U.S. Department of Labor ("DOL") to define the term "bona fide outside sales employee." DOL, in turn, has adopted regulations that define that phrase. According to the relevant parts of 29 C.F.R. §541.500, an "outside salesmen" is an employee (1) whose **primary duty** is "making sales within the meaning of Section 3(k) of the Act"; and "(2) who is customarily and regularly engaged away from the employer's place or places of business in performing such

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 12

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

primary duty. Only the first factor, "primary duty" is at issue here and that factor turns on two key

concepts: "primary duty" and "sales within the meaning of Section 3(k)"

> The term "primary duty" is defined as:
>
> (a) To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.
>
> (b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.
>
> (c) Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. §541.700. The term "sales" is defined by Section 203(k) of the Act as follows:

> (k) "Sale" or "sell" includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.

29 U.S.C. §203(k).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 13

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1      In applying these definitions to determine whether the Plaintiffs are FLSA exempt outside

2 salespersons, the Court must bear in mind that exemptions to the Fair Labor Standards Act "are to

3 be narrowly construed against the employers seeking to assert them and their application limited to

4 those establishments *plainly and unmistakably* within their terms and spirit." *Arnold v. Ben*

5 *Kanowsky, Inc.,* 361 U.S. 388, 392 (1960) (emphasis added); *see A.H Phillips, Inc. v. Walling,* 324

6 U.S. 490, 493 (1945) ("To extend an exemption to other than those plain and unmistakably within

7 its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the

8 people."). The employer bears the burden of proving that a particular employee, or category of

9 employees, is not within the ambit of the overtime protection. *Gieg v. DDR, Inc.,* 407 F.3d 1038,

10 1045 (9th Cir. 2005) (citing *Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir. 1983) (per

11 curiam)); *see Mitchell v. KY Fin. Co.,* 359 U.S. 290, 295-96 (1959)

12      As set forth below, Kellogg cannot carry its burden to plainly and unmistakably show that

13 Plaintiffs are engaged in "sales" as defined by 29 U.S.C. §203(k), and, even if it could, it cannot

14 show that such "sales" were Plaintiffs' "primary duty" as defined by 29 C.F.R. §541.700. For

15 either or both of those reasons, Defendants' assertion that Plaintiffs are FLSA exempt must be

16 rejected.

17     **A.**    **Plaintiffs Are Not Making Sales Within the Meaning of §203(k) of the FLSA**

18      Kellogg negotiates and executes its sales agreements on a corporate level. Plaintiffs service

19 those sales agreements and police store compliance with corporate sales agreements. Servicing

20 sales made by someone else is not exempt sales work.

21      Kellogg uses an improperly broad definition of sales to support its claim that Plaintiffs sell its

22 products. It considers all its employees who have any connection at all with sales from Vice

23 Presidents to janitors to be FLSA "sales persons", Holton Dep. pp. 259:6-262:8. It applies that

24 broad definition to characterize Plaintiffs' contract service/enforcement work as "sales." But what

25 Kellogg labels a job task does not determine whether that task is, in fact, making a sale for

26 purposes of the FLSA definition. 29 C.F.R. §541.2 (actual job duties determine exempt status, not

27

28   PLAINTIFFS' MOTION FOR PARTIAL                     Getman & Sweeney, PLLC
    SUMMARY JUDGMENT                           9 Paradies Lane
    (3:13-cv-05136-RBL) - 14                      New Paltz, NY 12561
                                        Telephone: (845) 255-9370

1   what the employer calls it). The structure of Kellogg's operations make clear that Kellogg Sales

2   Account Team makes Kellogg's "sales" and that Plaintiffs' routine daily tasks, although related to

3   the servicing and enforcing those sales, are not the making of sales as defined by 29 U.S.C.

4   §203(k).

5   **1.    Kellogg Sells Its Product to Chain Customers at the Corporate Level**

6       Kellogg makes the sales of its products to chain customers at the corporate level. In both

7   the Warehouse and DSD models, Kellogg negotiates master year-long sales agreements and

8   supplemental promotional agreements through the year at the corporate level. In the Master

9   Agreements, Kellogg agrees to provide chain customers with the Kellogg product needed to meet

10  retail demand. It negotiates price, expected quantity, and delivery, credit, return, and payment

11  terms. As the sales year progresses, the Sales Account Teams negotiate supplemental promotional

12  sales contracts to drive demand of Kellogg product with retail shoppers. Individual stores, where

13  Plaintiffs do their work, do not negotiate any contract terms nor do they pay Kellogg for products

14  or develop individual promotions of Kellogg products. All the sales activity takes place on the

15  corporate level.

16      These corporate-level agreements are contracts for the sale of Kellogg products. U.C.C. §2-

17  207(3); U.C.C. §2-204(1). Although the contracts may not include specific quantities for specific

18  stores, such detail is not necessary when the agreement is for the seller to fulfill the requirements of

19  the buyer. U.C.C. §2-306. Making such contracts to sell is selling under contract law, U.C.C. §2-

20  106, and is making sales for purposes of the FLSA. 29 U.S.C. §203(k).

21  **2.    Plaintiffs Do Not Make Sales**

22      Both TMs and RSRs perform the same job function—servicing Kellogg's pre-existing sales

23  contracts. TMs and RSRs are not involved in negotiating or striking the sales or promotional

24  contracts. Plaintiffs' job tasks and the time that they spend on each one are laid out in Kellogg's

25  industrial studies and even Kellogg characterizes virtually all of the job tasks as non-sales tasks,

26  including loading product onto a cart; bringing product from backroom to the sales floor; pulling,

27

28  PLAINTIFFS' MOTION FOR PARTIAL          Getman & Sweeney, PLLC
    SUMMARY JUDGMENT                         9 Paradies Lane
    (3:13-cv-05136-RBL) - 15                 New Paltz, NY 12561
                                             Telephone: (845) 255-9370

facing, and rotating product on the shelves; noting what inventory to bring out on the floor; organizing the back stock area; hanging signs on shelves; transferring product from shelf to display; building, relocating, and removing displays; ordering inventory replenishment; processing returns; interacting with Kellogg personnel; cleaning up the trash and disposing of it.

In its study of RSR job tasks Kellogg also characterizes the vast majority of their work as non-sales work. According to those studies RSRs spend their time at stores performing non-sales related activities such as checking and retrieving inventory from the backroom; transferring product from shelf to display; placing coupons on product; building, relocating, and removing displays; examining Kellogg product displays; recording inventory; pulling, facing, and rotating product on the shelves; preparing for call and signing in and out; and hanging tags and signs. An average RSR store visit lasts 83 minutes and even under Kellogg's overbroad definition the only activity it characterized as sales involved 3.4 minutes out of each visit.

Kellogg's characterization of these servicing and compliance monitoring tasks as non-sales tasks is clearly consistent with the law. As DOL itself has stated,

> A company representative who visits chain stores, arranges the merchandise on shelves, replenishes stock by replacing old with new merchandise, sets up displays and consults with the store manager when inventory runs low but does not obtain a commitment for additional purchases. The arrangement of merchandise on the shelves or the replenishing of stock is not exempt work unless it is incidental to and in conjunction with the employee's own outside sales. Because the employee in this instance does not consummate the sale nor direct efforts toward the consummation of a sale, the work is not exempt outside sales work.

29 C.F.R. §541.503(c). Consistent with this DOL guidance courts have long recognized that employees engage in non-exempt promotional work if other categories of employees "negotiate sale agreements … for the company's products with customers' corporate offices." *Campanelli v. Hershey Co.*, 765 F.Supp.2d 1185, 1191 (2011). Employees are not "magically transform[ed]" into exempt sales employees when they manage their company's inventory in chain customer stores based on pre-existing agreements. *Killion v. Kehe Distrib. LLC*, 761 F.3d 574, 584-5 (6th Cir. 2014); *Hodgson v. Klages Coal & Ice Co.,* 435 F.2d 377, 383 (6th Cir.1970) (soft drink route

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 16

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1    drivers are not exempt outside salespersons because initial solicitations were made by sales

2    manager); *see also*, *Miller v. Farmer Bros. Co.*, 136 Wash. App. 650, 658-59 (2007) (servicing

3    sales previously made is not "making sales"); *N.J. Dep't of Labor v. Pepsi-Cola*, A-918-00T5,

4    2002 WL 187400, at *72-73 (N.J. Super. Ct. App. Div. Jan. 31, 2002) (restocking based on sales

5    by others is not making a sale for purposes of the Outside Sales Exemption). Similarly, employees

6    who "promoted products so employees of retail stores could make sales" perform non-exempt

7    promotional work. *Beauford v. Actionlink, LLC*, 781 F.3d 396, 403 (8th Cir. 2015).

8         Similarly, managing inventory for pre-existing sales contract is not making sales. 29 C.F.R.

9    §541.503; see also *Killion*, 761 F.3d at 584-85, cert. denied, 135 S. Ct. 1745 (2015) (Where an

10    employee orders inventory for a customer's retail sales based on predetermined criteria, the act of

11    placing the order does not constitute a sale) *citing Hodgson*, 435 F.2d at 383. "'Making sales'

12    involves creating the sale—that is, persuading a customer to buy a product he has not already

13    consented to buy." *Miller v. Farmer Bros. Co.*, 136 Wash. App. 650, 658, 150 P.3d 598, 602

14    (2007); *see also*, *Pepsi-Cola*, 2002 WL 187400 (N.J. Super. Ct. App. Div. Jan. 31, 2002)(same).

15    An employee who manages inventory that fluctuates based on the client's needs but played no role

16    in the original solicitation of orders from these clients is not making sales for the purposes of the

17    FLSA. *Miranda-Albino v. Ferrero, Inc.*, 455 F. Supp. 2d 66, 75-76 (D. P.R. 2006).

18         Moreover, the one activity engaged in by TMs and RSRs that Kellogg's studies characterize

19    as sales activity consists of nothing more than asking a store manager for permission to build a

20    display. It is not, in fact, the making of "sales" as that term is defined by the FLSA for several

21    reasons. First, the chain customer previously commits to purchase the product it needs to support

22    promotions. Thus, the "sale" involved in a promotion has already taken place before the TM or

23    RSR asks for the display. Second, the displays are part of promotional agreements struck at the

24    corporate level. Many of these displays are pre-planned and set out in floor plans, supplemental

25    promotional agreements, memoranda, and emails between Kellogg Account Sales Teams and the

26    chain store corporate management. Pre-packaged displays can be sent to individual stores by

27
28    PLAINTIFFS' MOTION FOR PARTIAL                          Getman & Sweeney, PLLC
      SUMMARY JUDGMENT                                        9 Paradies Lane
      (3:13-cv-05136-RBL) - 17                                New Paltz, NY 12561
                                                              Telephone: (845) 255-9370

Account Managers or Plaintiffs' supervisors. Third, displays that Plaintiffs seek are simply a mechanism for ensuring that sufficient product is on the floor to accommodate promotions negotiated at the corporate level. Those promotions are designed to increase retail demand. Accordingly, both the chain customer and Kellogg want and need enough product in the individual stores to support the increased demand. Plaintiffs build the displays to ensure that there is sufficient product on the store floor to support the increased demand resulting from the corporate level promotion. In *Campanelli v. Hershey Co.*, Hershey's "upper-level salespeople … negotiate[d] sale agreements—without any involvement from the RSRs—for the company's products with customers' corporate offices (i.e., Walmart, Safeway, Albertson's, etc.)" The RSRs in that case, a position like the one Plaintiffs hold, helped "stimulate sales by encouraging retailers to replenish their supply and ensuring that sold products are properly marketed at the retail stores." The Court explained:

> The work done by plaintiffs may increase defendant's sales, but it does not affect the plaintiffs' own sales. Since plaintiffs are not the individuals making the actual sale as the exemption requires, this type of "incremental selling" and "sell through," even if they were the plaintiffs' primary duties, does not amount to exempt work.

*Campanelli*, 765 F. Supp. 2d at 1191-92. Similarly, by asking for display space to support contracted promotions, Plaintiffs are helping to increase Kellogg's sales pursuant to its pre-existing sales contract. They are not increasing or consummating new sales on their own or directing efforts toward the consummation of a new sale. They are stimulating sales of pre-sold product. Kellogg calling the work sales does not make it so. *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 638 (S.D.N.Y. 2013) (actual duties, not labels determine the nature of an employee's work). The law is clear that such work is non-exempt promotional work. 29 C.F.R. §541.503(c).

**B.   Plaintiffs' Primary Job Duty Is Non-Exempt Work**

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 18

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

Even if Kellogg were correct that Plaintiffs' requests to build displays in individual stores constitutes sales under the FLSA, Plaintiffs remain non-exempt, because that activity is not their primary duty.[18] Under the FLSA,

> The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. §541.700; *see also Troy v. Kehe Food Distrib., Inc.*, 276 F.R.D. 642, 647 (W.D. Wash. 2011). Courts may also consider other factors such as whether the employees must solicit new business, are required to have prior sales experience, are required to attend sales training, and are whether they are paid by commission. All these factors weigh heavily in favor of finding Plaintiffs' primary duty is the non-exempt work of servicing Kellogg's pre-existing sales contracts.[19]

**1.    Servicing Kellogg's Sales Contracts Are Plaintiffs' Most Important Job Duties**

Servicing Kellogg's pre-existing sales contracts with its chain customers is Plaintiffs' most important job duty. Kellogg's business model depends on shoppers purchasing their product at

---

[18] Of course if, as Plaintiffs contend asking for display space in stores is not sales activity, then Plaintiffs do not engage in any sales activity making it unnecessary to even consider the primary activity portion of the outside sales exemption test.

[19] The *McCartt* decision from the Eastern District of Kentucky, *McCartt v. Kellogg USA, Inc.*, 139 F. Supp. 3d 843 (E.D. Ky. 2015), which Kellogg will undoubtedly raise, is not controlling in this case. *Hart v. Massanari*, 266 F.3d 1155, 1174-75 (9th Cir. 2001) (district courts are not bound by decisions of other district courts even in the same district). Not only is the decision not binding on this Court, the legal arguments raised here are different from those raised in *McCartt*. Plaintiffs' argument here is their work is not making sales for purposes of the FLSA but is instead non-exempt work servicing Kellogg's corporate sales agreements. McCartt did not argue that he did not make sales. *Cancilla v. Ecolab, Inc.*, 12 Civ. 03001 CRB, 2013 WL 1365939, at *2 (N.D. Cal. April 3, 2013) (declining to follow summary judgment decision on a FLSA exemption based on new arguments). Moreover, the primary duty analysis in *McCartt* was based on a far less developed record than the Court has here. For example, the *McCartt* record did not have Kellogg's studies detailing Plaintiffs' job tasks and the time spent on each task—studies that show Plaintiffs spend a deminimus of time making sales even under Kellogg's definition of the term. Nor was the *McCartt* record fully developed on Kellogg's corporate sales-making or Kellogg's DSD product delivery system and TMs roles in those systems. While Kellogg testified for three days in this case, McCartt did not depose the company at all. Accordingly, this Court should base its decision the record and legal arguments before it. See *Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 471, fn 11 (E.D. N.Y. 2015) (resolution of claims by one court does not preclude a different resolution of the same claims on a different record).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 19

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

individual stores. While Kellogg has dedicated Sales Account Teams that negotiate the sales contracts with chain customers, only RSRs and TMs are responsible for servicing those agreements in stores. Without RSRs and TMs, Kellogg would not have someone ensuring that Kellogg products are displayed properly and in accordance with negotiated plan-o-grams and display plans and that stores have sufficient inventory to meet retail demand. Without Plaintiffs' work, Kellogg's product would not be properly merchandised or even available for purchase in stores, retail sales of Kellogg product would plummet, and so too would Kellogg's sales to chain customers. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001); *Marzuq v. Cadete Enter., Inc.*, 807 F.3d 431, 440-441 (1st Cir. 2015)(most important job duty is the one that is "critical to the success" of the business); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 505 (6th Cir. 2007) (most important job duty reviewed in light of "the end goal of achieving the overall success of the company"); *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1227 (5th Cir.1990) (primary duty is the employee's principal value to the employer); *Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982)(most important job duty is the "most important or critical to the success" of the business).

Plaintiffs' service work is their most important job duty because they are the only employees charged with the critical work. Plaintiffs are the only Kellogg employee responsible for all aspects of servicing the contracts in their territories. While Kellogg provides some hourly employees to help TMs, the help is limited. *McCall v. First TN Bank Natl. Assoc*, 3:13 Civ. 00386, 2014 WL 2159007, *7 (M.D. Tenn. May 23, 2014) (employee was responsible for essential daily operations that could only be performed by her, and, without her performance of these tasks, the branch would not have been able to function); *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 916-17 (E.D. La. 2009) (plaintiff's non-exempt work was more important than exempt work because, inter alia, "[i]f [plaintiff] failed to perform his [exempt] duties, [the employer] would still function in much the same manner"); *see also*, *Thomas*, 506 F.3d at 505 (most important duties are those critical duties that no one else performs).

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 20

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

Even if some small portion of Plaintiffs' work are considered making sales, sales is not their primary job duty because that is the primary duty of Kellogg's dedicated corporate salesforce. *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, ---F.Supp.3d---, 2016 WL 626565, at *9 (W.D. N.C. Feb. 16, 2016) (because other employees negotiate contract terms, sales may not be the plaintiffs' primary job duty); *Drummond v. Herr Foods Inc.*, 13 Civ. 5991, 2014 WL 5343642, at *6 (E.D. Pa. Oct. 21, 2014) (even where an employee has sales responsibility, they may not be the primary duty if others also perform sales).

This factor favors Plaintiffs. *Smalley v. Home Depot U.S.A., Inc.*, 11 Civ. 02951-JCS, 2013 WL 1402348, at *19 (N.D. Cal. Apr. 5, 2013).

### 2.   Plaintiffs Spend the Majority of Their Time Servicing Preexisting Contracts

"The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee." 29 C.F.R. §541.700(b). "The outside sales exemption only applies . . . if direct selling is [workers'] primary duty—not just something they do occasionally or even regularly but on a minimal basis." *Campanelli*, 765 F. Supp. 2d at 1190-92.

Kellogg's own studies show that Plaintiffs spend their time servicing Kellogg's corporate contracts and little time "selling" even as Kellogg defines the term. TMs spend an average of 98% and RSRs 96% of their time on non-sales activities according to Kellogg's 2006, 2008, 2010, and 2013 studies. Even if Kellogg is correct that Plaintiffs asking to build displays is selling, which it is not, Kellogg's own studies show that it is a miniscule part of TMs' work—averaging less two minutes per call in the 2008 study and less than 1.5 minutes per 83 minute visit in the 2013 study was dedicated to any interaction with store management. Moreover, it was a task that hourly employees performed as well. In 2013, non-exempt TSRs spent an average of 1.3 minutes per visit doing the same thing. Kellogg's study of RSR job tasks yielded the same result. RSRs spend their time at stores performing non-sales related activities. An average RSR store visit lasts 83 minutes

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 21

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1   and even under Kellogg's overbroad definition of sales, any selling activity lasted an average of 3.4

2   minutes.

3        While Plaintiffs acknowledge that a certain amount of service work can be characterized as

4   incidental to or in conjunction with an employee's own sales work, the vast amount of Plaintiffs'

5   work is servicing sales contracts negotiated and struck by dedicated Kellogg sales people and

6   monitoring compliance with those contracts. The work Plaintiffs do servicing Kellogg's sales

7   contracts cannot be said to be incidental to or in conjunction with the miniscule amount of time

8   Plaintiffs spend asking for permission to build incremental displays. 29 C.F.R. §541.503

9   ("promotional work that is incidental to sales made, or to be made, by someone else is not exempt

10   outside sales work.")

11       **3.    Kellogg Closely Supervises Plaintiffs' Non-Exempt Work**

12        Exempt outside sales people are typically free from direct supervision. 29 C.F.R. §541.700.

13   They are exempt in part because the lack of supervision makes their hours of work difficult to

14   monitor. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2173 (2012); *see also, Jewel*

15   *Tea Co. v. Williams*, 118 F.2d 202, 207-08 (10th Cir. 1941). If the employer can track the hours

16   worked or the work schedule or hours lack flexibility then the employee lacks the indicia of an

17   outside sales person. *Campanelli*, 765 F.Supp.2d at 1193-4. Close supervision of service work

18   strongly suggests that the employee's primary duty is performing the service. See *Skipper v.*

19   *Superior Dairies, Inc.*, 512 F.2d 409, 415-16 (5th Cir. 1975) (monitoring service work indicates

20   service as the primary duty).

21        Unlike exempt employees, Plaintiffs' work is closely supervised. Kellogg dictates the stores

22   Plaintiffs visit, the frequency of the visit, the type of service Plaintiffs shall provide, and the days

23   Plaintiffs shall service the stores. TMs are expected to schedule their work day around product

24   deliveries so that they can move the product from storage to the floor quickly. Kellogg tracks the

25   number of cases TMs merchandise and their service activities each day through their handheld

26   devices, cell telephones, emails, tablets, and regular texting and phone calls. Kellogg monitors

28   PLAINTIFFS' MOTION FOR PARTIAL
    SUMMARY JUDGMENT
    (3:13-cv-05136-RBL) - 22

    Getman & Sweeney, PLLC
    9 Paradies Lane
    New Paltz, NY 12561
    Telephone: (845) 255-9370

1  Plaintiffs' location throughout the workday with a GPS program. TMs are required to register
2  electronically when they arrive at each store. Plaintiffs' supervisors regularly review Plaintiffs'
3  service work through visits with Plaintiffs to their stores. In addition, Plaintiffs are required to
4  email photos of displays they build in support of negotiated promotions. Now, Kellogg also
5  requires TMs to report the number of hours they work and the number of cases they merchandise.

6  Because Kellogg closely supervises Plaintiffs' service work, this factor strongly indicates
7  Plaintiffs' primary duty was non-exempt service work. *Campanelli*, 765 F. Supp. 2d at 1193.

8  **4.  Kellogg Pays Plaintiffs a Similar Hourly Wage as Territory Service Managers**
9  **Earn for Non-Exempt Work**

10  Exempt employees are typically paid more than other employees for the nonexempt work
11  they perform. 29 C.F.R. §541.700; see also, *Marzuq*, 807 F.3d at 444 (Where an employee
12  performs the same nonexempt work as other employees and is paid a similar hourly wage for the
13  work, "the justification for exempting the [employee] from overtime pay is weakened.") Indeed,
14  the premise of FLSA outside sales exemption is that exempt employees receive compensation that
15  "set[s] them apart from the nonexempt workers entitled to overtime pay." *Christopher*, 132 S. Ct.
16  at 2173. Because Plaintiffs are often paid at the same rate and even less than non-exempt TSRs
17  who perform the same the nonexempt work they perform, it is unlikely that Plaintiffs' primary job
18  duty is exempt sales work. *Marzuq*, 807 F.3d at 444-45; *Smalley*, 2013 WL 1402348, at *12.

19  **5.  Plaintiffs Lack External Indicia of Salespeople.**

20  In determining whether worker's primary job duty is making sales, courts may consider
21  external indicia including whether the employees must solicit new business, are required to have
22  prior sales experience, are required to attend sales training, and receive commission compensation.
23  *Hurt v. Commerce Energy, Inc.*, 1:12 Civ. 00758, 2013 WL 4427257, at *5 (N.D. Oh. Aug. 15,
24  2013).

25  None of these criteria apply to Plaintiffs. They lack the indicia of salespeople because they
26  do not solicit new customers or new locations or sell new products into stores or negotiate price.

27
28  PLAINTIFFS' MOTION FOR PARTIAL
     SUMMARY JUDGMENT
     (3:13-cv-05136-RBL) - 23

     Getman & Sweeney, PLLC
     9 Paradies Lane
     New Paltz, NY 12561
     Telephone: (845) 255-9370

Kellogg's dedicated Sales Teams perform that work, not TMs or RSRs. The lack of these selling responsibilities suggests that sales is not a primary duty. *Miranda-Albino*, 455 F. Supp. 2d at 76.

TMs and RSRs are not required to have sales experience to do their job. The primary requirements for the job include a high school diploma or GED, proficiency working in Word, Excel, and PowerPoint, drive a car, and the ability to lift 50 pounds. As several courts have found, a job that does not require prior sales experience is not likely to have sales as a primary job duty. *Drummond*, 2014 WL 5343642, at *8 (job description not requiring prior sales experience does not support sales as a primary duty); *Hurt*, 2013 WL 4427257, at *6 (employees were not hired for their prior sales experience was indicative that they were not outside sales employees).

Plaintiffs are not required to attend specialized sales training. Kellogg did not require Plaintiffs to attend any specialized sales training and many Plaintiffs testified that they did not. Just as requiring sales training is an external indicia of a salesperson, *Hurt*, 2013 WL 4427257, at *5, not requiring it suggests sales is not a primary duty.

Plaintiffs are not paid commissions. RSRs are paid based on the performance of the business division and their own individual evaluations. Kellogg currently pays TMs salaries plus a bonus that is based on whether sales in their territories meet forecasted sales. TMs receive an additional bonus only for up to 105% of the forecast. TMs receive no additional bonus for any volume above 105%. It is telling that Kellogg experimented with paying TMs commissions but found it was not an effective way to compensate them. Conversely, Kellogg uses the salary plus bonus compensation program for a wide variety of employees whose primary job duty is not making sales.

## IV.  Conclusion

The undisputed facts show that Plaintiffs' primary job duty is the non-exempt work of servicing Kellogg's sales contracts and not making sales for purposes of the FLSA. Accordingly, Plaintiffs respectfully request that this Court find that they are not exempt from the FLSA and are entitled to overtime for hours worked more than 40 in a week.

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 24

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

Dated: July 1, 2016

**GETMAN & SWEENEY, PLLC**

 */s/ Matt Dunn*
_____

Michael J.D. Sweeney, *pro hac vice*
Matt Dunn, *pro hac vice*
Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370
Fax: (845) 255-8649
msweeney@getmansweeney.com
mdunn@getmansweeney.com

*/s/ Michael C. Subit*
_____
Michael C. Subit, WSBA No. 29189
Frank Freed Subit & Thomas
Suite 1200
Hoge Building
705 Second Avenue
Seattle, WA 98104-1729
Telephone: (206) 682-6711
Fax: (206) 682-0401
msubit@frankfreed.com

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 25

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 1, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by ECF System.


*/s/   Matt Dunn*

PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT
(3:13-cv-05136-RBL) - 26

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370