1

2          Honorable Ronald B. Leighton

3

4

5

6

7

8

9

10

11        UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF WASHINGTON
12                      AT TACOMA

13

14   PATRICIA THOMAS, et al.,            CASE NO.: 3:13-cv-05136-RBL

15        Plaintiffs,
                                         PLAINTIFFS' OPPOSITION TO
16   v.                                  KELLOGG's MOTION FOR SUMMARY
                                         JUDGMENT OR, IN THE
17   KELLOGG  COMPANY  and  KELLOGG      ALTERNATIVE, PARTIAL SUMMARY
     SALES COMPANY,                      JUDGMENT (Dkt. 394)

18        Defendants.
                                         NOTE ON MOTION CALENDAR:
19                                       August 19, 2016

20                                       ORAL ARGUMENT REQUESTED

21

22

23

24

25

26

27

28   PLAINTIFFS' OPPOSITION TO                    Getman & Sweeney, PLLC
     KELLOGG'S SUMMARY JUDGMENT                   9 Paradies Lane
     MOTION                                       New Paltz, NY 12561
     (3:13-cv-05136-RBL)                          Telephone: (845) 255-9370

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................v

INTRODUCTION .......................................................................................................1

FACTS ........................................................................................................................1

I.  Kellogg's Corporate Sales Contracts ..................................................................1

II.  Duties of TMs and RSRs .....................................................................................3

   A. Ordering Inventory ........................................................................................4

   B. Stocking Shelves, Rotating Stock, and Building Displays..............................6

   C. Maintaining Backroom ..................................................................................6

   D. Writing Credits ..............................................................................................7

   E. Interacting with Kellogg Management, Consumers, and Store Management....7

   F. Other Activities .............................................................................................9

III.  Job Descriptions of TMs and RSRs .....................................................................9

IV.  Training of TMs and RSRs ..................................................................................10

V.  Evaluations of TMs and RSRs ............................................................................11

VI.  Supervision and Monitoring of TMs and RSRs ..................................................14

VII.  Compensation of TMs and RSRs .......................................................................15

VIII.  Kellogg Failed to Ensure It Complied With the FLSA ......................................17

IX.  Plaintiffs Dispute the Number of Opt-ins Who Worked in a Covered Position

   During the FLSA's Statute of Limitations ..........................................................18

ARGUMENT .............................................................................................................18

I.  Summary Judgment Standard...............................................................................18

II.  Defendants Have Not Met Their Summary Judgment Burden of Establishing

   That Plaintiffs Are Exempt Outside Sales Persons As A Matter Of Law ...........19

   A. Plaintiffs Do Not Make Sales .......................................................................19

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
(3:13-cv-05136-RBL) - ii

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1.  Evidence of What Plaintiffs Actually Do, As Opposed to Kellogg's

    Characterization of Their Work Show That Plaintiffs Do Not Make Sales ............19

2.  Plaintiffs Do Not Perform Tasks Typical of Outside Sales Persons........................23

3.  Maximizing Orders Is Not "Sales" ....................................................................24

4.  *Christopher's* Narrow Holding Does Not Apply to Plaintiffs ...............................25

5.  The Court Should Not Follow the *McCartt* Decision.........................................26

6.  Under *Ackerman* Plaintiffs Are Non-Exempt Employees ..................................28

B.  Plaintiffs' Primary Job Duty Is Servicing Sales Contracts, Not Making Sales................30

1.  Legal Standard for Determining Primary Duty ......................................................30

2.  Plaintiffs Spend All of Their Time Servicing Kellogg's Sales Contracts and

    That Is Plaintiffs' Most Important Job Duty .........................................................30

3.  Kellogg Closely Supervises Plaintiffs' Work ........................................................33

4.  Plaintiffs Are Paid the Same or Less than Non-Exempt Employees for

    Performing Service Work.......................................................................................34

5.  Plaintiffs Lack External Indicia of Salespeople....................................................36

III.  Kellogg Has NOT Shown That Plaintiffs Are Administratively Exempt As

    a Matter of Law ...................................................................................................37

A.  Kellogg Admits It Fails the Administrative Exemption's Salary Basis Test As to

    Territory Managers..............................................................................................38

B.  Kellogg's Argument Fails the Second Prong of the Administrative Exemption ............38

C.  Plaintiffs Do Not Exercise Discretion and Independent Judgment with Respect to

    Matters of Significance ........................................................................................39

IV.  Defendants Have Not Shown The Combination Exemption Applies

    As a Matter of Law...............................................................................................41

V.  Kellogg Is Not Entitled to Summary Judgment

    on the Non-Dispositive Issues It Raises .................................................................41

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
(3:13-cv-05136-RBL) - iii

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

A. Plaintiffs Are Entitled To Mandatory Liquidated Damages ............................................ 41

B. Kellogg Willfully Violated the FLSA .................................................................... 43

C. Disputes over Which Plaintiffs' Claims Are Barred By a Statute of Limitations
Are Best Resolved at the Damages Stage of the Litigation ................................................ 44

D. Kellogg Waived a Judicial Estoppel Defense ................................................................. 45

E. Kellogg's Motion for a Judgment on the Arizona Wage Act Claim Should Be
Denied Again ............................................................................................................. 46

F. Plaintiffs' Kentucky State Claims Are Appropriate ............................................................ 50

   1. The Kentucky Supreme Court Will Decide If a Class Action May Be
Brought For Overtime Claims Under Kentucky Law ....................................................... 50

   2. Kentucky law follows the FLSA in defining the outside sales exemption. ............. 50

G. Minnesota and Washington Meal and Rest Breaks Are Proper ....................................... 51

CONCLUSION .............................................................................................................. 52

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Coca-Cola Enterprises, Inc.*, 179 F.3d 1260 (10th Cir. 1999) ................... 23, 28, 29

*Adam v. U.S.*, 26 Cl. Ct. 782 (1992) ................................................................ 39

*Ah Quin v. County of Kauai Dept. of Transp.*, 733 F.3d 267 (9th Cir. 2013)............................. 46

*Ahle v. Veracity Research Co.*, 738 F.Supp.2d 896 (2010) ........................................ 40

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) ........................................ 19, 42, 43

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................ 18

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388 (1960) ........................................ 19

*Baker v. D.A.R.A. II, Inc.*, 06 Civ. 2887-PHX-LOA, 2008 WL 191995

   (D. Ariz. Jan. 22, 2008) ................................................................ 47

*Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104 (9th Cir. 2001) ........................................ 31

*Beauford v. ActionLink, LLC*, 781 F.3d 396 (8th Cir. 2015) ........................................ 22, 26, 40

*Brady v. AutoZone Stores, Inc.*, 13 Civ. 1862 RAJ, 2015 WL 5732550

   (W.D. Wash. Sept. 30, 2015), leave to appeal denied (Jan. 25, 2016) ...................... 52

*Campanelli v. Hershey Co.*, 765 F.Supp.2d 1185 (2011) ........................................ passim

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................... 18

*Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908 (9th Cir. 2003)......................................... 42

*Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433 (E.D. N.Y. 2015)........................................ 28

*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir. 1992)......................................... 43

*City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n,* 212 S.W.3d 89 (Ky. 2006).......... 50

*Clark v. Centene Co. of Texas, L.P.*, 44 F. Supp. 3d 674 (W.D. Tex. 2014)............................... 41

*Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008)......................................... 20, 29

*Cleveland v. City of Los Angeles*, 420 F.3d 981 (9th Cir. 2005) .................................. 19

*Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162 (2d Cir. 1991).................................... 18

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
(3:13-cv-05136-RBL) - v

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010) ........................................... 49

*Dalheim v. KDFW–TV*, 918 F.2d 1220 (5th Cir.1990) ......................................... 31, 41

*Daprizio v. Harrah's Las Vegas, Inc.*, 2:10 Civ. 00604-GMN, 2010 WL 5099666

    (D. Nev. Dec. 7, 2010) ........................................................................................ 48

*Demetrio v. Sakuma Bros. Farms, Inc.*, 355 P.3d 258 (Wash. 2015) ........................... 52

*Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir. 1982) ...................................... 31

*Dunford v. Am. DataBank, LLC*, 64 F. Supp. 3d 1378 (N.D. Cal. 2014) ..................... 43

*Flores v. City of San Gabriel*, 14 Civ. 56421, 2016 WL 3090782

    (9th Cir. June 2, 2016) ............................................................................. 42, 43, 44

*George v. DirectSat USA, LLC*, 2:10 Civ. 01664–GMN–RJJ, 2012 WL 845589

    (D. Nev. March 12, 2012) .................................................................................... 48

*Gessele v. Jack in the Box, Inc.,* 3:10 Civ. 960-ST, 2013 WL 1326563

    (D. Or. Jan. 28, 2013) *report and recommendation adopted*, 3:10 Civ. 00960-ST, 2013

    WL 1326538 (D. Or. Apr. 1, 2013) ..................................................................... 48

*Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014), cert. denied sub nom.

    *City of Los Angeles, Cal. v. Haro*, 135 S. Ct. 138 (2014)................................. 42, 43

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001) ...................................................... 26

*Hodgson v. Klages Coal & Ice Co.,* 435 F.2d 377 (6th Cir.1970)....................... passim

*Hurt v. Commerce Energy, Inc.*, 1:12 Civ. 00758, 2013 WL 4427257

    (N.D. Ohio Aug. 15, 2013) .................................................................................. 36

*IntraComm, Inc. v. Bajaj*, 492 F.3d 285 (4th Cir. 2007) .............................................. 41

*Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903 (E.D. La. 2009) ....................... 32

*Killion v. Kehe Distributors LLC*, 761 F.3d 574 (6th Cir. 2014)......................... passim

*Klem v. County of Santa Clara*, 208 F.3d 1085 (9th Cir.2000) .................................... 19

*Lazoda v. Maggy*, 900 F. Supp. 596 (N.D. N.Y. 1995) ............................................... 18

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
(3:13-cv-05136-RBL) - vi

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

*Lint v. Nw. Mut. Life Ins. Co.*, 09 Civ. 1373 DMS RBB, 2010 WL 4809604

   (S.D. Cal. Nov. 19, 2010) ................................................................. 33

*Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611 (2d Cir. 1991) ...................... 18

*Marzuq v. Cadete Enterprises, Inc.*, 807 F.3d 431 (1st Cir. 2015)................... 16, 31, 35

*McCall v. First Tennessee Bank National Assn.*, 3:13 Civ. 00386,

   2014 WL 2159007 (M.D. Tenn. May 23, 2014)........................................ 31

*McCann v. The Sullivan University System, Inc.*, 2015-SC-000144-DG

   (Supreme Court of Kentucky)........................................................... 50

*McCartt v. Kellogg USA, Inc.*, 139 F. Supp. 3d 843 (E.D. Ky. 2015)............................ 26, 27, 50

*McCoy v. N. Slope Borough*, 3:13 Civ. 00064-SLG, 2013 WL 4510780

   (D. Alaska Aug. 26, 2013)............................................................... 48

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)........................... 43

*Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577 (5th Cir. 2013) .............................. 23, 24

*Miller v. Farmer Bros. Co.*, 136 Wash. App. 650, 150 P.3d 598 (2007) .............................. 20, 29

*Miranda-Albino v. Ferrero, Inc.*, 455 F. Supp. 2d 66 (D. P.R. 2006) ........................ 20, 23, 29, 36

*N.J. Dep't of Labor v. Pepsi-Cola*, A-918-00T5, 2002 WL 187400

   (N.J. Super. Ct. App. Div. Jan. 31, 2002)................................................. 20, 21, 22, 29

*Nat. Ass'n of Realtors v. Champions Real Estate Servs. Inc.*, 812 F. Supp. 2d 1251

   (W.D. Wash. 2011) ...................................................................... 45

*Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d 199 (2d Cir. 1989)................. 19

*Norwood v. Vance*, 591 F.3d 1062 (9th Cir.2010)................................ 45

*Perryman v. Dorman*, 10 Civ. 1800-PHX-FJM, 2010 WL 4682580

   (D. Ariz. Nov. 10, 2010)................................................................ 47

*Pioch v. IBEX Engr. Services, Inc.*, 15 Civ. 10845, 2016 WL 3254138

   (11th Cir. June 14, 2016) ................................................................ 35

*Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 978 P.2d 2 (1999)..................................... 21, 37

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
(3:13-cv-05136-RBL) - vii

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

*Rattner v. Netburn*, 930 F.2d 204 (2d Cir.1991) ............................................................ 18

*Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011)................................................. 46

*Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 3:12 Civ. 00596MOCDSC,

2016 WL 626565 (W.D. N.C. Feb. 16, 2016) ......................................... 20, 21, 24

*Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 2007) ....................................... 40

*Reyes v. Goya Foods, Inc.*, 549 F. App'x 876 (11th Cir. 2013) ............................... 23, 32

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) .................. 51

*Roberts v. Trimac Transp. Servs. (W.), Inc.*, C12-05302 HRL, 2013 WL 1441999

(N.D. Cal. Apr. 9, 2013) .......................................................................................... 48

*Rose v. Wildflower Bread Co.*, 09 Civ. 1348-PHX-JAT, 2011 WL 196842

(D. Ariz. Jan. 20, 2011) .............................................................................. 47, 48, 49

*Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560 (7th Cir. 2012)............................... 39

*Skipper v. Superior Dairies, Inc.*, 512 F.2d 409 (5th Cir. 1975) ................................. 34

*Smalley v. Home Depot U.S.A., Inc.*, 11 Civ. 02951-JCS, 2013 WL 1402348

(N.D. Cal. Apr. 5, 2013) ........................................................................................... 16

*Taylor v. Waddell & Reed, Inc.*, 09 Civ. 2909 AJB WVG, 2012 WL 10669

(S.D. Cal. Jan. 3, 2012) ............................................................................................ 33

*Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496 (6th Cir. 2007) ............... 31, 32

*Thompson v. Gjivoje*, 896 F.2d 716 (2d Cir. 1990) ...................................................... 19

*Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642 (W.D. Wash. 2011)................. 30

*W. Radio Services Co., Inc. v. Glickman*, 123 F.3d 1189 (9th Cir. 1997) ................... 51

*Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. 2010)........................... 47, 49

*Williamson v. General Dynamics Corp.*, 208 F.3d 1144 (9th Cir.2000) ..................... 48

*Wingert v. Yellow Freight Sys., Inc.*, 50 P.3d 256 (Wash. 2002)................................. 52

*Wood v. TriVita, Inc.*, 2:08 Civ. 0765, 2008 WL 6566637 (D. Ariz. Sept. 18, 2008)................. 49

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
(3:13-cv-05136-RBL) - viii

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

**Statutes**

11 U.S.C. §554 .................................................................................................... 45

29 U.S.C. §216(b) ............................................................................................... 41

29 U.S.C. §255 .................................................................................................... 43

29 U.S.C. §260 .................................................................................................... 42

A.R.S. §23–351 ............................................................................................. 46, 47

Minn. Stat. Ann. §177.22 .................................................................................... 52

Minn. Stat. Ann. §177.253 .................................................................................. 51

Minn. Stat. Ann. §177.254 .................................................................................. 51

Wash. Admin. Code §296-128-540 ..................................................................... 51

**Other Authorities**

Defining and Delimiting the Exemptions for Executive, Administrative, Professional,

    Outside Sales and Computer Employees, 69 Fed. Reg. 22128 (Apr. 23, 2004) ...................... 41

Defining and Delimiting the Exemptions for Executive, Administrative, Professional,

    Outside Sales and Computer Employees, 69 FR 22122-01 .................................... 29

**Regulations**

29 C.F.R. §541.200 ............................................................................................. 38

29 C.F.R. §541.501 ............................................................................................. 32

29 C.F.R. §541.503 ............................................................................................. 32

29 C.F.R. §541.504 ............................................................................................. 21

29 C.F.R. §541.708 ............................................................................................. 41

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
(3:13-cv-05136-RBL) - ix

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Kellogg's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment is largely based on its self-serving characterizations of what Plaintiffs do. Determining the applicability of Fair Labor Standards Act ("FLSA") exemptions requires an analysis of what the Plaintiffs actually do, not how Kellogg or even the Plaintiffs may characterize the work. Focusing on the Plaintiffs' actual job duties as described in Kellogg's own industrial studies, testimony, and other evidence demonstrates that Plaintiffs perform non-exempt work and are due overtime wages. The myriad of other issues on which Kellogg seeks summary judgment are either not ripe for consideration or not supported by the law or the undisputed facts. Accordingly, Kellogg's motion is without legal basis and should be denied.

**FACTS**

**I.      Kellogg's Corporate Sales Contracts**

Kellogg sells processed food products to approximately 60 chain customers on the corporate level.[1] Dkt. # 395-2, Holton Dep., App.[2] 1289-1290, pp. 66:6-23, 72:7-10. Kellogg's top chain customers are Walmart, Kroger, Ahold USA, Shoprite, Publix, Dollar General, Meijer, Food Lion, Target, Giant Eagle, and Market Basket. Dkt. # 395-2, Holton Dep., App. 1289, p. 67:4-13; Ex. 1, Top 10 Customers. Wal-Mart is Kellogg's largest customers and accounts for over 20% of Kellogg's business. Dkt. # 395-2, Holton Dep., App. 1276, p. 14:4-11; Ex. 2, 2015 Annual Report.

Kellogg begins its planning process to sell to chain customers in January of the previous sales year. Dkt. # 395-2, Holton Dep., App. 1313-14 and 1409, pp. 163:5-7, 164:9-19, 166:24-168:15, 544:18-545:14. The process produces an individualized sales plan for each chain

---

[1] Plaintiffs incorporate facts from their summary judgment motion into this brief. Dkt. # 397, Plaintiffs' Motion for Partial Summary Judgment, pp. 1-12. Within that brief Plaintiffs more fully describe how Kellogg sells its products on the corporate level in their summary judgment motion. Id. at pp. 1-4.

[2] "App." refers to Kellogg's appendix page number filed in support of its summary judgment motion.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
    (3:13-cv-05136-RBL) - 1

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

customer. *Id.* at App. 1294, 1313-14, and 1408-09, pp. 87:3-14, 165:19-170:18, 541:10-543:9. Kellogg takes those individualized chain plans and, starting as early as September, negotiates year-long master sales requirement contracts with its chain customers. Dkt. # 395-2, Holton Dep., App. 1294, 1408, pp. 87:20-88:12, 542:18-543:9; Ex. 3, Master Sales Contract; Ex. 4, Nat'l Acct. Executive Job Description ("Lead the develop annual customer plan that sets objectives to support all brands through merchandising, promotions, advertising, shelf space, pricing and new products"). The contracts include the volume of products that the chain customers expect to need, the price Kellogg will charge the chain customer for the products, promotions that will support retail demand, expenditure of Kellogg Merchandising Funds, and other sale terms such as delivery, payment, and credits. *Id.* at App. 1293-95, 1297-98, 1306-07, and 1401-02, pp. 85:19-88:12, 90:19-91:6, 98:14-99:2, 103:15-24, 135:20-139:5, 541:10-19, 543:10-24; Dkt. # 395-2, Salmon Dep., App. 22, p. 84:2-20; Ex. 3, Master Sales Contract, p. 5; Ex. 5, Publix Business Review; Ex. 4, Nat'l Acct. Executive Job Description.

Then throughout the year Kellogg's "Account Teams" (hereafter referred to as "Sales Account Teams") meet weekly or more frequently to evaluate the achievement of the master sales contract goals, measuring consumption through the inventory shipped to customers. Dkt. # 395-2, Holton Dep., App. 1294-1296, 1310, 1318, pp. 89:13- 90:2, 94:14-95:13, 153:16-21, 182:16-183:18; Ex. 6, Reed Dep., pp. 191:23-192:18; Ex. 7, Kelly Dep., p. 46:20-23; Dkt. # 395-2, Salmon Dep., App. 1571, pp. 82:24-83:10; Ex. 3, Master Sales Contract; Ex. 5, Publix Business Review. Kellogg's Sales Account Teams sell additional product through promotions to the chain customers if retail demand does not meet the expectations set at the beginning of the year. Dkt. # 395-2, Holton Dep., App. 1411, pp. 153:5-21; 271:4-272:5, 551:2-11, 572:2-577:4; Dkt. # 395-2, Bussell Dep., App. 1175, p. 108:22-109:12; Ex. 8, Contracts; Ex. 9, KMF Funds. The promotions include detailed forecasts of the expected increase in retail demand that allow Kellogg and the chain customer to understand how much additional product the chain customer will need. Dkt. # 395-2, Holton Dep., App. 1409, pp. 544:10-545:3; Dkt. # 395-2, O'Connell

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 2

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

Dep., App. 1699, p. 102:11-23; Ex. 9, KMF Funds. Promotions involve a chain customer committing to set up special displays of Kellogg product in the customers' stores. Dkt. # 395-2, Holton Dep., App. 1302, 1308-09, 1320, 1327-34, pp. 121:17-22, 142:4-20, 148:7-149:12, 191:5-193:24, 220:14-223:15, 225:23-248:4; Dkt. # 395-2, Bussell Dep., 1168, 1173, p. 78:11-79:13, 99:22-100:4; Ex. 8, Contracts, pp. 1, 3, 4; Ex. 10, Customer Authorization for Display; Ex. 11, Planned Display Location; Ex. 12, Cartrail Display; Ex. 13, Walmart Display Plan; Ex. 14, Fight Hunger Display Plan. Kellogg does not regularly track displays or the amount of product sold from a display in individual stores. Dkt. # 395-2, Holton Dep., App. 1417, 1419, p. 577:13-578:2, 583:15-584:15; Dkt. # 395-2, Bussell Dep., App. 1173, 1178, 1180, pp. 100:15-19, 120:16-121:2, 127:15-128:5; Dkt. # 395-2, Oldre Dep., App. 1618, pp. 47:13-48:3; Dkt. # 395-2, Kaminski Dep., App. 1530, p. 212:6-8. At the end of the year, Kellogg's aim is to meet its contracts that were set at the beginning of the year. Dkt. # 395-2, Holton Dep., App. 1310, 1340, 1416-1417, pp. 153:5-21; 271:4-272:5, 572:2-577:4.

## II.    Duties of TMs and RSRs

Kellogg uses two different models to service its corporate contracts. Kellogg's Snack Division uses a Direct Store Delivery Model ("DSD Model"). Dkt. # 395-2, Bussell Dec., App. 1724-5, ¶¶ 6-7. In the DSD Model, Kellogg delivers the product to its chain customers' individual retail stores where Kellogg employees are responsible for managing the inventory and ensuring there is enough product on the store floor and in the backroom to replace consumer purchases.[3] *Id.* at ¶ 6. Kellogg's "Morning Foods Division" uses a "Warehouse Model" in which Kellogg delivers the products covered by the sales contract to a chain customer's warehouse. Dkt. # 395-2, Bussell Dec. ¶7, App. 1724-1725; Dkt. # 395-2, Holton Dep., App. 1414, pp. 564:13-566:4; Ex. 15, DSD Benefits, p. 16. The chain customer is then responsible for delivering to and managing product at the store level. Dkt. # 395-2, Bussell Dec. ¶ 7, App. 1724-1725; Dkt.

---

[3] More frequent store visits are necessary because consumers take snack products from the shelves more frequently than other categories of products. Ex. 15, DSD Benefits.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 3

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1    # 395-2, Bussell Dep., App. 1157 and 1175, pp. 34:7-11, 109:16-24; Dkt. # 395-2, Holton Dep.,

2    App. 1345-1346, pp. 293:22-294:20.

3         Plaintiffs in this case are Territory Managers (TMs) who work in Kellogg's DSD Model

4    and Retail Sales Representatives (RSRs) who work in the Warehouse Model.[4] *See* Third

5    Amended Complaint, Dkt. # 216 at ¶¶ 2, 139; Answer, Dkt. # 232 at ¶¶ 2, 139. In both cases,

6    their primary job duty is to service the sales contracts Kellogg strikes at the corporate level. TMs

7    and RSRs actual day-to-day job duties are described in Kellogg's industrial studies and

8    confirmed by Plaintiffs' testimony. Ex. 16, 2006 TM Study; Ex. 17, 2008 TM Study; Ex. 18,

9    2010 RSR Study; Ex. 19, 2013 TM Study. Kellogg commissioned the industrial studies to

10   determine the precise activities TMs and RSRs perform and the amount of time spent on each

11   such activity.[5] Those studies show:

12        **A.    Ordering Inventory**

13        TMs and RSRs do not take orders from customers. Dkt. # 395-2, Bussell Dep., App. 1172

14   and 1180, pp. 94:6-8, 126:2-24; Dkt. # 395-2, Holton Dep., App. 1348-49, pp. 305:11-307:14.

15   TMs order inventory but are not required to obtain store management approval on orders because

16   Kellogg has already contracted to provide the chain's store with the inventory it needs to meet its

17   retail customer demand. Dkt. # 395-2, Bussell Dep., App. 1179-80, pp. 122:9-19, 126:2-24; Dkt.

18   # 395-2, Holton Dep., App. 1348-49 and 1413, pp. 305:11-307:14, 560:6-17; Dkt. # 395-2,

19   Gibson Dec., App. 1767, ¶ 9; Dkt. # 395-2, Dowling Dec. 1756-57, ¶ 9; Dkt. # 395-2, Sayedi

20   App. 1771, Dec. ¶ 9; Dkt. # 395-2, Thomas Dec. App. 1778, ¶ 15. These corporate contracts

21   include the price, quantity, delivery method, payment and other terms of the agreement. Dkt. #

22   395-2, Holton Dep., App. 1293-95, 1297-98, 1306-07, 1408, 1409, pp. 85:19-91:6, 98:14-

23

24

25   [4] TMs work in Kellogg's Snacks Division and RSRs work in Kellogg's Morning Foods Division.
     [5] Kellogg considers that the studies accurately represent TMs and RSRs duties and incorporates the finding to
26   develop labor standards. See Ex. 20, Willard Bishop Labor Standards Proposal; Dkt. 395-2, Holton Dep., App. 1388,
     pp. 460:20-462:4; Ex. 21, Groulx Dep., p. 25:6-15; Ex. 22, Pennington Dep., p. 87:8-18; Ex. 23, Syracuse Itinerary;
27   Ex. 25, Workload Model; Ex. 26, 2008 Labor Budgeting

28   PLAINTIFFS' OPPOSITION TO                          Getman & Sweeney, PLLC
     KELLOGG'S SUMMARY JUDGMENT                         9 Paradies Lane
     MOTION                                             New Paltz, NY 12561
       (3:13-cv-05136-RBL) - 4                          Telephone: (845) 255-9370

103:24, 135:20-139:5, 541:10-19, 543:10-24; Dkt. # 395-2, Salmon Dep. App. 1571 p. 84:2-20; Ex. 3, Master Sales Contract; Ex. 5, Publix Business Review; Ex. 4, NAE Job Description. They are negotiated and consummated by a dedicated Kellogg corporate sales force. Dkt. # 395-2, Holton Dep., App. 1293-95, 1297-98, and 1408-9, pp. 85:19-88:12, 90:19-91:6, 98:14-99:2, 103:15-24, 541:10-19, 543:10-24; Dkt. # 395-2, Salmon Dep., App. 1571, p. 84:2-20; Ex. 3, Master Sales Contract.

TMs' job is to order sufficient product inventory to replenish shelves and fill displays at individual stores to support corporate promotions.[6] Dkt. # 395-2, Bussell Dep., App. 1179-80, pp. 122:9-19, 126:2-24; Dkt. # 395-2, Holton Dep., App. 1348-49 and 1413, pp. 305:11-307:14, 560:6-17. Kellogg expects that ordering inventory on the handheld device takes 13% of an average TM store visit. Ex. 19, 2013 TM Study, p. 11; see also, Ex. 16, 2006 TM Study, and Ex. 17, 2008 TM Study (both showing almost identical results to the 2013 study.)

In the Warehouse Model, store personnel order product from the chain's customer's warehouse, not RSRs. Dkt. # 395-2, Bussell Dep., App. 1172, pp. 94:6-8. While RSRs make recommendations to grocery store managers on how much to order to maintain sufficient inventory to meet consumer demand, the managers are free to disregard the recommendation. Dkt. # 395-2, Bussell Dep., App. 1194, p. 183:4-18. RSRs recommend quantities to order based on their review of the store's inventory and upcoming promotions. Dkt. # 395-2, Bussell Dep., App. 1171-72, pp. 93:10-95:24. The store decides what to order. Dkt. # 395-2, Bussell Dep., App. 1172, pp. 94:6-8. Kellogg expects this work to take less than 6% of RSRs' service calls. Ex. 18, 2010 Study.

---

[6] Corporate promotions may include buy-one-get-one free promotions, discounts on product prices, events around the holidays or sporting events. Ex. 3, Master Sales Contract; Ex. 5, Publix Business Review; Dkt. # 395-2, Holton Dep., App. 1410, pp. 547:5-550:12.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 5

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

### B.      Stocking Shelves, Rotating Stock, and Building Displays

Both TMs and RSRs stock shelves and build displays. Ex. 19, 2013 TM Study; Ex. 16 2006 TM Study; Ex. 17, 2008 TM Study; Ex. 18, 2010 Study; Dkt. # 93, Thomas Dec. ¶¶ 9, 15; Dkt.# 395-2, Bussell Dep., App. 1168, pp. 80:21-81:9; Dkt. # 395-2, Thomas Dep., App. 872, p. 47:9-22; Dkt. # 395-2, Dowling Dec. ¶ 9; Dkt. # 395-2, Dye Dec. ¶ 9; Dkt. # 395-2, Gibson Dec. ¶ 9; Dkt. # 395-2, Sayedi Dec. ¶ 9; Dkt. # 395-2, Holton Dep., App 1345, p. 292:3-293:2.

Kellogg expects TMs to dedicate approximately 47% of each call to stocking shelves and building displays. Ex. 19, 2013 TM Study, p. 11. This work includes: walking the store to check product on shelves and displays (13%); pulling, facing and rotating product (7%); making note of inventory levels and what cases to obtain from the backroom (1%); hanging signs on shelves and displays (1%); transferring product between shelves and displays (2%); building, relocating, and removing displays (4%); walking from the backroom (1%); pick and place products (14%); organizing units in aisle (1%); dealing with repacked product (2%); and managing the resulting trash (1%). Ex. 13, 2013 TM Study, p. 11; see also, Ex. 16, 2006 TM Study; Ex. 17, 2008 TM Study.

Kellogg expects RSRs to spend approximately 79% of each call stocking shelves and building displays. Ex. 18, 2010 RSR Study. This work includes checking inventories and searching and retrieving product from the backroom (9.9%); transferring product between shelves and displays (4.4%); placing coupons on product (7.1%); building, relocating, removing, and filling displays (15.5%); walking the store to examine Kellogg product areas (5.3%); fill out inventory forms (12.6%); pick and place product on shelf (8%); pull, fact and rotate products on displays and shelves (5.6%); hanging tags and signs on shelves (3.1%); dealing with trash (3.3%); and waiting to speak with people or searching for product or cart (4%). *Id.* at p. 8.

### C.      Maintaining Backroom

Kellogg expects TMs to spend 13% of their time on calls doing this work, including walking to the back room (2%); organizing the back stock area (8%); selecting cases in the

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 6

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

backroom (3%). Ex. 19, 2013 TM Study, p. 11; see also, Ex. 16, 2006 TM Study; Ex. 17, 2008 TM Study; Dkt. # 395-1, Mastenbrook Dep., App. 548-49, p. 126:6-127:14; Dkt. # 395-1, Brashear Dep., App. 29-30, p. 104:14-105:10; Dkt. 395-1, Johnson Dep., App 389, p. 29:17-21; Dkt. # 395-2, Wisby Dec. App 1138, p. 221:2-7; Dkt. 395-2, Holton Dep., App. 1344, 1541-42, pp. 29:25-30:2, 286:3-25; Dkt. # 395-2, Chew Dep., App 1233 and 1263, pp. 134:6-11, 40:7.

### D.   Writing Credits

Kellogg expects TMs to spend approximately 2% of each store visit reconciling invoices by writing credits and having credit entered by store personnel. Ex. 19, 2013 TM Study at p. 11. See also, Ex. 16, 2006 TM Study; Ex. 17, 2008 TM Study; Dkt. # 395-2, App 1346-7, pp. 297:24-298:25; Dkt. # 395-2, Dowling Dec. ¶ 15(b); Dkt. # 395-2, Dye Dec. ¶ 15(b); Dkt. # 395-2, Gibson Dec. ¶ 15(b); Dkt. # 395-2, Thomas Dec. ¶ 21(b).

### E.   Interacting with Kellogg Management, Consumers, and Store Management

TMs and RSRs interact with Kellogg management, consumers, and store management. Ex. 17, 2008 TM Study, p. 11; Dkt. # 395-2, Dowling Dec. ¶ 11; Dkt. # 395-2, Dye Dec. ¶11; Dkt. # 395-2, Gibson Dec. ¶ 11; Dkt. # 395-2, Saydei Dec. ¶ 11; Dkt. # 395-2, Thomas Dec ¶¶ 11, 17. TMs and RSRs talk to store managers about many issues. Ex. 19, 2013 TM Study, p. 51; Dkt 395-1, Johnson Dep., App. 0392, p. 44:8-20 (product in backroom); Dkt. 395-1, Mastenbrook Dep., App. 0542, p. 120:5-12 (something wrong in snack aisle); Ex. 27, Smith Dep., pp. 36:4-37:23 (letting store manager know he's servicing store); Ex. 28, Kivett Dep. p. 109:12-111:5(calls about empty shelves and moving product from one location to another) . Some of this interaction involves talking about building in-store display that is part of pre-contracted promotions. Ex. 19, 2013 TM Study, p. 51; Dkt.# 395-1, Dowling Dep., App. 149-50, pp. 94:3-95:1; Dkt.395-1, Gibson Dep., App. 347-48, pp. 67:8-70:4; Dkt.# 395-2, Holton Dep., App 1307-8, p. 141:15-142:3. TSRs and PTMs also talk to store managers about building displays. Ex. 19, 2013 TM Study, p. 19 (TSR "selling interaction – with Store Management"); Ex. 29, TSR "Selling" Displays Emails. Typically Kellogg's Sales Account Teams have

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
   (3:13-cv-05136-RBL) - 7

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

negotiated the displays at the corporate level. Dkt. # 395-2, Holton Dep., App. 1302, 1308, 1309, 1320, 1327-1328, 1328-1334, pp. 121:17-22, 142:4-20, 148:7-149:12, 191:5-193:24, 220:14-223:15, 225:23-248:4; Dkt. # 395-2, Bussell Dep., App. 1168, 1173, p. 78:11-79:13, 99:22-100:4; Ex. 8, Contracts, pp. 1, 3, 4; Ex. 10, Customer Authorization for Display; 11, Planned Display Location; Dkt. # 12, Cartrail Display; 13, Walmart Display Plan; 14, Fight Hunger Display Plan; Dkt. 395-1, Dye Dep., App. 0311, p. 118:1-5; Dkt 395-1, Gibson Dep., App. 0347, pp. 67:8-68:17; Dkt. # 395-2, Wisby Dep., App. 1063-64, pp. 146:4-147:6; Dkt. # 395-1, Brashear Dep., App. 0023-24, pp. 81:18-84:1. Sometimes Plaintiffs may ask to build a display to ensure that the store has sufficient product on the floor to support the promotion. Dkt. # 395-1, Mastenbrook Dep., App. 463, 468, pp. 41:15-24, 46:17-47:18; Ex. 30, Stock Dep. p. 53:18-25. When Plaintiffs speak with store managers they do not negotiate price, which products the store will carry, promotion terms, space and location on shelves, or product quantity. Dkt. # 395-2, Holton Dep., App 1279, p. 27:11-28:9; Dkt. # 395-2, Bussell Dep., App. 1167-68, 1182 , p. 74:13-22 74:9-12 80:19 to 80:20, 134:23-25. These discussions are a small part of TMs' and RSRs' work. Ex. 17, 2008 TM Study, p. 11; Dkt. # 395-2, Dowling Dec. ¶ 11; Dkt. # 395-2, Dye Dec. ¶11; Dkt. # 395-2, Gibson Dec. ¶ 11; Dkt. # 395-2, Sayedi Dec. ¶ 11; Dkt. # 395-2, Thomas Dec ¶¶ 11, 17.

During each visit, TMs are expected to spend no more than 6% of their time interacting with Kellogg management (3%), consumers, and store management on general (3%) and social issues during visits. Ex. 19, 2013 TM Study, p. 11; see also, Ex. 16, 2006 TM Study; Ex. 17, 2008 TM Study; Dkt. # 395-2, Dowling Dec. ¶ 11; Dkt. # 395-2, Dye Dec. ¶11; Dkt. # 395-2, Gibson Dec. ¶ 11; Dkt. # 395-2, Sayedi Dec. ¶ 11; Dkt. # 395-2, Thomas Dec ¶¶ 11, 17. Kellogg expects TMs to spend less than 2% of their call time interacting with store managers on what Kellogg characterizes as "selling to or discussing displays or orders with store managers." Ex. 19, 2013 TM Study, p. 11, 51. See also, Ex. 16, 2006 TM Study; Ex. 17, 2008 TM Study.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 8

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1  During each visit, RSRs are expected to spend no more than 12% of their time interacting

2  with Kellogg management (4.2%), consumers (2.6%), and store personnel on general issues

3  (5.8%). Ex. 18, 2010 RSR Study, p. 9. Kellogg expects RSRs to spend 4.1% of their call time on

4  interactions making non-binding recommendations to store managers on how much to order to

5  maintain sufficient inventory to meet consumer demand, work that Kellogg calls "selling". Ex.

6  18, 2010 RSR Study, p. 8.

7  ### F.    Other Activities

8  Kellogg also expects TMs to spend 17% of the time Kellogg credits to each store visit

9  driving between stores, and it expects TMs to spend 2% of each call dealing with personal

10  matters and fatigue. Kellogg also expects RSRs to spend 4.5% of their time preparing in their

11  car, and entering and exiting the store. Ex. 19, 2013 TM Study, p. 11, 51. See also, Ex. 16, 2006

12  TM Study; Ex. 17, 2008 TM Study.

13  ### III.    Job Descriptions of TMs and RSRs

14  Neither the TM nor RSR job profile requires prior sales experience as a precondition for

15  employment. Dkt. # 395-2, TM Job Profile, App. 1740; Dkt. # 395-3, RSR Job Profile, App.

16  1801. Kellogg hired many RSRs and TMs without prior sales experience. *See,*Dkt. # 395-3,

17  Mastenbrook Resume, App. 1810; Dkt. # 395-3, McWell Resume, App. 1811-12; Dkt. # 395-2,

18  Wisby Dep., App. 0982-83, p. 65:6-66:7. Kellogg describes the TM job as requiring extensive

19  physical activities, including lifting up to 50 pounds. Dkt. # 395-2, TM Job Profile, App. 1740;

20  Dkt. # 395-3, RSR Job Profile, App. 1801. The RSR job description makes clear that the job

21  involves manual labor such as "lifting, bending, standing, reaching, kneeling" and "lifting heavy

22  items averaging 20 pounds". Dkt. # 395-3, RSR Job Profile, App. 1801. While Kellogg's job

23  descriptions characterize much of the work as "sales," the actual work described is non-sales

24  work.[7] For example, Kellogg lists duties TMs are to perform including: "maintain and monitor

---

[7] Kellogg also claims that it advertised the positions as "sales" positions. But there's no evidence that the job descriptions documents were used in advertisements.

25

26

27

28  PLAINTIFFS' OPPOSITION TO
   KELLOGG'S SUMMARY JUDGMENT
   MOTION
     (3:13-cv-05136-RBL) - 9

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1   shelf space to maximize sales and follow space management plan-o-grams as assigned", "write

2   appropriate orders based on store volume, promotional activity, displays sold in, unsaleables and

3   other key financial factors", "control backstock and inventory levels appropriate to each retail

4   store", and "merchandise Kellogg's Snacks products on shelves and displays in assigned retail

5   stores; organize, rotate and keep shelf stock current during each store visit". Dkt. # 395-2, TM

6   Job Profile, App. 1739. For RSRs the duties listed in the job description include talking to the

7   store managers about displays, ensuring the store follows the schematic for the shelves and

8   recording the placement of product on the shelves to convey to Kellogg, making sure the price

9   tags on the shelves are correct, rotating product, transferring product from the backroom to the

10  store floor, building displays, and discarding of waste. Dkt. #395-3, RSR Job Profile, App. 1800.

11  **IV.        Training of TMs and RSRs**

12          Kellogg did not train Plaintiffs to sell Kellogg products. Named and opt-in Plaintiffs did

13  not attend Kellogg's Advanced Selling Academy. Dkt. # 395-5, Dowling Interrogatory Response

14  No. 3, App. 1976; Dkt. # 395-5, Dye Interrogatory Response No. 3, App. 2011; Dkt. # 395-5,

15  Gibson Interrogatory Response No. 3, App. 1981; Dkt. # 395-5, Johnson Interrogatory Response

16  No. 3, App. 1986; Dkt. # 395-5, Mastenbrook Interrogatory Response No. 3, App. 1991; Dkt.

17  395-5, Sayedi Interrogatory Response No. 3, App. 1971; Dkt. # 395-1, McWell Dep., App. 0588,

18  0602, 93:4-7; 147:19-148:1; Dkt. # 395-1, Rink Dep., App. 0659-0660, 55:24-56:1; Dkt. # 395-

19  2, Wisby Dep., App. 0987-0988, 70:17-71:6; Dkt. # 395-5, Brashear Interrogatory No. 3, App.

20  2006, Ex. 32, Plaintiffs' Summary Testimony re Training. Named and opt-ins Plaintiffs also did

21  not receive any sales training from Kellogg. Dkt. # 395-1, McWell Dep., App. 0598, 131:5-14;

22  Dkt.395-2, Sayedi Dep., App. 0829, 63:12-14; Dkt. # 395-2, Thomas Dep., App. 901, 163:24-

23  164:1; Dkt. # 395-2, Wisby Dep., App. 0985, 68:5-13, Ex. 32, Plaintiffs' Summary Testimony re

24  Training. Instead, Plaintiffs primarily received training in the tasks listed in the industrial studies

25  set forth above. Dkt. # 395-1, Brashear Dep., App., pp. 72:13-73:7, 155:9-13; Dkt. # 395-2,

26

27

28  PLAINTIFFS' OPPOSITION TO
    KELLOGG'S SUMMARY JUDGMENT
    MOTION
     (3:13-cv-05136-RBL) - 10

    Getman & Sweeney, PLLC
    9 Paradies Lane
    New Paltz, NY 12561
    Telephone: (845) 255-9370

Thomas Dep., App. 0879, pp. 76:6-11, 77:4-13; Dkt. # 395-1, McWell Dep., 584-5, pp. 77:14-78:10.

In 2011, Kellogg began training some RSRs and TMs at its company headquarters.[8] The training topics include Kellogg's history and values, activities they will perform in the store, using their electronic devices, and how to communicate with store managers and other Kellogg employees. Dkt. # 395-6, KASA Program Agenda, App. 2475-80; Dkt. # 395-2, Thomas Dep., App. 879, p. 76. Kellogg's training includes how to talk to store managers about building displays on the store floor in support of contracted promotions. Kellogg improperly characterizes those conversations with store managers about displays as "selling" and refers to it as SPARC.[9]

Kellogg holds District and Zone meetings throughout the year. District meetings may occur once a month, or less, and a zone[10] meeting occurs once a year. Dkt. # 395-2, Chew Dep., App. 1224, p. 99:15-22. During those meeting Kellogg informs RSRs and TMs about negotiated promotions, new products Kellogg will distribute, and how Kellogg is performing against its annual contracts. Dkt. 395-2, Wisby Dep., App. 1075, pp. 158:4-10; Dkt. 395-2, Thomas Dep. App. 893, pp. 131:23-132:16. Some meetings involve role playing exercises that consists of TMs and RSRs pretending that they are talking to store managers about building displays to support a previously agreed upon corporate promotion. Dkt. # 395-1, Brashear Dep., App. 40, pp. 147:22-148:16; Dkt. # 395-1, Mastenbrook Dep., App. 526-27 p. 104:19-105:3; McWell Dep., 96:1-25.

## V.        Evaluations of TMs and RSRs

Kellogg evaluates RSRs and TMs through in-store visits, mid-year reviews, and annual reviews. Supervisors evaluate TMs on their ability to neatly stock shelves, follow the

---

[8] Kellogg also trains other categories of employees at its company headquarters. Dkt. 395-2, Kaminski Dep., App. 1514, pp. 146:24-148:15.
[9] Kellogg states that SPARC stands for "start the conversation and summarize the customer's situation; present ideas using fact-based selling; articulate how it works; reinforce key benefits and address objections, and close and ask for the sale. Kellogg's characterization of this training as "sales" training is just that – a self-serving characterization. Whether talking to store managers about building displays for previously contracted promotions constitutes "sales" for purposes of the FLSA is a legal question addressed in the argument section of this brief
[10] A zone is comprised of several districts which are made up of several territories.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 11

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

planograms, build displays in support of promotions, maintain the backroom, rotate stock, write credits, get along with store managers, follow safety standards, maintain their vehicles, follow their itinerary. See Ex. 34, Work-Withs. For example, in Named Plaintiff Thomas' mid-year review, her supervisor instructed her to improve her in-store service calls including "ordering quantities", "shelf management", and "backstock organization". Dkt. # 395-4, Thomas Review, App. 1879. Named Plaintiff Wisby's annual review included criticisms about her execution of preplanned displays, failure to timely sync her handheld, receipt of "many store complaints about service issues", and running out of product. Dkt. # 395-4, Wisby Review, App. 1889. Similarly, Named Plaintiff Dye's evaluation included a criticism that he "had issues with running low or out of product" in his stores. Ex. 35, Dye Review. Named Plaintiff Johnson was criticized for not "ordering immediately upon availability, setting and tagging in section." Ex. 36, Johnson Review. Evaluations may also include various financial statistics about the about territory, such as the value of the product that is delivered to the stores, the number of hours non-exempt labor worked in the territory, and credits to the chain customers.[11]

Similarly, RSRs evaluations include a review of activities that are servicing corporate sales contracts. For example, RSR Kivett's annual review states that Ms. Kivett "places IRC [instant redeemable coupons] as directed by the company, but needs to ensure that all IRC's are in data and used properly for in store execution." Ex. 37, Kivett Review. The reviews include statistics on the sales performance of the Morning Foods business unit, but not specific data on sales attributable to the RSR or even to the stores they visit. For example, RSR Volk's annual review states "Southern Region finished at $556 for MF -$7.3MM to budget with 100% time

---

[11] These same metrics are contained in documents called scorecards. Kellogg characterizes the scorecards as tracking "Plaintiffs' sales". However, Kellogg uses the scorecard to measure Kellogg's performance against the corporate contracts and breaks it down based on the scope of work. For TMs, the scorecards contain data on the value of the product that is delivered to stores within the territory, credits written, the number of hours non-exempt employees worked, and safety indicators. Kellogg cannot tell what party of the data in the scorecard is due to a display and/or promotion. Dkt. 395-2, Holton Dep., App. 1420, pp. 589: 21-590:13. Many other categories of employees also have scorecards, including District and Zone Managers. Dkt. 395-2, Chew Dep., App. 1223, p. 97:6-18.

PLAINTIFFS' OPPOSITION TO KELLOGG'S SUMMARY JUDGMENT MOTION
 (3:13-cv-05136-RBL) - 12

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

gone." Ex. 38, Volk Review. The evaluations include whether new items are on the shelves, preplanned displays are built and stocked with product, and the RSR enter shelf compliance data into Kellogg's database. Ex. 38, Volk Review ("making sure as much as possible that [Walmart] is comac compliant"); Ex. 38, Volk Review ("Entered RW3 on a daily basis").

Kellogg disciplines TMs and RSRs for a number of reasons, including poor performance reviews or being excluded from a store for failure to provide the store's expected level of service. Ex. 39, Nilles Dep., p. 181:13-20; Ex. 40, Termination Notes; Dkt. # 395-2, Oldre Dep., App. 1623, p. 67:8-69:22.

Kellogg evaluates Plaintiffs on their interactions with store managers regarding building displays that are part of corporate promotions. [12] Although Kellogg characterizes this job duty as "sales," it does not track display activity in each store. Dkt. # 395-2, Bussell Dep., App. 1178. p. 120:10-21. Kellogg does not track whether displays are built and placed as part of pre-negotiated agreements at the corporate level, at the store manager's request, or at the suggestion of a TM or RSR. *Id*. Kellogg does not know if previously ordered product in the backroom or from the shelf was used to fill displays. Kellogg does not know if a consumer purchases product from a shelf or a display or the amount of product consumers purchase from displays versus shelves. Dkt. # 395-2, Bussell Dep., App. 1178, pp. 120:23-121:12; Dkt. # 395-2, Kaminski Dep., App. 1530 p. 212:6-8. In Warehouse Model, Kellogg does not know if the RSR or store personnel built the display. Dkt. # 395-2, Salmon Dep., App 1602-3, pp. 208:22-209:18, 210:15-212:6. In DSD Model, Kellogg does not know if a TM or some other Kellogg employee, such as a Part-time Merchandiser (PTM), Territory Service Representative (TSR),[13] or any other employee asked for or built the display. *Id*. All of these employees may remind the store personnel about upcoming

---

[12] Even if there are displays in the stores, TMs and RSRs may receive a poor performance evaluation. Dkt.# 395-3 Dowling Review, App. 1832 (despite 24 displays in a Wal-Mart, TM missed her budget, and was rated "Did Not Meet Expectations"); Dkt. # 395-4, Wisby Review, (Annual review resulted in "Did Not Meet Expectations" even though there were "large displays for big events"), App. 1889.

[13] TSRs and PTMs are variable labor that Kellogg assigns to TMs routes to help with the volume of work. Dkt.# 395-2, Bussel Dec. App. 1726, ¶ 13.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 13

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1   promotions, help ensure that there is enough product in the store to support the promotion, check
2   where any display is allocated, and if there is not a location for a display, ask the store personnel
3   for a display location to support the corporate sales contracts. Exs. 16-19, TM and RSR Studies.

4   **VI.        Supervision and Monitoring of TMs and RSRs**

5          Kellogg dictates Plaintiffs' schedules and provides them with itineraries which the list the
6   individual chain stores that Plaintiffs are required to visit, the days they are to visit the store, and
7   the type of activity they are to perform. Dkt. # 395-2, Holton Dep., pp. 733:21-734:15; Ex. 23,
8   Syracuse Itinerary; Ex. 24, Johnson Itinerary. They also contain the sequence in which TMs are
9   to visit the stores. Ex. 22, Pennington Dep., pp. 57:4-58:6. TMs are required to visit stores in
10  their territory when Kellogg delivers product so that the product can be promptly placed on the
11  store floor or in its designated location in the backroom. *Id*.

12         Kellogg closely monitors and supervises Plaintiffs' work throughout the workweek.
13  Kellogg maintains contact with Plaintiffs throughout the workday by using different devices
14  including company issued cell phones, handheld computers, laptops, and iPads. Dkt. # 395-2,
15  Holton Dep., 763:7-10. Kellogg requires TMs and RSRs to use a GPS tracking application to
16  record the number of business miles they drive and the time of arrival at each location
17  throughout the workday. Dkt. # 395-2, Holton Dep., pp. 669:7-670:14, 684:8-24; Ex. 42, Motus
18  Data; Ex. 43, Crowell Written Warning. Kellogg's Sales Account Teams, District Managers, and
19  Zone Managers, or other supervisors communicate with Plaintiffs via cell phone, email, and text
20  multiple times during the day. Dkt. # 395-1, Gibson Dep., App. 352, pp. 86:1-88:19; Ex. 44,
21  Hoak Dep., pp. 144:14-145:18; Dkt. # 395-1, McWell Dep., App. 591, pp. 104:12-105:7; Dkt. #
22  395-2, Holton Dep pp. 230:20-234:18; Ex. 19, 2013 TM Study, pp. 34, 41; Ex. 45, Sales
23  Account Team Email. Through the handhelds, Kellogg monitors TMs' ordering activity. Ex. 46,
24  Young Dep., pp. 34:23-35:24; Ex. 47, Oldre Letter; Ex. 48, Handheld User Manual, pp. 2, 3. If a
25  TM fails to timely sync the handheld or upload orders, Kellogg reprimands them. Ex. 49, Email
26  Re Sync Policy and Discipline. Kellogg regularly directs TMs to order additional products in

27
28  PLAINTIFFS' OPPOSITION TO              Getman & Sweeney, PLLC
    KELLOGG'S SUMMARY JUDGMENT             9 Paradies Lane
    MOTION                                 New Paltz, NY 12561
      (3:13-cv-05136-RBL) - 14             Telephone: (845) 255-9370

order to meet Kellogg's delivery goals. Dkt. # 395-2, Holton Dep., pp. 207:8-209:8; Ex. 45, Account Team Email; Ex. 50, Emails Directing Orders. Kellogg also records the number of cases TMs move from the back room and merchandise on the store floor and the number of hours TMs work throughout the week. Ex. 51, Merchandising Survey; Ex. 52, Perteete Dep., pp. 247:20-251:2. Further, if a TM is kicked out of one of his stores because the store is dissatisfied with the TM's level of service then the TM may be terminated. Ex. 39, Nilles Dep., p. 181:13-20; Ex. 40, Termination Notes.

Kellogg monitors and limits the number of hours that non-exempt TSRs and PTMs can work in TMs assigned territories. Dkt. # 395-2, Chew Dep., App. 1207, 31:16-24; TSRs and PTMs report directly to District Managers, not TMs. Ex. 22, Pennington Dep., 22:8-10; Ex. 39, Nilles Dep., p. 87:7-9. Merchandising Managers allocate the number of TSR and PTM labor hours (Variable Labor) a TM's territory can use each week and District and Zone Managers may revise the amount of Variable Labor working in a TM's territory and assign the TSRs or PTMs to work in a different territory. Ex. 22, Pennington Dep., pp. 21:13-22:10, 102:10-14; Dkt. # 395-2, Bussell Dep., App. 1194, p. 183:19-184:2. When Variable Labor is assigned to a TM's territory by a Manager, the TM conveys to the TSRs and PTMs work to perform in specific stores. Dkt. # 395-2, Thomas Dep., App. 882, p. 87:19-88:3. TMs do not hire, fire, or discipline TSRs and PTMs. Ex. 22, Pennington Dep., p. 21:13-22:10; Dkt. # 395-2, Bussell Dep., App. 1194, p. 184:15-19; Dkt. # 395-2, Sayedi Dep., App. 832, p. 76:12-77:11. Variable Labor is only available in the DSD Model, RSRs working in the Warehouse Model do not receive labor support from TSRs and PTMs. Dkt. # 395-2, Bussell Dec. App. 1726-7, ¶¶13, 17.

## VII.        Compensation of TMs and RSRs

Before April 2011 Kellogg paid TMs less than $455 per week in salary. Russo Dec. ¶ 11; Ex 54, Pay Change; Dkt. 395-3, Pay Change, App. 1784. TMs also received a commission based

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
   (3:13-cv-05136-RBL) - 15

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

on the value of product that entered the store, less any credits. Dkt. # 395-2, Bussell Dep., App. 1161, p. 50:16-51:4.[14] Kellogg determined that the commission structure was unsuccessful and, in April 2011, Kellogg began paying TMs a salary plus a bonus that is based on the value of the inventory delivered to stores. Dkt. # 395-2, Bussell Dep., App. 1161, p. 50:3-11; Dkt. # 395-2, Holton Dep., p. 717:17-20.

TMs are eligible for the bonus if the store sells at least 97% of the product sales to consumers forecasted in corporate contracts. Ex. 55, TM Bonus Schedules; Dkt. # 395-2, Holton Dep., pp. 706:20-708:18. If a TM orders inventory for a store that the consumers do not purchase, the TM's bonus is reduced. While the bonus level increases with the volume of product the stores sell to consumers, it does so only up to 105% of the forecasted sales. Dkt. # 395-2, Holton Dep., p. 697:19-25; Ex. 55, TM Bonus Schedules. TMs receive no additional bonus for any volume above 105% of the forecast, or bonuses for work performed in other territories or associated with Morning Foods products. *Id.* TMs' bonuses made up as little as 16% of their total compensation. Russo Dec. ¶ 12.

The salary and bonus that Kellogg pays many TMs works out to approximately the same hourly wage or less than non-exempt TSRs earn for the performing similar work. Ex. 56, Wage Analysis (showing Plaintiffs' weighed average hourly rate of $12.57); Ex. 57, Russo Dec. ¶ 18. For example, Plaintiff Wisby earned an average weekly wage of $989.10 and worked an average of 67 hours per week. Ex. 56, Wage Analysis. Her effective hourly rate was $12.29,[15] which is $2.04 less per hour than the average TSR hourly rate of $14.33. Id. (other Named Plaintiffs hourly rates approximately equal to or less than TSRS include: Thomas $13.31; Rink $14.33; Johnson $14.39; and McWell $14.21).

---

[14] Kellogg offers no evidence of the amount Plaintiffs received in actual commission versus base pay.

[15] Plaintiff Wisby's effective hourly rate is calculated by dividing $989.10 by the sum of 40 hours at the regular rate and 27 overtime hours at time and one-half. See, *Marzuq v. Cadete Enterprises, Inc.*, 807 F.3d 431, 444-45 (1st Cir. 2015) (applying the hourly rate calculation for comparison in misclassification cases); *Smalley*, 2013 WL 1402348, at *12 (N.D. Cal. Apr. 5, 2013)(same).

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 16

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1   Currently RSRs and TMs are eligible for bonuses. RSR bonuses are based on the

2   performance of the business division and their individual work evaluations but not on sales. Dkt.

3   # 395-2, Holton Dep., pp. 432:6-9, 711:19-712:4; Ex. 58, RSR Compensation Plan.

4   **VIII.        Kellogg Failed to Ensure It Complied With the FLSA**

5   Kellogg is aware that it must comply with the FLSA and pay overtime wages to non-

6   exempt employees. Dkt. # 395-2, Holton Dep., App. 1465, 768:24-769:10. Despite this

7   knowledge Kellogg did not analyze TMs and RSRs job duties to determine whether treating

8   them as exempt complied with the FLSA. Dkt. # 395-2, Holton Dep., App. 1465-1473, pp.

9   768:14-802:10. When Kellogg completed its industrial studies in 2006, 2008, 2010, 2013 and

10  2015 it did not use the information on job duties or time spent performing those duties to

11  evaluate whether RSRs or TMs were properly classified as exempt from the FLSA, even though

12  those studies provided remarkably detailed information about their actual job duties. Dkt # 395-

13  2, Holton Dep., App. 1467-9, pp. 778:17-786:9; Ex. 16-19, TM and RSR Studies.

14  Litigation against Kellogg and other grocery supply companies did not trigger an

15  investigation into whether it properly paid TMs and RSRs under the FLSA. TMs and RSRs sued

16  Kellogg three times between 2002 and 2015 for unpaid overtime wages. Ex. 59, Overtime Cases

17  Against Kellogg. As a result of those lawsuits, and even though they settled, Kellogg did not

18  determine whether it had to pay them overtime wages. Dkt. # 395-2, Holton Dep., App. 1467,

19  1471-2, pp. 775:12-778:17, 793:2-795:12. Nabisco, as the result of a 1999 U.S. Department of

20  Labor investigation, reclassified its in-store representatives as FLSA non-exempt and paid over

21  $5,000,000 in back overtime wages. Ex. 60, Nabisco DOL Settlement; Dkt. # 395-2, Holton

22  Dep., App 1469-70, pp. 786:10-789:15. Kellogg knew about the settlement and yet did not

23  conduct an evaluation of whether TMs and RSRs were properly classified as exempt. *Id.* When a

24  court determined Hershey in-store employees were not outside sales or administratively exempt,

25  Kellogg did not analyze whether its RSRs or TMs should also be non-exempt. Dkt. # 395-2,

26

27

28

Holton Dep., App 1470, pp. 789:12-791:13; Ex. 60, Nabisco DOL Settlement; Ex. 61, Hershey Settlement.

Even though Kellogg received emails from attorneys concerning the FLSA outside sales exemption it did not take steps to evaluate its obligations. Dkt. # 395-2, Holton Dep., App 1472, pp. 796:16-799:12. Kellogg did not review the U.S. Department of Labor overtime regulations or seek any external advice. Dkt. # 395-2, Holton Dep., App. 1471, pp. 791:14-792:25

**IX.     Plaintiffs Dispute the Number of Opt-ins Who Worked in a Covered Position During the FLSA's Statute of Limitations**

Kellogg claims 252 opt-ins did not work in a position covered by this lawsuit during the two-year FLSA limitation period. Of these, 176 opt-ins worked in a covered job position within the FLSA's third year statute of limitations. Russ Dec. ¶ 6.

**ARGUMENT**

**I.     Summary Judgment Standard**

Because Kellogg is the moving party, it can prevail on summary judgment only if "no reasonable jury could return a verdict" for Plaintiffs. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991). In making this determination, the Court must accept Plaintiffs' version of the facts, make all reasonable inferences from those facts in Plaintiffs' favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and resolve all ambiguities in Plaintiffs' favor. *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991).

Here, the summary judgment standard holds added significance because Kellogg's claimed exemptions are affirmative defenses and it bears the ultimate burden of proof at trial. *See Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991). "Where the movant shoulders the burden of proof, it must establish that there is no genuine issue of material fact to be decided regarding *any essential element* of that party's claim." *Lazoda v. Maggy*, 900 F. Supp. 596, 601 (N.D.N.Y. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (emphasis added). "[I]f the party opposing summary judgment generates uncertainty as to the true state of any material fact" summary judgment is inappropriate. *Nat'l Union Fire Ins. Co. v. Turtur*, 892 F.2d

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 18

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

199, 203 (2d Cir. 1989). Plaintiffs need not conclusively negate any element of Kellogg's claim in order to avoid summary judgment, they must only show that any element "may reasonably be decided in favor of either party." *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citation omitted).

The Court should decline Kellogg's invitation to stretch the bounds of its claimed exemptions to reach TMs and RSRs because the FLSA is a "remedial law" and its exemptions are "narrowly construed against the employers seeking to assert them." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *see also Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (quoting *Arnold* with approval); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 (9th Cir. 2003) (same), *aff'd*, 546 U.S. 21 (2005). Furthermore, "[f]ollowing the Supreme Court's lead," the 9th Circuit "ha[s] also read FLSA exemptions … tightly, refusing to apply them 'except [in contexts] *plainly and unmistakably* within the [ ] [given exemption's] terms and spirit.'" *Id.*, *quoting Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir.2000) (emphasis and alterations in *Klem* from *Alvarez); accord Arnold* at 392 (application of exemptions must be limited except where "plainly and unmistakably within their terms and spirit"). This is a standard Kellogg cannot meet.

## II. Defendants Have Not Met Their Summary Judgment Burden of Establishing That Plaintiffs Are Exempt Outside Sales Persons As A Matter Of Law

### A. Plaintiffs Do Not Make Sales

1. Evidence of What Plaintiffs Actually Do, As Opposed to Kellogg's Characterization of Their Work Show That Plaintiffs Do Not Make Sales

Kellogg's argument that Plaintiffs make sales is contingent on the Court accepting Kellogg's characterization of what Plaintiffs do as sales. But the exemption analysis is about Plaintiffs actual job tasks, not about the words that Kellogg, or even the Plaintiffs, may use as short-hand ways to characterize those tasks. Fortunately, Kellogg's industrial studies provide extraordinarily specific evidence of the discrete tasks that Plaintiffs actually perform. These studies, confirmed by the Plaintiffs' testimony, clearly show that Plaintiffs' job duties do not

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 19

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

constitute "making sales" as that term is defined by the FLSA. Several courts have analyzed the outside sales exemption as it applies to employees who work in chain grocery stores performing the same or similar tasks as Plaintiffs, and those courts have found those job duties to be non-exempt.

As shown above, Kellogg's industrial studies show that the lion's share (98% of each store visit for TMs and 96% for RSRs) of the job duties Kellogg expects Plaintiffs to perform involves service work. For example, Kellogg's industrial studies show that TMs are expect to spend approximately 13% of their time placing orders for product to replenish shelves and fill displays at individual stores. Courts routinely find that such work is not exempt work, particularly where, as here, the orders do not require store approval. See, e.g., *Killion v. KeHE Distributors, LLC*, 761 F.3d 574, 586 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1745 (2015) (district court erred by finding that the replenishment of stock without requiring store approval is making sales); *Miranda-Albino v. Ferrero, Inc.*, 455 F. Supp. 2d 66, 75-76 (D. P.R. 2006); *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 413 (5th Cir. 1975) (employee not exempt because he did not negotiate orders with store manager); *Rehberg v. Flowers Baking Co. of Jamestown, LLC*, 3:12 Civ. 00596MOCDSC, 2016 WL 626565, at *8 (W.D. N.C. Feb. 16, 2016)(finding that reordering products to fill available shelf space is a non-exempt duty); *N.J. Dep't of Labor v. Pepsi-Cola*, A-918-00T5, 2002 WL 187400, at *76 (N.J. Super. Ct. App. Div. Jan. 31, 2002)("restock[ing] based primarily upon highly detailed CDAs and Plan-O-Grams negotiated by Pepsi management, with the greatest variations to the restock amounts flowing from special promotions and prices outside the BCR's control" is non-exempt work.); *Miller v. Farmer Bros. Co.*, 136 Wash. App. 650, 658, 150 P.3d 598, 602 (2007)("If making a sale is nothing more than exchanging product for payment, then almost all deliveries would qualify as outside sales"); accord *Clements v. Serco, Inc.*, 530 F.3d 1224, 1227-28 (10th Cir. 2008) ("The touchstone for making a sale, under the Federal Regulations, is obtaining a commitment.").

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 20

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1    Kellogg expects TMs to dedicate approximately 47% of each call to stocking shelves and

2    building displays. This work includes walking the store to check product on shelves and

3    displays; pulling, facing and rotating product; making note of inventory levels and what cases to

4    obtain from the backroom; hanging signs on shelves and displays; transferring product between

5    shelves and displays; building, relocating, and removing displays; walking from the backroom;

6    picking and placing products; organizing units in aisle; dealing with repacked product; and

7    managing the resulting trash. Kellogg expects RSRs to spend approximately 79% of each call

8    doing similar service work.

9    Courts also regularly find this kind of service work to be non-exempt work. See, e.g.,

10   *Killion*, 761 F.3d at 586; *Hodgson v. Klages Coal & Ice Co.,* 435 F.2d 377, 383 (6th Cir.1970);

11   *Campanelli v. Hershey Co.*, 765 F.Supp.2d at 1191-92; *Rehberg*, 2016 WL 626565, at *8

12   (stocking shelves is non-exempt work); *Drummond v. Herr Foods Inc.*, 13 Civ. 5991, 2014 WL

13   5343642, at *7 (E.D. Pa. Oct. 21, 2014) ("restocking shelves for accounts that had already

14   negotiated how much of Herr's products they would purchase" is non-exempt work); *Pepsi-Cola*,

15   2002 WL 187400, at *77 ("setting out for display products that were needed to replenish those

16   portions of the customers' display areas that were devoted to Pepsi's products either on a

17   continual basis or on a special basis pursuant to a promotion or arrangement established by Pepsi

18   management"); *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 802, 978 P.2d 2, 13 (1999)

19   (restocking product "is not a sales activity in the conventional meaning of the word"). See also,

20   29 C.F.R. §541.504 (stocking shelves is non-exempt work).

21   Kellogg expects TMs to spend more than 6% of each call and RSRs 12% of each store

22   visits communicating with Kellogg management and consumers, and store personnel about

23   general issues such as pulling from the backroom, managing and cleaning the backroom,

24   transferring product from the backroom to the store, product placement, stocking shelves and

25   displays, building, relocating and removing displays, hanging signs on shelves and displays,

26

27

28   PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 21

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1  placing coupons on product; pulling, facing and rotating product; transferring cases between
2  shelf and display; and disposing of trash are clearly non-exempt. *Id.*

3  Kellogg expects TMs to dedicate 13% of their store visits to maintaining the storeroom.
4  Courts recognize that maintaining the storeroom is not exempt work. See, e.g., *Killion*, 761 F.3d
5  at 585.

6  Kellogg expects TMs to spend 2% of each store visit reconciling invoices by writing
7  credits and having credit entered by store personnel. Courts consider reconciling invoices to be
8  non-exempt work. *See, e.g.*, *Killion*, 761 F.3d at 585.

9  Less than 2% of TM store visits are spent on what Kellogg calls "sales", *i.e.*, interacting
10  with store management to ask permission to build displays. Courts have found such work to be
11  non-exempt work. *Hershey*, 765 F. Supp. 2d at 1191-93 (rejecting the claim that securing display
12  space is making sales for purposes of the FLSA); *Hodgson*, 435 F.2d at 383 (rejecting employers
13  claim that seeking additional display space makes a route worker outside sales exempt); *Pepsi-*
14  *Cola*, 2002 WL 187400, at *76 (finding that seeking a good display location does not Pepsi's
15  store representatives outside sales people). RSRs spend 4.1% of store visits encouraging store
16  managers to replenish their supply of Kellogg product along with seeking permission to build
17  displays. Such non-binding recommendations are not sales. *Hershey*, 765 F. Supp. 2d at 1191
18  ("encouraging retailers to replenish their supply" pursuant to a pre-existing contract is not
19  making sales); *Beauford v. ActionLink, LLC*, 781 F.3d 396 (8th Cir. 2015) (encouraging store
20  management to order product for inventory is non-exempt work)..

21  Kellogg expects TMs to spend the balance of the time for store visits driving between
22  calls and attending to personal matters and fatigue. It expects RSRs to spend 4.5% of store visits
23  preparing in their car and entering and exiting the store. Such work can hardly be considered
24  making sales.

25  Thus, applying the relevant case law to the <u>actual tasks performed by Plaintiffs as found</u>
26  <u>by Kellogg's own studies</u>, it is clear that all of Plaintiffs work time is non-exempt.

27
28  PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 22

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

2.       Plaintiffs Do Not Perform Tasks Typical of Outside Sales Persons

Not only do Kellogg's studies make clear that Plaintiffs to spend all of their time on non-exempt duties, that is confirmed by the fact that Kellogg does not require Plaintiffs to perform the job duties that courts typically associate with exempt sales work. For example, Plaintiffs are not required to obtain store management approval on the orders they place because Kellogg has already contracted to provide the chain's store with the inventory it needs to meet its retail customer demand. See, *Killion*, 761 F.3d at 587 (sales people are typically charged with persuading store management to approve product orders); *Hodgson*, 435 F.2d at 381 (same); *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 585 (5th Cir. 2013)( employee was a sales person because he "obtained or solicited orders for the employer's products from persons who had authority to commit the customer for purchases."). Nor does Kellogg require Plaintiffs to call on new sales prospects. *Killion*, 761 F.3d at 587 (adopting 29 C.F.R. § 541.504 factors); *Hodgson*, 435 F.2d at 381; *Miranda-Albino*, 455 F. Supp. 2d at 75 (plaintiff was not exempt sales person because he "played no role in the original solicitation of orders from these clients."); *Meza*, 720 F.3d at 585 (plaintiff was an exempt sales person because he "called on new prospects for customers along his route and attempted to convince them of the desirability of accepting regular delivery of goods.") Plaintiffs are not required to persuade customers to buy new products or purchase quantities of products greater than they need for their retail demand. *Killion*, 761 F.3d at 587 (adopting 29 C.F.R. § 541.504 factors); *Hodgson*, 435 F.2d at 381. Kellogg does not allow Plaintiffs to negotiate sales terms such as price, quantity, or delivery or payment terms. *Reyes v. Goya Foods, Inc.*, 549 F. App'x 876 (11th Cir. 2013); *Ackerman v. Coca-Cola Enterprises, Inc.*, 179 F.3d 1260, 1265 (10th Cir. 1999).

Not only do Plaintiffs not perform exempt sales job duties, their job characteristics are not those courts associate with sales work. Unlike typical sales people, TMs and RSRs are not required to have sales experience for the job. *Herr Foods*, 2014 WL 5343642, at *8. While sales people's hours of work are usually difficult to determine, Kellogg closely monitors TM and RSR

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 23

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

work through itineraries that they are supposed to follow and electronic and GPS monitoring. *Hershey*, 765 F. Supp. 2d at 1193. Unlike typical salespeople, the product that TMs and RSRs work with is determined by contractual arrangements setting the price, quantity, delivery method, payment and other terms. *Herr Foods*, 2014 WL 5343642, at *7 (corporate level sales contracts that constrain the employee's ability to sell suggest he/she is not a salesperson); compare *Meza*, 720 F.3d at 583 (no other sales contracts supports a finding that the employee is a salesperson). The fact that Kellogg employs a dedicated sales force that negotiates these contracts strongly suggests that Plaintiffs are not salespeople. *Killion*, 761 F.3d at 587 (evidence that sales are made by other employees supports finding of non-exempt work); *Rehberg*, 2016 WL 626565, at *8-9 (exempt sales work is unlikely where the employer has a dedicated sales force selling the product); *Herr Foods*, 2014 WL 5343642, at *6 (same); compare *Meza*, 720 F.3d at 585 (employee who "provided the only sales contact between the employer and the customers" was a salesperson).

### 3. Maximizing Orders Is Not "Sales"

Kellogg claims that Plaintiffs make "sales" because they maximize orders.[16] But maximizing the amount of product that enters a store does not independently qualify as sales. *Hodgson*, 435 F.2d at 383; *Hershey*, 765 F. Supp. 2d at 1191. As the District Court in *Hershey* explained when it rejected this argument:

> The work done by plaintiffs may increase defendant's sales, but it does not affect the plaintiffs' own sales. Since plaintiffs are not the individuals making the actual sale as the exemption requires, this type of "incremental selling" and "sell through," even if they were the plaintiffs' primary duties, does not amount to exempt work.
>
> The disconnect between what defendant considers to be a sale and what the regulations consider to be a sale is illustrated by one of the examples that defendant cites, exhibit B to the declaration of Steve Wilson. Wilson, a district sales manager, supervises RSRs including plaintiff Michael Bain. Exhibit B is a

---

[16] Kellogg spends time characterizing Plaintiffs' activities as "sales." Those characterizations do not make Plaintiffs sales people. See section § II, Duties of TMs and RSRs.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 24

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

communication from Bain to Wilson explaining that as Halloween was approaching one of his stores "did not have a candy display ... all product went to the shelf." Bain therefore convinced the store manager to build a display which "meant that [the store] would be sent a lot of this product." This exhibit supports plaintiffs' characterization of what they do—marketing products that have already been or will be sold by someone else so that products move through the store. This may permit someone else to sell more Hershey products but it does not constitute a direct sale as that term is defined in the regulations.

*Id. Hershey* is a Warehouse Model case, and the same fact pattern applies to the RSRs here. Because Kellogg's also enters into contracts with its chain customers on the corporate level for its snacks products, when TMs build displays or order additional product to support a promotion contracted at the corporate level, that activity may increase the stores or Kellogg's sales. But those sales are not Plaintiffs' sales. See *Christopher v. SmithKline Beecham Corp.,* 132 S. Ct. 2156, 2172 (2012) ("Our point is not, as the dissent suggests, that any employee who does the most that he or she is able to do in a particular position to ensure the eventual sale of a product should qualify as an exempt outside salesman").

### 4.    *Christopher's* Narrow Holding Does Not Apply to Plaintiffs

The U.S. Supreme Court holding in *Christopher* does not mean Plaintiffs make sales. *Christopher* stands for a proposition that does not apply here:

> Obtaining a nonbinding commitment from a physician to prescribe one of respondent's drugs is the most that petitioners were able to do to ensure the eventual disposition of the products that respondent sells. This kind of arrangement, *in the unique regulatory environment within which pharmaceutical companies must operate,* comfortably falls within the catchall category of "other disposition."

*Christopher,* 132 S. Ct. at 2172 (emphasis added). The "unique regulatory environment for prescribed pharmaceuticals," was critical to the decision:

> Our point is not, as the dissent suggests, that any employee who does the most that he or she is able to do in a particular position to ensure the eventual sale of a product should qualify as an exempt outside salesman. . . . Rather, our point is that, *when an entire industry is constrained by law or regulation from selling its products in the ordinary manner,* an employee who functions in all relevant respects as an outside salesman should not be excluded from that category based on technicalities.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 25

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1   *Id.* at 2171-72, fn 23 (emphasis added). Courts around the country have recognized that

2   *Christopher* is limited to industries in which making sales is constrained by law or regulation.

3   *Hershey*, 765 F. Supp. 2d at 1194 ("the fact-specific rationale of Christopher does not apply to

4   plaintiffs, who are not prohibited from selling Hershey products directly to stores."); *ActionLink*,

5   781 F.3d at 402-03 ("Unlike the pharmaceutical industry discussed in *Christopher,* the world of

6   consumer electronics is not subject to a 'unique regulatory environment' that requires a

7   recommendation from a licensed professional to obtain a product."); *see also*, *Killion*, 761 F.3d

8   at 584 (recognizing that the *Christopher* decision applied only to its "unique regulatory

9   environment"); *ActionLink*, 781 F.3d at 403 (same).

10          Given the unique regulatory environment in the pharmaceutical industry, the *Christopher*

11   Court focused on the only "other disposition" the plaintiffs could secure, a "nonbinding

12   commitment". *Christopher*, 132 S. Ct. at 2172. But Plaintiffs are not expected to secure

13   nonbinding commitments—Kellogg's Sales Account Teams enter into binding contracts for the

14   sale. Plaintiffs then service those sales by performing a number of in-store activities. Plaintiffs do

15   not receive orders or commitments to purchase products from store personnel. Kellogg misreads

16   *Christopher's* narrow holding and claims that two sales of the same product may occur. But

17   *Christopher* did not go that far. Instead the Supreme Court rejected that other employees made

18   the sale when they fulfilled the pharmaceutical representatives' sales.

19          Unlike the pharmaceutical industry, Kellogg is not prohibited from selling its products in

20   an ordinary manner. Kellogg offers no evidence that its products are heavily regulated like

21   prescription pharmaceuticals. The *Christopher* decision simply does not apply to the

22   circumstances of food sales to chain stores.

23                 5.      The Court Should Not Follow the *McCartt* Decision

24          Defendants' reliance on *McCartt v. Kellogg USA, Inc.*, 139 F. Supp. 3d 843 (E.D. Ky.

25   2015), should be rejected. In the first place, *McCartt* is not binding on this court. *Hart v.*

26   *Massanari*, 266 F.3d 1155, 1174-75 (9th Cir. 2001) (district courts are not bound by decisions of

27

28   PLAINTIFFS' OPPOSITION TO                                 Getman & Sweeney, PLLC
     KELLOGG'S SUMMARY JUDGMENT                                9 Paradies Lane
     MOTION                                                    New Paltz, NY 12561
      (3:13-cv-05136-RBL) - 26                                 Telephone: (845) 255-9370

other district courts even in the same district). More importantly, *McCartt* was decided on a materially different and far less complete record, and ruled on different arguments than Plaintiffs make here. The absence of a complete record, and McCartt's failure to raise critical issues, colored the *McCartt* court's analysis, depriving it of persuasive value.[17]

For example, in *McCartt*, the plaintiff accepted Kellogg's self-serving characterization that TMs make sales without examining whether the actual job activities performed by McCartt satisfied the FLSA definition of sales. The Court did not focus on what precisely TMs did and only addressed the narrow question of whether McCartt's "primary duty as Kellogg's [TM] in District 797 was making sales." Plaintiffs in this case allege that they do not make sales. Their argument is supported by evidence of how Kellogg actually sells its product and extremely detailed evidence of how Plaintiffs service those sales rather than make them. *McCartt* did not resolve the legal issue in this case—whether *Plaintiffs*' primary duty is exempt work—it only held that the record before it warranted summary judgment for McCartt. Courts considering the same job but with more developed records have held differently. *Killion*, 761 F.3d 574, 584 (finding that a jury could conclude that plaintiffs with the same job duties as Plaintiffs in this case do not actually make sales); *Hershey*, 765 F. Supp. 2d at 1190 (finding that the same job duties that Plaintiffs in this case perform do not constitute sales).

The *McCartt* Court's application of the outside sales exemption was particularly marred by Kellogg's failure to produce the extraordinarily important evidence of Kellogg's four industrial studies detailing TM and RSR job tasks and the time spent on each task.[18] Nor was the *McCartt* record fully developed on Kellogg's corporate sales-making or Kellogg's DSD product delivery system and TMs roles in those systems. Lacking that evidence, the *McCartt* court adopted Kellogg's assertion that it expected McCartt to sell its product. *McCartt*, 139 F. Supp.

---

[17] In any case, *McCartt* does not address the RSR position because McCartt never worked in that position.
[18] Kellogg did not produce 2008 TM study until June 2015, after discovery closed in McCartt and the remaining three studies until January 2016 – well after the *McCartt* summary judgment decision.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
   (3:13-cv-05136-RBL) - 27

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

3d at 858. Had the Court had the evidence available here, it likely would not have granted Kellogg summary judgment based on Kellogg's mere characterization of the work as "sales". *Killion*, 761 F.3d at 584 (overturning district court grant of summary judgment for improperly adopting an employer's characterization of the same work at issue here as exempt); *Hershey*, 765 F. Supp. 2d at 1190 (finding that the same job duties that Plaintiffs in this case perform do not constitute sales).

The facts in this case establish that Plaintiffs are non-exempt as a matter of law or, at the very least, that there is a fact issue for the jury. Accordingly, this Court should not follow *McCartt*. Rather, it should base its decision on the record and legal arguments before it. See *Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 471, fn 11 (E.D. N.Y. 2015) (resolution of claims by one court does not preclude a different resolution of the same claims on a different record).

### 6.    Under *Ackerman* Plaintiffs Are Non-Exempt Employees

*Ackerman v. Coca-Cola Enterprises, Inc.*, 179 F.3d 1260 (10th Cir. 1999), compels a finding that Plaintiffs are non-exempt employees. The undisputed facts in *Ackerman* were that Ackerman sold Coca-Cola products to individual stores and then performed the in-store promotion for the product he and other member of his class sold. The court specifically found that there was "no evidence in the record that sales of Coca–Cola products at stores visited by the plaintiffs were made by any other Coca–Cola employees." *Id*. at 1266. The Court applied the "driver salesmen" regulation in effect at the time, 29 C.F.R. §541.504-505 (1973), and found

> a key inquiry is whether the employee in question actually consummates the sale of his or her employer's products at a particular location. If that employee consummates the sale but also performs a variety of other tasks intended to promote the company's products but not directly involving sales, those tasks may still be considered "incidental to and in conjunction with" those sales. On the other hand, if the employee in question does not actually consummate the sale at the location in question, then his other activities, even if closely related to sales, are not "incidental to and in conjunction with" those sales under the regulations.

*Ackerman*, 179 F.3d at 1265. Given that the *Ackerman* plaintiffs sold the product to the stores, the court found that their promotional work could be considered "incidental to and in conjunction with" the sales that they made. The court was clear, however, that if plaintiffs were not the

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 28

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

employees selling the product, their promotional work could not be considered exempt. *Id*. at 1266-67.

Unlike *Ackerman*, Plaintiffs here do not sell Kellogg products at the stores they service. Kellogg's dedicated Sales Account Teams sell the product through corporate level contracts. Both TMs and RSRs then perform the service work to support those sales. Neither TMs nor RSRs negotiate or receive orders from store managers and they do not negotiate promotions. TMs do not receive permission from store managers to order replenishment inventory because Kellogg has agreed to sell and the customer has agreed to purchase the quantity of product necessary to meet the store's consumer demand. RSRs do not order product at all-- store managers order product from the chains' warehouse that the chain's corporate offices have already purchased. *Ackerman* recognizes that under the fact pattern here, Plaintiffs' work is non-exempt. *Id*. at 1265; *see also, Killion*, 761 F.3d 574 ("hitting a button does not transform an employee from inventory management to 'sales.'")

Courts considering facts similar to those in this case have found *Ackerman* to support non-exempt status. See, e.g., *Killion*, 761 F.3d 574 (overturning summary judgment that food distributor field sales representatives were exempt); *Miranda-Albino*, 455 F. Supp. 2d at 74 (denying summary judgment to employer); *Miller*, 136 Wash. App. 650 at 660 (granting summary judgment to RSRs as non-exempt); *Pepsi-Cola*, 2002 WL 187400, at *71-78 (granting summary judgment to Route Salesman as non-exempt); see also, *Clements*, 530 F.3d at 1228 (citing *Ackerman* for the proposition that someone not responsible for obtaining an order or contract is not outside sales exempt.); *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 FR 22122-01 (citing *Ackerman* for the proposition that only employees who "obtain a commitment to buy" can be outside sales exempt.)

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 29

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

**B.      Plaintiffs' Primary Job Duty Is Servicing Sales Contracts, Not Making Sales**

1.      Legal Standard for Determining Primary Duty

Kellogg's argument that sales is Plaintiffs' primary duty is again predicated on accepting its characterization that Plaintiffs' asking store managers to put up displays that are part of promotions contracted on the corporate level constitutes sales.[19] Even if Kellogg were correct that that task constitutes "sales", Plaintiffs remain non-exempt because that activity is not their primary duty.[20] Under the FLSA,

> The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. §541.700; *see also Troy v. Kehe Food Distrib., Inc.*, 276 F.R.D. 642, 647 (W.D. Wash. 2011). Courts may also consider other factors such as whether the employees must solicit new business, are required to have prior sales experience, are required to attend sales training, and whether they are paid by commission. All these factors weigh heavily in favor of finding Plaintiffs' primary duty is the non-exempt work of servicing Kellogg's pre-existing sales contracts.

2.      Plaintiffs Spend All of Their Time Servicing Kellogg's Sales Contracts and That Is Plaintiffs' Most Important Job Duty

As the above discussion of Kellogg's industrial studies shows, only a fraction of TMs and RSRs time is spent asking store managers to put up promotions, the one activity that Kellogg identifies that might, even arguably constitute sales, while the other 96-98% of their time is spent

---

[19] RSRs do not place orders at all.
[20] Of course if, as Plaintiffs contend, asking to construct pre-planned displays in stores is not sales activity, then Plaintiffs do not engage in any sales activity making it unnecessary to even consider the primary activity portion of the outside sales exemption test.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
   (3:13-cv-05136-RBL) - 30

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

in a variety of non-exempt activities designed to service the sales contracts entered into on the corporate level. For that reason alone, sales cannot conceivably be TMs or RSRs primary duty.

Even beyond the time that TMs and RSRs invest in servicing contracts, Kellogg itself acknowledges the vital importance of their servicing duties. TMs' role in the DSD Model is explained in the website that Kellogg cites in its brief. According to that source, the value of the DSD model is that it "improves sales performance because there is much greater control over retail shelf space." A DSD model also allows vendors to "provide value added services as part of their DSD offering with the aim to improve sales and margins for the retailer, including:

- Shelf Inventory Management
- In-store Forecasting
- Store Level Authorized Item Management
- Price and Promotion Execution
- Store Ordering
- In-store Merchandising"

Ex. 62, DSD Delivery.

These functions are the most important work TMs, not only because they occupy 99% of their time, but because they are the critical part of Kellogg's DSD model. *Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001); *Marzuq v. Cadete Enter., Inc.*, 807 F.3d 431, 440-441 (1st Cir. 2015) (most important job duty is the one that is "critical to the success" of the business); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 505 (6th Cir. 2007) (most important job duty reviewed in light of "the end goal of achieving the overall success of the company"); *Dalheim v. KDFW–TV,* 918 F.2d 1220, 1227 (5th Cir.1990) (primary duty is the employee's principal value to the employer); *Donovan v. Burger King Corp.*, 675 F.2d 516, 521 (2d Cir. 1982)(most important job duty is the "most important or critical to the success" of the business). TMs are the only Kellogg employees charged with this critical work. *McCall v. First TN Bank Natl. Assn.*, 3:13 Civ. 00386, 2014 WL 2159007, *7 (M.D. Tenn. May 23, 2014)

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 31

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1   (employee was responsible for essential daily operations that could only be performed by her,

2   and, without her performance of these tasks, the branch would not have been able to function);

3   *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 916-17 (E.D. La. 2009) (plaintiff's non-

4   exempt work was more important than exempt work because, inter alia, "[i]f [plaintiff] failed to

5   perform his [exempt] duties, [the employer] would still function in much the same manner"); *see*

6   *also*, *Thomas*, 506 F.3d at 505 (most important duties are those critical duties that no one else

7   performs). Because these functions are not making a "sale, exchange, contract to sell,

8   consignment for sale, shipment for sale, or other disposition," 29 C.F.R. §541.501(b), even if

9   they increase sales of Kellogg's products, they establish that Plaintiffs' primary duty is not

10  making sales. *Hershey*, 765 F. Supp. 2d at 1191.

11        RSRs' work duties are even further removed from sales than TMs. Like the RSRs in

12  *Hershey*, RSRs do not even manage inventory. Kellogg's Account Sales Teams negotiate the

13  sales contracts and Kellogg ships product directly to the chain customer's warehouse without

14  RSRs involvement. While RSRs help stimulate sales by "encouraging retailers to replenish their

15  supply and ensuring that sold products are properly marketed at the retail stores … this does not

16  constitute an additional 'sale.'" *Hershey*, 765 F. Supp. 2d at 1191-92.

17        The unpublished Eleventh Circuit, *Reyes v. Goya Foods, Inc.*, 549 F. App'x 876 (11th Cir.

18  2013), decision does not help Kellogg. After denying summary judgment the District Court

19  granted Goya a directed verdict after the plaintiff's case-in-chief. Notably all of the <u>plaintiff's</u>

20  <u>witnesses</u> testified that the plaintiff's primary job duty was to sell. The Eleventh Circuit upheld

21  the decision because the plaintiff sold the product directly to the stores, solicited customers,

22  negotiated promotions and discounts, took orders from store managers, and received pay on a

23  commission-only basis. Plaintiffs in this case have none of these job duties. Plaintiffs' work is in

24  support of the Kellogg's corporate sales contracts, not sales Plaintiffs made. Such work fits

25  squarely into non-exempt promotional work. 29 C.F.R. §541.503(c).

26

27

28  PLAINTIFFS' OPPOSITION TO
    KELLOGG'S SUMMARY JUDGMENT
    MOTION
     (3:13-cv-05136-RBL) - 32

    Getman & Sweeney, PLLC
    9 Paradies Lane
    New Paltz, NY 12561
    Telephone: (845) 255-9370

Kellogg also relies on *Lint* and *Taylor*, but neither case addresses whether the plaintiffs' primary duty was sales. In both cases, the Plaintiffs admitted that their primary duty was performing sales work, e.g., prospecting new customers, building their own client base, entertaining customers, purchasing advertising, and consummating sales. The issue was whether they customarily and regularly performed those duties away from the employer's place or places of business. *Lint v. Nw. Mut. Life Ins. Co.*, 09 Civ. 1373 DMS RBB, 2010 WL 4809604, at *3 (S.D. Cal. Nov. 19, 2010); *Taylor v. Waddell & Reed, Inc.*, 09 Civ. 2909 AJB WVG, 2012 WL 10669, at *4 (S.D. Cal. Jan. 3, 2012). They did not perform the job duties Plaintiffs do in this case, and Plaintiffs do not perform the job duties the *Lint* and *Taylor* plaintiffs did. Compare *Hodgson*, 435 F.2d at 383 (employees spending 60% of their time on restocking shelves and removing empties favors a finding that the employee is non-exempt.)

Thus factors one and two weigh heavily in favor of sales not being Plaintiffs primary duty. *Hershey*, 765 F. Supp. 2d at 1190-942; *Hodgson*, 435 F.2d at 383 (employees spending 60% of their time on restocking shelves and removing empties favors a finding that the employee is non-exempt.)

### 3.   Kellogg Closely Supervises Plaintiffs' Work

The high degree of supervision that Kellogg exercises over Plaintiffs further confirms that sales (which is generally not closely supervised) is not their primary duty. Kellogg tracks the number of cases TMs stock on shelves and displays and their service activities each day through their handheld devices, cellular telephones, emails, tablets, and regular texting and phone calls. Kellogg monitors Plaintiffs' location throughout the workday through GPS. Kellogg also tracks the number of variable labor hours Plaintiffs use each week and adjusts those hours as Kellogg's sales increase or decrease. TMs are required to register electronically when they arrive at each store. Such remote supervision is supervision nonetheless. *Hershey*, 765 F. Supp. 2d at 1193 ("Nor can Hershey argue that plaintiffs are not amenable to supervision and having their hours

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 33

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

monitored. While working and performing their duties, plaintiffs are required to carry personal digital assistants, called REX devices, that are issued by defendant.")

Kellogg's focus on only in-person supervision simply does not reflect reality in the 21st Century. Kellogg's claim that Plaintiffs seldom saw their managers in person is wrong and irrelevant. Not only did Plaintiffs' supervisors evaluate Plaintiffs' in-store work on a regular basis, and conduct semi-annual and annual performance reviews, they communicated with Plaintiffs daily via email, text, and cell phones. Ex. 19, 2013 TM Study, p. 34, 41 (reporting that TMs regularly receive directives and constant emails.). Such monitoring constitutes direct supervision. *Id*.

Kellogg's reliance on *McCartt* does not change the analysis. As discussed above, the *McCartt* decision was based on a very different record and the plaintiff offered "little evidence of direct supervision." P. 27. The record here is to the contrary.

Plaintiffs lack the freedom associated with a sales person. *Hershey*, 765 F.Supp. 2d at 1193-4; *Skipper v. Superior Dairies, Inc.,* 512 F.2d 409, 415-16 (5th Cir. 1975). Thus, this factor also favors the conclusion that sales is not Plaintiffs primary duty.

4.    Plaintiffs Are Paid the Same or Less than Non-Exempt Employees for Performing Service Work

While DOL regulations call for a comparison of the Plaintiffs' compensation with that of the non-exempt hourly employees who perform the same work as part of the "primary duty" analysis, Kellogg did not bother to perform a comparison of Plaintiffs' compensation with that of TSRs, the non-exempt workers who perform many of the same job duties as Plaintiffs. Instead it relies heavily on *McCartt* for the proposition that Plaintiffs' incentive pay is an indication of exempt status.[21] As explained above, the *McCartt* record is very different from record before this Court.

---

[21] The plaintiff did not present any evidence concerning compensation, including evidence of the plaintiff's hourly rate and that of Kellogg's TSRs. Indeed, the only evidence is that his "compensation was tied directly to his sales

1    Here, the Named Plaintiffs' pay was less than or approximately the same as TSRs

2    average wage of $14.33 per hour:[22]

| | Regular Rate | Higher/(Lower) Than TSR |
|---|---|---|
| Patricia M. Thomas | $ 13.31 | $ (1.02) |
| David Rink | $ 14.33 | $(0.00) |
| Bruce Johnson | $ 14.39 | $0.06 |
| Armon McWell | $ 14.21 | $(0.12) |
| Laura Wisby | $ 12.29 | $(2.04) |

Overall Plaintiffs are paid equal to or less than non-exempt hourly employees who

perform the same job duties and only $5.32 more than the Federal minimum wage. Any slight

difference in the hourly rate cannot be considered compensation well above the minimum wage.

*See*, *Christopher*, 132 S. Ct. 2161 (the outside sales "exemption is premised on the belief that

exempt employees 'typically earned salaries well above the minimum wage' and enjoyed other

benefits that 'se[t] them apart from the nonexempt workers entitled to overtime pay.' "); *see*,

*Pioch v. IBEX Engr. Services, Inc*., 15 Civ. 10845, 2016 WL 3254138, at *6 (11th Cir. June 14,

2016) (in finding employee exempt, $85.40/hour was considerably higher than minimum wage).

Further, Kellogg's reliance on the type of pay Plaintiffs receive is misleading. Many

other Kellogg employees receive pay linked to Kellogg's corporate sales, including Plaintiffs'

supervisors. TMs are paid additional compensation based on the dollar value of the cases they

stock on shelves and displays. RSRs in the Warehouse Model receive bonuses based the

Morning Foods business unit's performance, not on the amount of product going into their

assigned stores.

Thus, this factor favors the conclusion that Plaintiff primary duty is NOT sales. 29 C.F.R.

§541.700; see also, *Marzuq*, 807 F.3d at 444 (Where an employee performs the same nonexempt

work as other employees and is paid a similar hourly wage for the work, "the justification for

---

performance." *McCartt v. Kellogg,* 5:14 Civ. 00318-DCR-REW, Dkt. 48-1, p. 8. (E.D. Ky. July 31, 2015)("Kellogg's Memorandum In Support Of Defendants' Motion For Summary Judgment")

[22] See Ex. 57, Russo Declaration

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 35

1  exempting the [employee] from overtime pay is weakened."); *Killion*, 761 F.3d at 585 (incentive

2  pay based on the amount of product stocked is not indicative of exempt work.)

3          5.     Plaintiffs Lack External Indicia of Salespeople

4        Kellogg is wrong that Plaintiffs bear the "external indicia of salesmen." Kellogg's claims

5  are again predicated on the notion that Kellogg's definition of sales meets the FLSA definition.

6  As demonstrated above, that notion is incorrect and so Kellogg's claims that job descriptions,

7  incentive programs, professional development, and training are indicia of salespeople are wrong.

8  For example, despite Kellogg's characterization of Plaintiffs' job profile as emphasizing sales,

9  the industrial studies show that the job duties Kellogg expected them to perform were non-

10  exempt work. *Miranda-Albino*, 455 F. Supp. 2d at 76 (where a job description differs from the

11  actual job duties, it is the job duties that govern exempt status.) Similarly, Plaintiffs' actual job

12  duties make clear that the "sales" metrics Kellogg used for professional development plans,

13  evaluations, and compensation were not based on sales made by the Plaintiffs but on Plaintiffs'

14  servicing of sales made at the corporate level. See, *Killion*, 761 F.3d at 584-85.

15        In fact, Plaintiffs have none of the external indicia of sales courts typical consider in the

16  outside sales analysis, such as whether the employees must solicit new business, are required to

17  have prior sales experience, are required to attend sales training, and receive commission

18  compensation. *Hurt v. Commerce Energy, Inc.*, 1:12 Civ. 00758, 2013 WL 4427257, at *5 (N.D.

19  Ohio Aug. 15, 2013). Plaintiffs do not solicit new customers or new locations or sell new

20  products into stores or negotiate price. Kellogg's dedicated Sales Teams perform that work, not

21  TMs or RSRs. The lack of these selling responsibilities suggests that sales is not a primary duty.

22  *Miranda-Albino*, 455 F. Supp. 2d at 76.

23        Neither TMs nor RSRs are required to have sales experience to do their job. The primary

24  requirements for the job include a high school diploma or GED, proficiency working in Word,

25  Excel, and PowerPoint, ability to drive a car, and the ability to lift 50 pounds. *Herr Foods*, 2014

26  WL 5343642, at *8 (job description not requiring prior sales experience does not support sales as

27

28  PLAINTIFFS' OPPOSITION TO
   KELLOGG'S SUMMARY JUDGMENT
   MOTION
    (3:13-cv-05136-RBL) - 36

a primary duty); *Hurt*, 2013 WL 4427257, at *6 (employees were not hired for their prior sales experience was indicative that they were not outside sales employees).

Kellogg did not require Plaintiffs to attend any specialized sales training and many Plaintiffs testified that they did not. Just as requiring sales training is an external indicia of a salesperson, *Hurt*, 2013 WL 4427257, at *5, not requiring it suggests sales is not a primary duty.

Plaintiffs are not paid commissions. *Yosemite Water Co.*, 20 Cal. 4th at 804 (a commission requires that "the employees must be involved principally in selling a product or service [and] the amount of their compensation must be a percent of the price of the product or service."). RSRs are paid based on the performance of the business division and their individual evaluations. Kellogg currently pays TMs salaries plus a bonus that is based on whether sales in their territories meet forecasted sales and the bonus is capped at 105% of the forecasted sales. Kellogg admits that paying TMs commissions was not an effective way to compensate them. Conversely, Kellogg uses the salary plus bonus compensation program for a wide variety of employees whose primary job duty is not making sales.

The DOL regulation's primary duty factors and the external indicia of sales people show that Plaintiffs' primary job duty is not making sales.

**III.        Kellogg Has NOT Shown That Plaintiffs Are Administratively Exempt As a Matter of Law**

Like its argument on the outside sales exemption, Kellogg's argument that Plaintiffs' primary duty is administrative work is predicated on Kellogg's self-serving characterizations of what Plaintiffs do, rather than on an analysis of what they actually do. When the administrative exemption is considered, as it must be, in light of Plaintiffs' actual job duties, it is clear that it does not apply to Plaintiffs.

The FLSA limits the administrative exemption to employees who are "employed in a bona fide … administrative … capacity." 29 U.S.C.A. § 213(a)(1). In order for an employer to take advantage of this exemption, it has the burden of proving all elements of a three-part test:

(1) Compensat[ion] … at a rate of not less than $455 per week …;

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 37

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

(2) [P]rimary duty is the performance of *office* or *non-manual* work directly related to the management or general business operations of the employer or the employer's customers; and

(3) [P]rimary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. §541.200 (emphasis added). Because the exemption is applied narrowly and only where it is plainly and unmistakably consistent with FLSA's spirit, Kellogg cannot meet its burden of proving all three elements of this test.

**A.     Kellogg Admits It Fails the Administrative Exemption's Salary Basis Test as to Territory Managers**

This action commenced on February 26, 2013. Dkt. # 1. Following FLSA, the Court conditionally certified the classes with reference to "three years prior to the filing of this case. Dkt. # 166 at 4. In order for Kellogg to pass the Salary Basis Test, it would have to have paid all Class Members at least $455 per week worked from February 26, 2010 onward. Kellogg admits it failed to pay Territory Managers this minimum amount before April 2011. *See* Dkt. # 394 at 44; *see* §VII, Compensation of TMs and RSRs, p. 15. This failure to pass the Salary Basis Test would also be applicable for Plaintiffs with state law claims who worked before April 2011.

**B.     Kellogg's Argument Fails the Second Prong of the Administrative Exemption**

Kellogg cannot establish either part of the second requirement for the administrative exemption – i.e. (i) that Plaintiffs' primary duty is the performance of office or non-manual work (ii) that is directly related to management or general business operations. 29 C.F.R. §541.200. Kellogg admits that Plaintiffs do not work in offices—their job was to travel to supermarkets to perform their work in the storeroom and store floor. Dkt. # 394, Kellogg Summary Judgment Motion, p. 19 ("Plaintiffs Worked 'Outside' Within The Meaning Of The FLSA"). Kellogg's industrial studies show that TMs and RSRs spend the vast majority of their time doing manual labor. TMs spend most of their time stocking shelves, rotating stock, building displays, and maintaining storerooms. While RSRs do not typically maintain storerooms, they spend most of their time on similar duties. Such duties are manual work. *Hershey*, 765 F. Supp. 2d at 1195 (activities "such as building promotional displays and carrying as well as opening boxes to

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 38

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

restock Hershey products" is manual labor); see also *Adam v. U.S.*, 26 Cl. Ct. 782, 792-93 (1992) (work "requiring or using physical skill and energy" is manual work).

Nor is Plaintiffs' work directly related to Kellogg's management or general business operations. As discussed above, Plaintiffs' job is to service corporate sales contracts on the individual store level. They do that by checking inventory, transporting product from the storeroom, picking and placing product on shelves and displays, building, locating and removing displays, hanging signs on shelving and displays, placing coupons on products, transferring product between displays and shelving, walking boxes and trash to compactors and disposing of them at the trash compactor. Such work is not "directly related to Kellogg's management or general business operations."

The only case that Kellogg can muster in support of its claimed administrative exemption, *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560 (7th Cir. 2012), is inapposite because the plaintiffs in that case, pharmaceutical sales representatives, had job duties very different from those of Plaintiffs in this case, and the *Schaefer* plaintiffs work did "not follow a predictable course." *Id.* at 564. This is in stark contrast to the highly predictable and structured tasks that Plaintiffs perform when they visit a grocery store. Moreover, *Eli Lilly* generally allowed its pharmaceutical sales representatives to "structure their days independently," *id.* at 566, whereas Plaintiffs in this action follow itineraries issued at a higher level. Indeed, the plaintiffs in *Schaefer* were extensively trained for nearly three-months and paid in excess of $100,000 per year, unlike Plaintiffs in this case who received little, if any training, and are paid far less. *See*, Training of TMs and RSRs, § IV, p. 10.

**C.   Plaintiffs Do Not Exercise Discretion and Independent Judgment with Respect to Matters of Significance**

Kellogg offers no support for that Plaintiffs satisfy the third requirement for the administrative exemption – i.e. that they exercise discretion and independent judgment with respect to matters of significance. While the regulations find exercising authority can be an indicator of discretion and independent judgment, Kellogg argues Plaintiffs had significant

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 39

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

"autonomy," not authority. 29 C.F.R. §541.202. Autonomy, in the sense of working alone outside the office, is not the same thing as exercising authority. Plaintiffs do work autonomously in that sense (although they are closely supervised nevertheless), but they have little or no authority over anyone or anything. Moreover, many of the job duties that Kellogg offers as examples of discretion have already been rejected as insufficient to establish the kind of discretion the administrative exemption demands. *Hershey*, 765 F. Supp. 2d at 1196 ("Even accepting these as true, the Court finds that deciding the order of stores to visit, how much time to spend in a store, or which of the sales tools defendant provides to use are not matters of sufficient significance to trigger the administrative exemption."). On the other hand, Plaintiffs' lack of authority to negotiate prices, their limited territories, the lack of requirement of prior sales experience, the regular communication with supervisors, and the set procedures for performing their jobs all are indicia of work that is non-administratively exempt. *ActionLink*, 781 F.3d 396.

Kellogg's claim that "Plaintiffs' roles are fundamentally indistinguishable" from that of the insurance claims adjuster salesperson in *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 2007) is not convincing. The Plaintiff in *John Alden* were marketing representatives whose job was to

> keep their agents apprised of any new products or product combinations available from John Alden, and make their agents aware of any changes in the pricing of the company's products. The marketing representatives also discuss how John Alden's products might meet the particular needs of an agent's current or prospective customers, and advise agents as to which John Alden products to market against competing products. Often, they help their agents develop proposals for bidding on new business by recommending the appropriate combination of John Alden products to fit a prospective customer's needs. To further educate their agents, marketing representatives sometimes pass along articles about the company and/or its competitors, or give small-group presentations about John Alden's products.

*Id*. at 4. These job duties are a far cry from those of the Plaintiffs in this case. *See Ahle v. Veracity Research Co.*, 738 F.Supp.2d 896, 908 (2010) (rejecting defendant's unfair and

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 40

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

unhelpful reliance on insurance cases, noting that insurance work requires discretion, and finding

that plaintiff investigators "do not qualify for the administrative exemption.")

### IV. Defendants Have Not Shown The Combination Exemption Applies As a Matter of Law

The combination exemption can apply when "[e]mployees … perform a combination of

exempt duties as set forth in the regulations in this part …." 29 C.F.R. §541.708; *IntraComm,*

*Inc. v. Bajaj*, 492 F.3d 285, 294 (4th Cir. 2007). Because Kellogg cannot show that Plaintiffs'

primary job duties fall into either the outside sales or administrative exemption, it cannot

establish that the combination exemption applies. *Dalheim*, 918 F.2d at 1232 ("It is well-

established that employers may not tack various nonexempt duties and hope to create an

exemption."); *Clark v. Centene Co. of Texas, L.P.*, 44 F. Supp. 3d 674, 685 (W.D. Tex.

2014)("Because the work constituting Plaintiffs' primary duty is not exempt under either the

learned professional or administrative exemptions, there is no combination of exempt duties to

tack together to fit within this exemption."). Moreover, as Plaintiffs' work is manual labor, they

cannot be exempt under any combination of white collar exemptions. *Defining and Delimiting*

*the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer*

*Employees*, 69 Fed. Reg. 22128 (Apr. 23, 2004) ("The subsection 541.3(a) clarifies that the

section 13(a)(1) exemptions and the Part 541 regulations"—which encompass all of the

exemptions that Kellogg claims may apply—"do not apply to manual laborers or other 'blue

collar' workers who 'perform work involving repetitive operations with their hands, physical

skill and energy.'")

### V. Kellogg Is Not Entitled to Summary Judgment on the Non-Dispositive Issues It Raises

#### A. Plaintiffs Are Entitled To Mandatory Liquidated Damages

An employer who violates the FLSA "shall be liable to the employee or employees

affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation,

as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C.

§216(b). "These liquidated damages represent compensation, and not a penalty. Double damages

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
   (3:13-cv-05136-RBL) - 41

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1    are the norm, single damages the exception." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920

2    (9th Cir. 2003). The lone and narrow exception to the double damages rule is "if the employer

3    shows to the satisfaction of the court that the act or omission giving rise to such action was in

4    good faith and that he had reasonable grounds for believing that his act or omission was not a

5    violation of the FLSA". 29 U.S.C. §260. "To avail itself of this defense, the employer must

6    establish that it had an honest intention to ascertain and follow the dictates of the Act and that it

7    had 'reasonable grounds for believing that [its] conduct complie[d] with the Act." *Flores v. City

8    of San Gabriel*, 14 Civ. 56421, 2016 WL 3090782, at *10 (9th Cir. June 2, 2016) (citations

9    omitted).

10        This good faith defense is a "difficult burden" to overcome. *Haro v. City of Los Angeles*,

11   745 F.3d 1249, 1259 (9th Cir. 2014), cert. denied sub nom. *City of Los Angeles, Cal. v. Haro*,

12   135 S. Ct. 138 (2014) citing *Alvarez*, 339 F.3d at 910. Good faith defenses are denied when

13   employers fail to actively determine whether the pay practice complies with the FLSA. *Flores,*

14   2016 WL 3090782, at *11; *Chao*, 346 F.3d at 920 (upholding an award of liquidated damages

15   where the employer believed that it was not required to pay overtime because employees divided

16   their hours between two legal entities that were operated together, but had failed to consult an

17   objective authority or seek advice on the legality of its position); *Alvarez*, 339 F.3d at 910.

18        Plaintiffs are due liquidated damages here because Kellogg has not provided evidence to

19   meet the high standard required to establish that it took affirmative steps to comply with the

20   FLSA. Kellogg took no active steps to determine its obligation to pay FLSA overtime wages to

21   RSRs and TMs. Kellogg did not assess its legal overtime pay requirements after any of the three

22   overtime lawsuits between 2002 and 2015, as a result of the industrial studies conducted between

23   2006 and 2015, or in response to any other similar litigation, including against Mondelez and

24   Hershey. Further, Kellogg failed to review overtime regulations, seek outside advice, including

25   from the U.S. Department of Labor, or conduct any analysis as the result of any emails it

26   received from attorneys. This failure does overcome Kellogg's high burden to establish an

27

28   PLAINTIFFS' OPPOSITION TO                                Getman & Sweeney, PLLC
     KELLOGG'S SUMMARY JUDGMENT                                9 Paradies Lane
     MOTION                                                    New Paltz, NY 12561
      (3:13-cv-05136-RBL) - 42                                 Telephone: (845) 255-9370

1   "honest intention to ascertain and follow the dictates of the Act and that it had 'reasonable

2   grounds for believing that [its] conduct complie[d] with the Act." *Flores v. City of San Gabriel*,

3   14-56421, 2016 WL 3090782, at *10 (9th Cir. June 2, 2016) (citations omitted).

4       For the first time and after disavowing reliance on attorney advice, Kellogg now claims

5   that it is relying on attorney advice to insulate it from liquidated damages. See Ex. 63, April 27,

6   2016 Letter Asserting Privilege; Dunn Decl. at ¶ 63 (Kellogg's Privilege Log includes more than

7   13,500 entries). The Court should not consider such evidence at this point because Kellogg

8   deprived Plaintiffs of the opportunity to test its claim through discovery. *Dunford v. Am.*

9   *DataBank, LLC*, 64 F. Supp. 3d 1378, 1395 (N.D. Cal. 2014) (disallowing advice of counsel

10   defense where party had asserted the attorney client privilege over attorney communications);

11   see also, *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege

12   which protects attorney-client communications may not be used both as a sword and a shield.")

13   The Court should reject the claim in any case because Kellogg has not produced any evidence to

14   support its claim, *i.e.*, no documents showing what the advice states, how many opinions Kellogg

15   received, who provided the advice, when the advice was provided, or what facts were

16   considered.

    **B.**    **Kellogg Willfully Violated the FLSA**

18       Under the FLSA an employee is entitled to either a two or three year statute of limitation

19   period. A third year applies if the employer willfully violated the FLSA. 29 U.S.C. §255. A

20   violation is willful if the "employer either knew or showed reckless disregard for the matter of

21   whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S.

22   128, 133 (1988). "An employer who knows of a risk that its conduct is contrary to law, yet

23   disregards that risk, acts willfully." *Haro*, 745 F.3d at 1258 citing *Alvarez*, 339 F.3d at 908–09.

24   The possibility that the employer was violating the FLSA is sufficient for a FLSA violation.

25   *Flores*, 2016 WL 3090782, at *11 ("An employer's violation of the FLSA is 'willful' when it is

26

27

28

1    on notice of its FLSA requirements, yet [takes] no affirmative action to assure compliance with

2    them.") citations omitted.

3          Kellogg cannot escape its willful violation based on *McCartt* or *Christopher*. In *McCartt*,

4    Kellogg withheld the industrial studies from the plaintiff and the Court. Those studies, had

5    Kellogg produced them in discovery and provided to the Court, would have changed the

6    summary judgment decision analysis and confirmed that the plaintiffs' primary job duty was not

7    sales. Kellogg also cannot rely on *Christopher* because Kellogg is not subjected to the same

8    unique regularly environment that applies to the pharmaceutical industry.

9          Plaintiffs are entitled to a third year statute of limitations because Kellogg willfully

10   violated the FLSA. Kellogg is aware that it must comply with the FLSA and pay overtime wages

11   to non-exempt employees. Despite this knowledge Kellogg did not evaluate its FLSA overtime

12   pay obligations for RSRs and TMs when Kellogg purchased Keebler in 2002, after it was sued

13   four times between 2002 and 2015 for unpaid overtime wages, as a result of any of the industrial

14   studies that were conducted between 2006 and 2015, or as the result of other court decisions

15   concerning the outside sales exemption such as in *Hershey*. And even though Kellogg received

16   emails concerning the outside sales exemption it did not take any steps to evaluate its

17   obligations. Kellogg did not review the U.S. Department of Labor overtime regulations or seek

18   any external advice. For a company as sophisticated as Kellogg it shunned its responsibilities

19   even though it knew it actions may violate the FLSA.

20         Thus, Kellogg's motion for summary judgment on the issue of willfulness should be

21   denied. *Flores*, 2016 WL 3090782, at *12.

     **C.**     **Disputes over Which Plaintiffs' Claims Are Barred By a Statute of**
22            **Limitations Are Best Resolved at the Damages Stage of the Litigation**

23         Plaintiffs do not disagree with Kellogg that Plaintiffs who did not work in a covered

24   position within the operative statute of limitations period may be dismissed but there are many

25   issues to resolve before those Plaintiffs can be identified. For example, Kellogg's claims depend

26   on the Court's ruling with respect to the Parties' dispositive motions, Plaintiffs' Motion to

27

28   PLAINTIFFS' OPPOSITION TO                          Getman & Sweeney, PLLC
     KELLOGG'S SUMMARY JUDGMENT                         9 Paradies Lane
     MOTION                                             New Paltz, NY 12561
      (3:13-cv-05136-RBL) - 44                          Telephone: (845) 255-9370

1    Certify State Law Class Actions, and Kellogg's Motion to Decertify the Collective Action. For

2    example, whether a Plaintiff's claims fall outside the FLSA statute of limitations depends on the

3    Court's ruling on Kellogg's summary judgment motion to limit FLSA claims to two years.

4    Regardless of whether a Plaintiff's claims fall outside the FLSA statute of limitations, the

5    Plaintiff may have state law claims and those may depend on whether the Court certifies the state

6    law class actions. Of course, all the claims depend on the Court's ruling on Kellogg's exemption

7    defenses and whether the Court decertifies the collective action. Moreover, Plaintiffs dispute

8    Kellogg's claims regarding some of the individual Plaintiffs' circumstances. See Fact § IX, p. 18.

9    With so many facts in dispute, this issue is not appropriate for adjudication at this stage and

10   should be reserved for the damages phase of the litigation.

### D.      Kellogg Waived a Judicial Estoppel Defense

12       Kellogg raises a judicial estoppel defense for the first time in its motion for summary

13   judgment. While its answer to Plaintiffs' Third Amended Complaint, Dkt. # 232, contains a long

14   list of twenty-eight affirmative defenses, none of them raise bankruptcy or judicial estoppel.

15   Kellogg may raise an FLSA affirmative defense for the first time at the summary judgment stage

16   only "if the delay does not prejudice the plaintiff." *Nat. Ass'n of Realtors v. Champions Real*

17   *Estate Servs. Inc.*, 812 F. Supp. 2d 1251, 1262 (W.D. Wash. 2011) quoting *Norwood v. Vance*,

18   591 F.3d 1062, 1075 (9th Cir.2010). Kellogg's delay clearly prejudices the Plaintiffs. Had it

19   articulated the defense earlier, Plaintiffs could have amended their bankruptcy disclosures to

20   include the claims. Trustees in bankruptcy routinely abandon any rights to FLSA claims in

21   collective or class litigation because they are burdensome for the estate to try individually and it

22   is likely they would have done so here. 11 U.S.C. §554 (A "trustee may abandon any property of

23   the estate that is burdensome to the estate or that is of inconsequential value and benefit to the

24   estate.") By not raising the defense, Plaintiffs had no notice of it and did not have the opportunity

25   to amend their disclosures.

26

27

28

1   Judicial estoppel is an equitable and discretionary doctrine, applied on a case-by-case
2   basis. *Ah Quin v. County of Kauai Dept. of Transp*., 733 F.3d 267, 272 (9th Cir. 2013). Here
3   there is nothing equitable about allowing Kellogg to retain back wages that it owes to workers.
4   Plaintiffs are not sophisticated in either bankruptcy or wage-and-hour law and there is no
5   evidence that failure to disclose their claims was inadvertent. *Reed v. City of Arlington*, 650 F.3d
6   571, 576 (5th Cir. 2011). A court is not "bound" to apply judicial estoppel, particularly when "a
7   party's prior position was based on inadvertence or mistake." *Id*. at 753, 121 S.Ct. 1808 (internal
8   quotation marks omitted.) If the Court is inclined to entertain the estoppel defense, it should do
9   so only after giving the Plaintiffs an opportunity to cure their disclosures.

**E.     Kellogg's Motion for a Judgment on the Arizona Wage Act Claim
            Should Be Denied Again**

11   More than a year after the Court order denied Kellogg's motion for a judgment on the
12   pleading, Kellogg again asks for a judgment on Plaintiffs' Arizona claims. In December 2014
13   Kellogg moved for a judgment on the pleading based on two arguments. First, the Arizona wage
14   act does not create a right to overtime wages or the non-payment of overtime wages. Second,
15   Plaintiffs' Arizona Wage Act Claims are preempted by the FLSA. Dkt. # 289, pp. 3-4. Kellogg
16   makes the same arguments again. Kellogg Summary Judgment Motion, pp. 58-59. In rearguing
17   its previous motion, Kellogg does not offer any new court decisions that it could not have raised
18   before. There are no new cases that command a different result. Instead, Kellogg relies on three
19   cases that it previously cited in its earlier motion. Plaintiffs' position and arguments are the same
20   as before. Court denied Kellogg's arguments in a March 19, 2015 Order. Dkt. # 303. For the
21   same reasons as before and because the Court previously denied Kellogg's motion, the Court
22   should deny Kellogg's argument again.

23   As Plaintiffs explained before, employees may use the Arizona Wage Act (AWA) to
24   recover unpaid wages, including overtime wages. The AWA requires employers to pay
25   employees all of their earned wages on the regular payday. A.R.S. §§23–351 *et seq*. Also,
26   employers must pay overtime wages "no later than sixteen days after the end of the most recent

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
   (3:13-cv-05136-RBL) - 46

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

pay period." A.R.S. § 23-351. Thus, employees may recover unpaid straight time and overtime wages if they are classified as non-exempt under the FLSA. *See, Baker v. D.A.R.A. II, Inc.*, 06 Civ. 2887-PHX-LOA, 2008 WL 191995, *1 (D. Ariz. Jan. 22, 2008) (non-exempt employee sought overtime wages under FLSA and AWA). Employers cannot evade the AWA's pay requirements because they classify the employees as exempt from the FLSA overtime pay provisions. *See*, *Rose v. Wildflower Bread Co.*, 09 Civ. 1348-PHX-JAT, 2011 WL 196842, *4 (D. Ariz. Jan. 20, 2011) (plaintiffs may pursue both FLSA and AWA claims on behalf of Assistant Managers who were treated as exempt from the FLSA); *see also Perryman v. Dorman*, 10 Civ. 1800-PHX-FJM, 2010 WL 4682580, *2 (D. Ariz. Nov. 10, 2010) (plaintiff classified as an independent contractor alleging non-payment of wages under the FLSA and AWA).

The FLSA also does not preempt the Arizona Wage Act. The Ninth Circuit has "never held that FLSA preempts a state-law claim." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 759 (9th Cir. 2010), reversed on other grounds, 132 S. Ct. 74 (2011). In *Wang* the plaintiffs sought to enforce the substantive provisions of the FLSA through California state law.[23] The Ninth Circuit held that the "FLSA does not preempt a state-law § 17200 claim that 'borrows' its substantive standard from FLSA." *Wang*, 623 F.3d at 760. The Ninth Circuit also rejected the argument that California state law conflicted with the FLSA because the "FLSA sets a floor rather than a ceiling on protective legislation" and the state law furthers the FLSA's purposes. *Wang*, 623 F.3d at 759.

District Courts throughout the Ninth Circuit have followed *Wang* and have held that the FLSA does not preempt state wage claims, even those where the FLSA prescribes the underlying entitlement to overtime. District Courts in Arizona and Nevada have held that the FLSA does not preempt the AWA and employees classified as exempt under the FLSA may pursue overtime

---

[23] The California Business and Professions Code § 17200 permits recovery for "any unlawful, unfair or fraudulent business act or practice." *Wang*, 623 F.3d 743.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 47

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

claims under both Arizona and federal law. *George v. DirectSat USA, LLC*, 2:10 Civ. 01664–GMN–RJJ, 2012 WL 845589 (D. Nev. March 12, 2012) (refusing to dismiss AZ claims based on preemption); *Rose*, 09 Civ. 1348-PHX-JAT, 2011 WL 196842, *4 (D. Ariz. Jan. 20, 2011) (on reconsideration allowing the plaintiff to pursue both FLSA and AWA claims on behalf of employees who were treated as exempt from the FLSA). Other District Courts in the Ninth Circuit have concluded that the FLSA does not preempt or conflict with state law overtime claims. *McCoy v. N. Slope Borough*, 3:13 Civ. 00064-SLG, 2013 WL 4510780, *21 (D. Alaska Aug. 26, 2013) (the plaintiff allowed to pursue contract claims based on the FLSA)[24]; *Roberts v. Trimac Transp. Servs. (W.), Inc.*, C12-05302 HRL, 2013 WL 1441999, *2 (N.D. Cal. Apr. 9, 2013) (the FLSA does not preempt Cal. Bus. & Prof. Code § 17200); *see also Gessele v. Jack in the Box, Inc.,* 3:10 Civ. 960-ST, 2013 WL 1326563, *17 (D. Or. Jan. 28, 2013) *report and recommendation adopted*, 3:10 Civ. 00960-ST, 2013 WL 1326538 (D. Or. Apr. 1, 2013) (exercising supplemental jurisdiction for Oregon state wage and hour law claims based on same facts and similar legal standards as the FLSA); *Daprizio v. Harrah's Las Vegas, Inc.*, 2:10 Civ. 00604-GMN, 2010 WL 5099666, *3 (D. Nev. Dec. 7, 2010) (plaintiff may pursue claims under the FLSA and a class action under the Nevada Wage and Hour law).

Again Kellogg relies on superseded cases that do not apply to this case. All three cases predate the Ninth Circuit's *Wang* decision. Kellogg cites *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1152–53 (9th Cir.2000) for the proposition that "[e]ven if the Arizona Wage Act did provide for the recovery of disputed overtime wages, which is does not, then the FLSA would preempt the Arizona Wage Act." The Ninth Circuit specifically held that conflict

---

[24] "In light of the foregoing, Defendant is entitled to summary judgment on Plaintiffs' unpaid overtime breach of contract claims as to those pilots that this Court has found to be exempt under the highly compensated regulations, as discussed above. Defendant is not entitled to summary judgment on the exempt employees' holiday pay breach of contract claim."

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 48

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

preemption does not bar state statutory wage claims, even those that borrow their underlying liability from the FLSA:

> We have never held that FLSA preempts a state-law claim. In our recent decision in *Mevorah v. Wells Fargo Home Mortgage (In re Wells Fargo Home Mortgage Overtime Pay Litig.)*, 571 F.3d 953, 959 n. 5 (9th Cir.2009), we left open the question whether FLSA preempts a class action alleging parallel state-law claims. In two prior decisions, we have held that FLSA does not preempt state-law claims. In *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1423–25 (9th Cir.1990), we considered whether California could extend its more protective overtime pay laws to maritime workers on the high seas. We relied on the principle that FLSA sets a floor rather than a ceiling on protective legislation, holding that FLSA does not "preempt states from according more generous protection to maritime employees on the high seas off a state's coastal waters." *Id.* at 1425.
>
>    \*\*\*
>
> Conflict preemption applies "where it is impossible to comply with both state and federal requirements" or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Indus. Truck*, 125 F.3d at 1309. Where, as here, the state and federal requirements are the same, it is obviously possible to comply with both laws simultaneously. In *Williamson*, we rejected the argument that the purpose of FLSA "was to protect employers as well as employees," instead holding that "the central purpose of the FLSA is to enact minimum wage and maximum hour provisions designed to protect employees." 208 F.3d at 1153–54. Allowing the § 17200 claim in this case to proceed furthers this purpose of protecting employees.
>
>    \*\*\*
>
> We therefore hold that FLSA does not preempt a state-law § 17200 claim that "borrows" its substantive standard from FLSA.

*Wang*, 623 F.3d at 759-60. Again, Kellogg relies on two pre-*Wang* District of Arizona cases, *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914 (D. Ariz. 2010) and *Wood v. TriVita, Inc.*, 2:08 Civ. 0765, 2008 WL 6566637 (D. Ariz. Sept. 18, 2008), for the proposition that the FLSA preempts state laws which borrow their substantive standard from FLSA. Both of those cases rely on *Williamson* to reach their conclusion. However, in light of *Wang*'s clarification, that argument no longer carries any weight. An Arizona District Court also held that the AWA is not preempted by the FLSA. *Rose*, 2011 WL 196842, \*4 (D. Ariz. Jan. 20, 2011).

Thus, the overtime claims under the Arizona Wage Act may proceed. *Wang,* 623 F.3d 743; *Rose*, 2011 WL 196842, \*4 (D. Ariz. Jan. 20, 2011).

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
  (3:13-cv-05136-RBL) - 49

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

**F.    Plaintiffs' Kentucky State Claims Are Appropriate**

      1.    The Kentucky Supreme Court Will Decide If a Class Action May Be Brought For Overtime Claims Under Kentucky Law

A decision by the Kentucky Supreme Court will determine whether Plaintiffs' Kentucky state overtime claims on behalf of a class are proper. Currently pending before the Kentucky Supreme Court is the issue:

> whether the language of KRS 337.385 prohibits the bringing of claims by employees for wage and hour violations under Kentucky state law as a class action.

*McCann v. The Sullivan University System, Inc.*, 2015-SC-000144-DG (Supreme Court of Kentucky), Ex. 64, Oral Argument Calendar. On October 21, 2015 the Kentucky Supreme Court granted the plaintiffs discretionary review. On April 6, 2016 the parties completed their briefing. Ex. 65. The Supreme Court heard oral argument on June 10, 2016 and there is no decision yet. Because of the pending decision, and as Plaintiffs communicated to defense counsel, Plaintiffs will abide by the outcome of the Kentucky Supreme Court decision. If the Kentucky Supreme Court decides that Kentucky law prohibits the bringing of claims by employees for wage-and-hour violations under Kentucky state law as a class action then Plaintiffs will withdraw their request for class certification of that claim. If a class action is permitted, then subject to Kellogg's remaining defenses, class certification is proper.

      2.    Kentucky law follows the FLSA in defining the outside sales exemption.

Plaintiffs' Kentucky claims will either prevail or fail depending on the outcome of the outside sales exemption under the FLSA. Kentucky overtime law also has an outside sales exemption. The analysis is the same as the FLSA. *See, McCartt*, 139 F. Supp. 3d at 857 ("The overtime provisions of the FLSA and Kentucky wage and hour law are co-extensive and analyzed identically.) citing *City of Louisville, Div. of Fire v. Fire Serv. Managers Ass'n,* 212 S.W.3d 89, 92 (Ky. 2006). Plaintiffs agree that any decision concerning the outside sales exemption under the FLSA also applies to the Kentucky claims.

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 50

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1      Kellogg's argument that because Brashear seeks representative status for a Kentucky

2  class her claims are somehow precluded by the *McCartt* decision is unfounded. Mr. McCartt

3  opted out of this case, resolved his claims in his separate action, was represented by different

4  counsel, took separate discovery, raised different claims, made different legal arguments, and

5  ultimately resolved his case before trial. Kellogg cannot claim either claim or issue preclusion

6  because Brashear was not a party or in privity with a party in the *McCartt* case. *See, Reyn's Pasta*

7  *Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 (9th Cir. 2006); *W. Radio Services Co., Inc. v.*

8  *Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). As explained above, the differences between

9  *McCartt* and this case preclude an application of the *McCartt* holding here.

10      Thus, Kellogg's motion for judgment on Plaintiffs' Kentucky overtime claims should be

11  denied.

12      **G.**    **Minnesota and Washington Meal and Rest Breaks Are Proper**

13      Kellogg fails to establish that Plaintiffs are exempt under state law and thus its motion for

14  summary judgment on the Washington and Minnesota meal and rest break claims must fail.

15      Washington State imposes additional requirements on employers to meet the outside

16  sales exemption. In addition to making sales, Washington state law requires that: 1) the "outside

17  sales person controls his/her total hours worked"; 2) "Hours of work by an outside salesperson of

18  a nature that are not described in outside sales activities cannot exceed 20 percent of the hours

19  worked in the workweek by nonexempt employees of their employer"; and 3) "is advised of his

20  status as 'outside salesman.'" Wash. Admin. Code §296-128-540; Ex. 66, Wash. DOL

21  Employment Standards ES.A.7. Kellogg offers no evidence to support those additional

22  requirements. There are also additional requirements for the Washington State Administrative

23  Exemption, but Kellogg fails to address those as well. *See,* Wash. Admin. Code § 296-128-520.

24      Both Washington and Minnesota mandate that non-exempt employees are entitled to a

25  meal and rest breaks. Minn. Stat. Ann. §177.253 and §177.254. In Washington breaks are

26  afforded to promote "healthy working conditions and adequate wages." *Wingert v. Yellow*

27

28  PLAINTIFFS' OPPOSITION TO
    KELLOGG'S SUMMARY JUDGMENT
    MOTION
     (3:13-cv-05136-RBL) - 51

*Freight Sys., Inc.*, 50 P.3d 256, 262 (Wash. 2002); *Demetrio v. Sakuma Bros. Farms, Inc.*, 355 P.3d 258, 263 (Wash. 2015). Similarly in Minnesota part of the purpose of the breaks is to "maintain workers' health, efficiency, and general well-being." Minn. Stat. Ann. §177.22.

Employers' acts designed to frustrate the purpose of the meal and rest breaks are illegal. Any practice that "decrease[s] the frequency of worker's rest periods ... thwart[s] that fundamental purpose." *Wingert*, 50 P.3d at 262; *Demetrio*, 355 P.3d at 263. While an employee may choose to waive a break, the employer cannot act in a manner to frustrate the legislative intent. "A policy that allows for breaks, but in practice incentivizes employees to skip breaks or allows supervisors to coerce employees into skipping breaks does not meet the statutory requirements. Additionally, a policy that on its face, or in effect, requires employees to stay actively engaged in work during breaks also does not meet the statutory requirements." *Brady v. AutoZone Stores, Inc.*, 13 Civ. 1862 RAJ, 2015 WL 5732550, at *3 (W.D. Wash. Sept. 30, 2015), leave to appeal denied (Jan. 25, 2016). The employer must provide "affirmatively promote meaningful break time." *Demetrio*, 355 P.3d at 263.

Here, Kellogg flouts the meal and rest break laws and their underlying purposes. Kellogg does not have any meal or rest break policy, does not communicate a meal or rest break practice to TMs or RSRs, and took no action to give TMs the choice to take a meal or rest break. Indeed, because TMs are assigned too much work to accomplish in a day and work long hours to complete all of their work then they are precluded from taking any meal or rest break.

Thus, Kellogg violates Washington and Minnesota meal and rest break laws.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Kellogg's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment because the job duties that Plaintiffs actually perform, as opposed to Kellogg's self-serving characterization of their work, do not fall plainly and unmistakably within the terms and spirit of the FLSA's outside sales or

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 52

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

administrative exemptions and the myriad other issues Kellogg raises are either not ripe for consideration or not supported by the law or the undisputed facts.

Respectfully Submitted,

Dated: July 29, 2016

**GETMAN & SWEENEY, PLLC**

  */s/ Michael J.D. Sweeney*

Michael J.D. Sweeney, *pro hac vice*
Matt Dunn, *pro hac vice*
Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370
Fax: (845) 255-8649
msweeney@getmansweeney.com
mdunn@getmansweeney.com

*/s/ Michael Subit*
Michael C. Subit, WSBA No. 29189
Frank Freed Subit & Thomas
Suite 1200
Hoge Building
705 Second Avenue
Seattle, WA 98104-1729
Telephone: (206) 682-6711
Fax: (206) 682-0401
msubit@frankfreed.com

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 53

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370

1

## **CERTIFICATE OF SERVICE**

2

    **I HEREBY CERTIFY** that on July 29, 2016, I electronically filed the foregoing document

3

with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being

4

served this day on all counsel of record via transmission of Notices of Electronic Filing generated

5

by ECF System.

6

7

8
                                                /s/   *Michael J.D. Sweeney*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO
KELLOGG'S SUMMARY JUDGMENT
MOTION
 (3:13-cv-05136-RBL) - 54

Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
Telephone: (845) 255-9370