HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PATRICIA THOMAS, et al,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>KELLOGG COMPANY and KELLOGG SALES COMPANY,<br><br>　　　　　Defendant. | CASE NO. C13-5136RBL<br><br>ORDER |

　　　This case stems from the classification of certain Kellogg employees as "outside sales employees" which in turn exempts them from wage and hour requirements for overtime pay. The case has been conditionally certified as a collective action with more than 800 Kellogg current and former employees as opt-in claimants [Dkt. #166]. The matters before the Court are several dispositive motions and other pre-trial motions. First, there are cross-motions for summary judgment. [Dkt. #s 394 & 397]. The core issues raised are the same: are plaintiffs engaging in sales? If so, is that their primary duty? For the reasons stated below, the questions are best resolved following a trial on the merits. The dispositive motions are therefore DENIED.

　　　Defendant also moves to Decertify FLSA Collective Action [Dkt. #392]. After a review of the materials and as oral argument, the Court DENIES this motion. Plaintiffs have presented

substantial evidence that they do the same or similar jobs under similar circumstances and the Court is satisfied the case can be adjudicated on a collective basis. The Motion to Decertify FLSA Collection Action [Dkt. #392] is DENIED.

Plaintiffs move to Certify State Law Class Actions under FRCP 23 [Dkt. #400]. Following oral argument and review of supporting documents, the Court is not convinced that class action is superior to individual claims resolution. The state class action effort is a thinly-veiled second attempt to attract eligible employees to participate in this lawsuit. The Motion is DENIED.

## I. FACTS

The Plaintiffs are all current or former Kellogg Territory Managers (TMs) or Retail Sales Representatives (RSRs). They bring claims collectively under the Fair Labor Standards Act (FLSA) claiming that Kellogg erroneously classified them as exempt and failed to pay them overtime wages as that statute requires.

Kellogg sells its product to its chain store customers on the corporate level who, in turn, resell the products to end use customers through their individual retail stores around the country. Kellogg does not sell its products directly to consumers. It makes its money from selling its products to chain customers. To do so, it enters into "sales contracts" with chain stores on the corporate level that call upon Kellogg to provide the chain with the product needed to meet consumer demand at the store level. These contracts set the price the chain stores will pay for the products, the promotions that will support retail demand, and other sale terms such as delivery, payment, and credits. Kellogg's Sales Account Teams constantly evaluate the volume and mix of products ordered by chain customers. If retail sales fall below the volume anticipated

by Kellogg, the Sales Account Teams sell additional promotions to the chain customers to boost sales.

Plaintiffs are the TMs and RSRs who service Kellogg's corporate sales contracts and monitor contract compliance at the store level. RSRs work in Kellogg's "Morning Foods Division. This division uses a "Warehouse Model," in which Kellogg delivers the product covered by the sales contract to the chain customers' warehouse. The chain store customers are then responsible for delivering the product to their individual stores and managing it at the store level. TMs work in Kellogg's "Snack Division," which uses a "Direct Store Delivery Model." In this DSD Model, Kellogg delivers the product covered by the sales contract directly to the chain customers' stores. TMs are then responsible for managing Kellogg's product inventory in the customers' individual stores. Kellogg's employees perform the in-store functions that are performed by chain store employees under the "Warehouse Model." In other words, Kellogg provides the labor to service the sales contract in the DSD Model.

Kellogg classifies TMs and RSRs throughout the country as exempt from the FLSA overtime requirements. It bases the classification on a set of common job duties. Based on its analysis of those job duties, Kellogg concluded that "making sales" was TMs' and RSRs' primary job duty.

Kellogg's studies show that both TMs' and RSRs' job duties are uniform. Kellogg regularly conducts industrial studies of the job tasks that TMs and RSRs around the country perform and the time it takes to perform those tasks. The purpose of the studies is to enable Kellogg to understand "the tasks that occur on a daily basis and how long those tasks take."

## II. SUMMARY JUDGMENT MOTIONS

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. At 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

Congress enacted the FLSA in 1938 with the goal of "protect[ing] all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); see also 29 U.S.C. § 202(a). Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1-1/2 times the employees' regular wages. See § 207(a). The overtime compensation requirement, however, does not apply with respect to all

employees. *See* § 213.  As relevant here, the statute exempts workers "employed . . . in the capacity of outside salesman."  § 213(a)(1).

These exemptions are "narrowly construed against the employers seeking to assert them" and are limited to those employees "plainly and unmistakably" within the exemptions' "terms and spirit."  *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124-25 (9th Cir. 2002).  The employer bears the burden of showing that an exemption applies.

The general regulation sets out the definition of the statutory term "employee employed in the capacity of outside salesman."  It defines the term to mean "any employee . . . [w]hose primary duty is . . . making sales within the meaning of [29 U.S.C. § 203(k)]" and "[w]ho is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty."  §§ 541.500(a)(1)-(2).  The referenced statutory provision, 29 U.S.C. § 203(k), explains that "'[s]ale' or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition."  Thus, under the general regulation, an outside salesman is any employee whose primary duty is making any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.

For this exemption to apply to plaintiffs, their primary duty must be "making sales" or "obtaining orders or contracts for services."  29 C.F.R. § 541.500(a)(1).  Primary duty is the "principal, main, major or most important duty" that employees perform.  29 C.F.R. § 541.700.  While time alone is not the sole test for primary duty, most employees meet this requirement if they spend more than 50 percent of their time performing exempt work.

As for determining whether making sales was Plaintiffs' "primary" duty, FLSA regulations articulate four factors: (1) the relative importance of exempt duties as opposed to other types of duties; (2) the amount of time spent performing exempt work; (3) the employee's

1  relative freedom from direct supervision; and (4) the relationship between the employee's salary
2  and the wages paid to other employees for the kind of non-exempt work performed by the
3  employee. 29 C.F.R. § 541.700(a). The determination of an employee's primary duty is not a
4  mathematical computation. Rather, the determination must be based on all of the facts of a
5  particular case, with the major emphasis on the character of the employee's job as a whole.
6  Although no set amount of work brings a sales person within the outside sales exemption, one
7  court has held that if as little as ten to twenty percent of an employee's time is spent engaged in
8  outside sales work, the employee is properly exempt. *Lint v. Nw. Mut. Life Ins. Co.*, 2010 WL
9  4809604 at *3 (S.D. Cal. 2010); *see also Taylor v. Waddell & Reed, Inc.*, 2012 WL 10669 at *3
10 (S.D. Cal. 2012).

11         At oral argument both sides argued that the relevant and material facts were undisputed.
12 Having said that, both sides came to diametrically opposed conclusions to the primary duty of
13 these employees. Kellogg paints a picture of the TMs and RSRs as collectively the straw that
14 stirs the breakfast drink. Everything the TMs and RSRs do is focused on selling. Kellogg
15 recounts testimony from claimants who proudly state that they are engaged in sales. Kellogg
16 says there are no corporate sales agents above them organizing these sales and every sale is
17 credited to the efforts of TMs and RSRs.

18         For their part, the claimants say that it is undisputed that Kellogg has a group of corporate
19 sales representatives that are engaged in and required to develop sales agreements with the
20 corporate customers. Plaintiffs' counsel describes a requirements contract with set terms of
21 pricing, payment, delivery, credit and the amount of merchandising funds that are available for
22 promotions. The TMs and the RSRs serve the contracts. The TMs take product from the back of
23 the store, they take it out, they put it on the shelf. They're required to get into the back of the
24

store, straighten up the room in the back of the store, open up boxes, get the product on a cart, wheel the product out, step up, put that product on the shelf, make sure anything that's on there is rotated properly, presented properly. They then clean up and go back in to the storeroom, and determine what additional product this store is going to need to meet the customer demand. That's not sales work.

This recitation alone leads the Court to conclude that a trial is necessary to determine which characterization of the facts is true and accurate.

## III. MOTION TO DECERTIFY FLSA COLLECTIVE ACTION

The FLSA authorizes a worker to bring suit on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). At the initial, notice stage of an FLSA case, the "similarly situated" requirement can be met based on "little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." *Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011). The second "decertification" stage occurs after discovery is complete and "the court uses a stricter standard for determining whether the plaintiffs are 'similarly situated.'" *Id*. While the evidentiary standard is stricter, the question remains the same: Are the class members "similarly situated" with respect to the policy or plan being challenged? *Id*.; 29 U.S.C. 216(b).

Courts consider three factors in determining whether plaintiffs have satisfied this burden: "(1) the factual and employment settings of individual plaintiffs; (2) the different defenses to which the plaintiffs may be subject on an individual basis; and (3) the degree of fairness and procedural impact of certifying the action as a collective action." *Khadera*, 2011 WL 7064235, at *2. Moreover, "unlike the Rule 23 analysis at the FLSA 'certification stage, a court need not

judge the merits of the plaintiffs' claims because they are irrelevant to the collective action inquiry, as long as plaintiffs assert a plausible basis for their claim.'" *Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347, 361 (D. Conn. 2013).

"The first consideration in determining whether Plaintiffs are "similarly situated" to the proposed class is whether the Plaintiffs' specific employment conditions and duties are similar to those of the proposed class." *Troy*, 276 F.R.D. at 650; see also, *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1011 (6th Cir. 2016).  Here, within the separate classes, Plaintiffs have the same job titles, the same job duties, the same job descriptions, the same training, the same compensation, the same evaluation criteria, and the same supervisory structure; they are monitored by the same systems and use the same equipment to do their jobs. Whether those facts establish exempt work as a primary duty can be determined in one common proceeding.

The Court or a jury is capable of determining whether those job tasks establish a primary duty of making sales, are non-manual labor and directly related to Kellogg's management or general business operations, require the exercise of discretion and independent judgment with respect to matters of significance, or constitute the management of the Kellogg or a customarily recognized department or subdivision thereof.

It is the duty of the Court, and ultimately the jury, to understand precisely what Plaintiffs actually do and determine whether any of those duties constitute "sales" as defined by the FLSA and, if they do, whether sales duties were Plaintiffs' "primary" duty. *Tsyn v. Wells Fargo Advisors, LLC*, No. 14-CV-02552-LB, 2016 WL 612926, at *6 (N.D. Cal. Feb. 16, 2016).

In a collective action the Court can deal with the plaintiffs' claims and Kellogg's defenses in a fair way.  This is what we do.  The Motion to Decertify FLSA Collective Action [Dkt. #392] is **DENIED**.

## IV. MOTION TO CERTIFY STATE LAW CLASS ACTIONS

Plaintiffs move "to certify their state law claims as Rule 23(b)(3) class actions on behalf of all individuals who worked as Territory Managers for Defendants in the following nine States: Arizona, Illinois, Kentucky, Minnesota, Missouri, New York, Ohio, Washington, and Wisconsin." [Dkt. #400].

Rule 23(a) provides that the party seeking certification must demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1).

Because Plaintiffs seek certification pursuant to Rule 23(b)(3), they must show that two conditions are satisfied: "common questions must predominate over any questions affecting only individual members, and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 572–73 (W.D. Wash. 2007) (*quoting Hanlon,* 150 F.3d at 1022). The goal of 23(b)(3) is "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

"In determining superiority, courts must consider the four factors of Rule 23(b)(3)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). These are: (1) class members' interests in individually controlling the prosecution of the case; (2) the extent and nature of litigation concerning the same controversy already begun by class members; (3) desirability of concentrating the litigation in the particular

forum; and (4) manageability. Fed. R. Civ. P. 23(b)(3)(A)-(D). Here, these factors counsel against certification.

In this case, certifying state-law classes of TMs effectively disregards class members' interests in individually controlling the prosecution of this case. This Court issued notice when it conditionally certified the case as an FLSA collective action. Plaintiffs want the Court to follow that notice—telling TMs they can join by filing a consent to sue—with a second notice telling them that now, regardless of their prior decision, they will presumptively be part of the case unless they expressly opt-out.  Regardless of the evaluation of the four factors for certification:  numerosity, commonality, typicality, and adequate representation, the history of this litigation and the resulting unfairness to the defendant causes the Court to DENY this motion and leave those who opted-out of this case to their own devices.  The Motion to Certify State Law Class Actions [Dkt. #400] is **DENIED**.

## V. CONCLUSION

The Motions for Summary Judgment [Dkt. #s 394 and 397] are **DENIED**.  The Motion to De-Certify FLSA Collective Action [Dkt. #392] is **DENIED**.  The Motion to Certify State Law Class Actions [Dkt. #400] is **DENIED** for the reasons stated at oral argument.  The motions to strike the Labor Studies as admissible evidence are **DENIED**.  The issue of the statute of limitation and the issue of the measure of liquidated damages will follow the decision on the outside sales exemption.  The applicability of judicial estoppel is **RESERVED**.

IT IS SO ORDERED.

Dated this 5th day of December, 2016.

Ronald B. Leighton
United States District Judge