1

2          **Honorable Ronald B. Leighton**

3

4

5

6

7

8

9

10

11              **UNITED STATES DISTRICT COURT**
        **FOR THE WESTERN DISTRICT OF WASHINGTON**
12                        **AT TACOMA**

13
    PATRICIA THOMAS, et al.,                    **CASE NO.: 3:13-cv-05136-RBL**
14
            **Plaintiffs,**
15
                                                **JOINT MOTION FOR PRELIMINARY**
16  v.                                          **APPROVAL OF FAIR LABOR**
                                                **STANDARDS ACT SETTLEMENT AND**
17  KELLOGG   COMPANY   and   KELLOGG           **TO AUTHORIZE NOTICE OF**
    SALES COMPANY,                              **SETTLEMENT TO PLAINTIFFS**
18
            **Defendants.**                     **NOTE ON CALENDAR:**
19                                              **MARCH 14, 2018**

20

21

22

23

24

25

26

27
    JOINT MOTION                                GETMAN, SWEENEY & DUNN, PLLC
28  (3:13-cv-05136-RBL)                         260 FAIR STREET
                                                KINGSTON, NY 12401
                                                TELEPHONE: (845) 255-9370

**TABLE OF CONTENTS**

I.   FACTS ................................................................................................................... 2

   A.   Complaint and Collective Action Notice.......................................................... 2

   B.   Discovery.......................................................................................................... 3

   C.   Motions ............................................................................................................ 4

   D.   Trial ................................................................................................................. 4

   E.   Mediation and Settlement ................................................................................ 5

   F.   Settlement Agreement ..................................................................................... 6

II.  LEGAL STANDARD .......................................................................................... 8

   A.      Notice to Opt-ins ......................................................................................... 9

      1.      Notice Form .......................................................................................... 9

      2.      Service Awards .................................................................................... 10

      3.      Attorneys' Fees and Costs ................................................................... 10

   B.      Preliminary Approval of the FLSA Settlement ........................................ 12

      1.      A Bona Fide Dispute Exists Between the Parties ................................ 13

      2.      The Proposed Settlement Is Fair and Reasonable .............................. 13

         a.      The Settlement Is the Result of Arm's Length Negotiations ............ 14

         b.      Plaintiffs' Litigation Risks Are Significant .................................... 14

         c.      Plaintiffs' Recovery Is Fair and Reasonable ................................. 14

         d.      The Settlement's Release Provision Is Proper.............................. 15

III. CONCLUSION ................................................................................................... 16

1

**TABLE OF AUTHORITIES**

2
**Cases**

3
*A.H. Phillips v. Walling,* 324 U.S. 490 (1945) ......................................................... 11

4
*Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240 (1975) ..................................... 11

5
*Ambrosino v. Home Depot U.S.A, Inc.*, 11 Civ. 1319 L MDD,
    2014 WL 3924609 (S.D. Cal. Aug. 11, 2014) ................................... 13, 14, 16
6

7
*Balderas v. Massage Envy Franchising, LLC*, 12 Civ. 06327 NC,
    2014 WL 3610945 (N.D. Cal. July 21, 2014) .............................................. 15

8
*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) ......................... 8

9
*Boyd v. Bank of Am. Corp.*, 13 Civ. 0561-DOC,
    2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ............................................. 11
10

11
*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 706 (1945) .......................................... 8

12
*Brueningsen v. Resort Express Inc.*, 2:12 Civ. 843-DN,
    2016 WL 10537003 (D. Utah May 23, 2016) ................................................ 9

13
*Campanelli v. Hershey Co.*, C 08–1862 BZ,
    2011 WL 3583597 (N.D. Cal. May 4, 2011) ................................................ 12
14

15
*Clemans v. New Werner Co.*,
    3:12 Civ. 05186-RBL, Dkt. 51-1 (W.D. Wa. June 27, 2013) ............................. 10

16
*Deaver v. Compass Bank,* 13 Civ. 00222-JSC,
    2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ............................................. 15
17

18
*Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) ........................... 10

19
*Garner v. State Farm Mut. Auto. Ins. Co.*, 08 Civ. 1365 CW (EMC),
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................. 10

20
*Goldsby v. Renosol Seating, LLC*, 2:08-0148-KD-N,
    2013 WL 6535253 (S.D. Ala. Dec. 13, 2013) .............................................. 9
21

22
*Goudie v. Cable Commun., Inc.*, 08 Civ. 507-AC,
    2009 WL 88336 (D. Or. Jan. 12, 2009) ...................................................... 13

23
*Graham v. Overland Solutions, Inc.*, 10 Civ. 0672 BEN,
    2012 WL 4009547 (S.D. Cal. Sept. 12, 2012) ............................................. 10
24

25
*Grewe v. Cobalt Mortg., Inc.*, C16-0577-JCC,
    2016 WL 4014114 (W.D. Wash. July 27, 2016) ........................................... 12

26
*Hand v. Dionex Corp.*, 06 Civ. 1318-PHX-JAT,
    2007 WL 3383601 (D. Ariz. Nov. 13, 2007) .............................................. 14
27

28
*Hodge v. Signia Mktg., Ltd.*, 15 Civ. 02839-KMT,
    2017 WL 5900344 (D. Colo. Nov. 30, 2017) ........................................... 9, 12

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

*Hosier v. Mattress Firm, Inc.*, 3:10 Civ. 294-J-32JRK, 2011 WL 7071062 (M.D. Fla.
    Dec. 29, 2011), report and recommendation adopted, 3:10 Civ. 294-J-32JRK, 2012
    WL 177533 (M.D. Fla. Jan. 23, 2012) .......................................................... 9

*In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, 06 Civ. 17430-WYD-CBS,
    2010 WL 9593848 (D. Colo. Oct. 6, 2010) .......................................... 9, 12

*In re Media Vision Tech Sec. Litigs.*, 913 F. Supp. 1362 (N.D. Cal. 1996) .................... 11

*Lewis v. Wells Fargo & Co.*, 08 Civ. 2670, Doc. 315 (N.D. Cal. April 29, 2011) ......................... 14

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir.1998) .................................... 15

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ........................ 9, 12, 13

*Ma v. Covidien Holding, Inc.*, 12 Civ. 02161-DOC (RNBx),
    2014 WL 360196 (C.D. Cal. 2014) ................................................................. 15

*Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247 (5th Cir. 2012) *cert. denied*,
    133 S. Ct. 795, 184 L. Ed. 2d 583 (U.S. 2012) ............................................... 9

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) .......................................... 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .................... 14

*Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324 (N.D. Cal. 2014) ...................................... 14

*Otey v. CrowdFlower, Inc.*, 12 Civ. 05524-JST,
    2016 WL 304747 (N.D. Cal. Jan. 26, 2016) .................................................. 13

*Roberts v. City of Chula Vista*, 16 Civ. 1955-MMA (DHB),
    2017 WL 6541105 (S.D. Cal. Dec. 21, 2017) ................................................. 12

*Rodriguez v. SGLC Inc.*, 2:08 Civ. 1971-MCE-KJN,
    2014 WL 229221 (E.D. Cal. Jan. 17, 2014) .................................................. 11

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .................................... 10

*Stovall-Gusman v. W.W. Granger, Inc.*, 13 Civ. 02540-HSG,
    2015 WL 3776765 (N.D. Cal. June 17, 2015) ................................................ 15

*Tommey v. Computer Scis. Corp.*, 11 Civ. 02214-EFM,
    2015 WL 1623025 (D. Kan. Apr. 13, 2015) ................................................... 9

*Trauth v. Spearmint Rhino Companies Worldwide, Inc.*, EDCV 09-01316-VAP,
    2012 WL 4755682 (C.D. Cal. Oct. 5, 2012) .................................................. 12

**Statutes**

29 U.S.C. § 202(a) ....................................................................................... 8

29 U.S.C. § 215(b) ...................................................................................... 9

29 U.S.C. § 255 .......................................................................................... 13

JOINT MOTION
(3:13-cv-05136-RBL) - iii

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

**Treatises**

NERA Economic Consulting, "Trends in Wage and Hour Settlements: 2015 Update" .................. 15

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

The Named Plaintiffs and Kellogg have signed the settlement agreement resolving this Fair Labor Standards Act ("FLSA") case and respectfully request that the Court:

    1)  Authorize the parties to issue the Notice in Exhibit 2 to the Plaintiffs;

    2)  Set a final approval hearing date; and

    3)  Enter the order attached as Exhibit 3.

After more than four years of extensive discovery, numerous motions, four mediations, and trial preparation, the parties agreed to settle this case for an amount not to exceed $16,750,000. The 11 Named Plaintiffs have signed the settlement agreement and they approve this settlement. Kellogg too has approved of the settlement. Before payment is issued to the Plaintiffs and claims are released, however, the parties have agreed to use a two-step approval process. First, in this motion, they ask the Court to approve the form and the mailing of the Notice. The Notice informs the Plaintiffs about the settlement, its terms, and the Plaintiffs' options — including the right to object or opt-out within the Notice period. And the settlement administrator will mail the Notice to all of the Plaintiffs. This Notice step is important because some courts have refused to approve FLSA settlements that bind opt-ins to the terms if opt-ins do not receive notice of the settlement and the opportunity to object. Thus, Notice protects the opt-ins' due process rights.

Second, after the Notice period expires, Plaintiffs will ask in a subsequent motion for the Court to approve the settlement, service awards to the Named and deposed Plaintiffs, and attorneys' fees and costs. Because this is not a supervised U.S. Department of Labor settlement, the parties cannot effectuate their settlement agreement without the Court's review and approval. Courts evaluate FLSA settlements under the Eleventh Circuit's *Lynn's Food Stores*[1] standard: (1) the FLSA settlement must involve the resolution of a bona fide dispute over an FLSA provision and (2) the settlement must be fair and reasonable. If the settlement meets both criteria, then the Court approves the settlement. Upon approval, and assuming there are no appeals, settlement checks are mailed to Plaintiffs, the attorneys' fees and costs are paid, and Plaintiffs will release their wage and hour claims.

---

[1] *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982).

JOINT MOTION
(3:13-cv-05136-RBL) - 1

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

1   Overall this is a substantial settlement on behalf of 750 Plaintiffs. The parties request that

2   the Court grant this motion and preliminarily approve of their settlement.

3   **I.   FACTS**

4   **A.   Complaint and Collective Action Notice**

5   Named Plaintiff Patty Thomas filed this case over four years ago as a FLSA collective

6   action and Washington State Class action on behalf of TMs and RSRs for unpaid overtime claims.

7   Dunn Dec. ¶ 4.[2] In the first several months following the filing of the case, numerous TMs and

8   RSRs also filed their consent to sue forms. *Id.* at ¶ 5. And throughout the course of litigation,

9   Plaintiffs amended the complaint three times to add state class action claims and ten more Named

10  Plaintiffs. *Id.* at ¶ 6

11  To inform other current and former TMs and RSRs of the case and give them the

12  opportunity to join, Plaintiffs moved for FLSA conditional certification and the issuance of notice.

13  *Id.* at ¶ 7. In response, Kellogg asked for a brief discovery period to gather evidence to defeat

14  Plaintiffs' motion and the Court permitted limited discovery. *Id.* During that discovery period,

15  Named Plaintiffs Thomas, Dowling, Gibson, and Dye responded to Kellogg's discovery demands

16  and sat for depositions. *Id.* Kellogg also deposed Named Plaintiff Sayedi and one other opt-in.

17  While most depositions occurred in the geographic region where the Named Plaintiffs lived, one

18  flew to New York for his deposition. *Id.* Plaintiffs' Counsel also served discovery demands,

19  reviewed documents, and deposed a Kellogg 30(b)(6) witness. *Id.* Over Kellogg's objections, the

20  Court granted conditional certification and authorized notice. *Id.* at ¶ 8. The response to the notice

21  resulted in approximately 900 current and former Kellogg TMs and RSRs filing a court approved

22  consent to sue form to pursue their wage claims.[3] *Id.* at ¶ 9.

23

24

25

---

26  [2] Declaration of Matt Dunn in Support of Joint Motion for Preliminary Approval of Fair Labor

27  Standards Act Settlement and to Authorize Notice of Settlement to Plaintiffs or Dunn Dec. for short.

    [3] Throughout litigation some Plaintiffs opted-out and others were dismissed. The final number of

28  Plaintiffs is 750. Dunn Dec. ¶ 9.

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

**B.      Discovery**

After the FLSA opt-in notice period ended, and over the course of the next few years, the parties exchanged and took extensive discovery.

Kellogg sought voluminous discovery from each opt-in Plaintiff. Early on, Kellogg served document requests, requests to admit, and interrogatories on each Plaintiff. *Id.* at ¶ 10. After Plaintiffs objected, Kellogg moved to compel discovery and deem that Plaintiffs admitted they were exempt under the FLSA's outside sales exemption. *Id.* Although the Court granted individualized discovery, it required Kellogg to simplify the requests. Plaintiffs then had the task of collecting discovery from each Plaintiff. *Id.* Plaintiffs' responses included over 780 sets of interrogatory responses and over 28,000 pages of documents. *Id.*

Similarly, Plaintiffs also sought discovery to prove their right to FLSA overtime wages and rebut Kellogg's defenses. This discovery included requests to admit, interrogatories, document demands, and depositions. *Id.* at ¶ 11. Kellogg produced a wealth of information, including industrial studies, joint business plans, Plaintiffs' and merchandisers' wage records, personnel files, Plaintiffs' work history, emails, job descriptions, and time stamped GPS records. Overall, Plaintiffs digested Kellogg's production of over 331,000 pages of documents, over 1,000,000 plaintiff and management emails, and voluminous ESI. *Id.* at ¶ 11.

The parties also took, or defended, over 50 Plaintiff, corporate representative, and other witness depositions. Kellogg initially deposed 20 Named and opt-in Plaintiffs. *Id.* at ¶ 12. It then sought more, and the Court permitted Kellogg to take another 20 depositions. *Id.* In total, Kellogg deposed the 11 Named Plaintiffs (five of whom Kellogg deposed twice), and 27 opt-ins. Plaintiffs' depositions occurred in New York, Arizona, Washington, Georgia, Florida, Rhode Island, Texas, Kentucky, Illinois, Minnesota, Colorado, Michigan, Missouri, New Mexico, Ohio, Pennsylvania, and California. *Id.* Plaintiffs deposed 16 Kellogg employees and other relevant witnesses. *Id.* at ¶ 13. The Kellogg employees included a District Manager, Senior Retail Manager, Account Executive, Continuous Improvement Project Manager, other upper management employees, and numerous 30(b)(6) witnesses, including a two-day 30(b)(6) deposition. *Id.* In addition, Plaintiffs

1  deposed the owner of Motus (the GPS system Kellogg uses to reimburse workers for their mileage)

2  and Kellogg's expert. *Id.*

3  **C.   Motions**

4  Throughout the life of this case, while there were many compromises and agreements, the

5  parties reached an impasse on numerous issues that resulted in pre-trial motions. The motions

6  addressed procedural, discovery, substantive, and trial disputes. The procedural motions included

7  FLSA conditional certification, motions to amend the complaint to add Rule 23 class claims and

8  Named Plaintiffs, Rule 23 class certification, and Kellogg's decertification motions. *Id.* at ¶ 14.

9  Kellogg's discovery motions included pre-conditional certification discovery, individual discovery

10  of each plaintiff, its demand for Plaintiffs' resumes, and additional depositions. *Id.* Plaintiffs'

11  discovery related motions covered requests such as a two-day 30(b)(6) deposition,[4] wage records

12  for merchandisers, and the industrial studies. *Id.* The parties also litigated summary judgment

13  motions on some of the essential issues in the case, such as FLSA exemptions, willfulness, and

14  Kellogg's good faith defense to liquidated damages. *Id.* at ¶ 15. Finally, in the weeks and months

15  leading up to trial, the parties filed numerous pre-trial motions. Some of the motions included:

16  another Kellogg decertification motion, whether the court should determine damages, and

17  exclusion of Kellogg's experts and Plaintiffs' witness who prepared the damages summary. *Id.* at ¶

18  16.

19  **D.   Trial**

20  Given the stakes in this case, trial preparation was extensive, thorough, and time

21  consuming. The work included vetting, preparing and scheduling Plaintiffs to testify, negotiating a

22  pretrial order and jury instructions, drafting a neutral statement of the case, reviewing exhibit and

23  witness lists, coordinating with Kellogg's counsel to schedule Kellogg's witnesses to testify in

24  Plaintiffs' case, preparing closing and opening statements, drafting and refining witness testimony

25  outlines, preparing trial exhibits, attending the Court's technology training, participating in a mock

26

27

28  [4] Even though Kellogg moved for a protective order, the discovery was related to Plaintiffs' request.

JOINT MOTION
(3:13-cv-05136-RBL) - 4

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

1   trial to identify case weaknesses and evaluate jury themes, and drafting and responding to

2   numerous pre-trial motions. Plaintiffs also prepared and updated damage calculations. *Id.* at ¶ 17.

3       **E.**       **Mediation and Settlement**

4       The parties worked at arm's length and engaged in numerous mediations to resolve the case

5   before trial. Those settlement negotiations were done with the guidance of seasoned and respected

6   mediators over the course of four in-person mediations and included numerous emails and

7   telephone calls with the mediators both before and after the mediations. *Id.* at ¶ 18.

8       To determine the value of the case for mediation, Plaintiffs calculated one set of damages to

9   share with Kellogg and another set for internal purposes. *Id.* at ¶ 19. To calculate damages,

10  Plaintiffs used Kellogg's wage and hour records, Plaintiffs' employment history, the weeks

11  Plaintiffs' worked, their position, and the hours worked. *Id.* Plaintiffs' damage calculations

12  incorporated the statute of limitations and FLSA liquidated damages. Then in advance of

13  mediation, Plaintiffs provided damages to Kellogg.[5] *Id.*

14      Plaintiffs also created an internal damages spreadsheet to calculate the various litigation

15  risks. *Id.* at ¶ 21. Some of the risks Plaintiffs considered included: Kellogg's defenses to paying

16  overtime wages including the outside sales exemption, administrative exemption and combination

17  exemption; Plaintiffs' ability to prove that Kellogg willfully violated the FLSA; Kellogg's good

18  faith defense to liquidated damages; Plaintiffs' ability to prove the case collectively; and Kellogg's

19  defenses to the hours Plaintiffs claimed they worked. *Id.* For example, if Plaintiffs did not prove

20  Kellogg willfully violated the FLSA, then 144 Plaintiffs (or 20% of the class) would recover

21  nothing. *Id.* Or if Kellogg proved that the fluctuating workweek applies, but Plaintiffs prevailed on

22  everything else, Plaintiffs recovery would reduce to approximately 30% of their total damages. *Id.*

23  In addition, if Kellogg lost the case then Kellogg would likely appeal and further delay Plaintiffs'

24  payment. *Id.* Based on those litigation risks, counsel was able to advise the Named Plaintiffs as to

25  whether they should accept Kellogg's settlement offers. *Id.*

26

27  _____

28  [5] As the rulings on motions changed the damages and Kellogg produced updated data, Plaintiffs refined their damage calculations and produced them to Kellogg. Dunn Dec. ¶ 20.

JOINT MOTION
(3:13-cv-05136-RBL) - 5

1    Although the parties engaged in numerous good faith negotiations, no single mediation was

2  successful. *Id.* at ¶ 22. For the first three mediations, the parties used former U.S. Magistrate Judge

3  and JAMS mediator Dianne Welsh. *Id.* Those mediations occurred in New York City and

4  Philadelphia. *Id.* After the Court ordered the parties to participate in mediation before trial, the

5  parties agreed to work with James A. Smith. *Id.* That mediation occurred in Seattle, Washington in

6  July 2017. *Id.* While that mediation did not result in settlement, Mr. Smith continued to work with

7  the parties to bring them closer together. *Id.* Finally, on the Friday evening before the start of trial

8  and with the Named Plaintiffs' approval, the parties agreed to the core settlement terms, including

9  a gross settlement not to exceed $16,750,000. *Id.*

10    The Named Plaintiffs were critical for mediations and settlement discussions. Importantly,

11  they represented not only their interests, but the interests of all of the other Plaintiffs too. Before

12  the mediations, the Named Plaintiffs participated on group conference and individual calls to

13  provide settlement authority and details that were essential facts to rebut Kellogg's arguments. *Id.*

14  at ¶ 23. Further, Named Plaintiff Thomas attended the Seattle, Washington mediation. During each

15  of the mediations, the Named Plaintiffs were available via telephone. *Id.* And the Named Plaintiffs

16  approved the settlement the parties ultimately reached. *Id.*

17    **F.    Settlement Agreement**

18    The $16,750,000 settlement provides a substantial benefit to all Plaintiffs. *Id.* at ¶ 26. The

19  settlement agreement was the result of four mediations with two different mediators, negotiations

20  by the parties' counsel, and compromises by both parties. *Id.* at ¶ 22. In addition, the settlement

21  agreement is the product of negotiations over the course of two months to create the final

22  settlement details. *Id.* at ¶ 28. All Named Plaintiffs signed the settlement. If this motion is

23  approved, then the opt-ins will also have the opportunity to decide what steps, if any, they want to

24  take next. Ultimately, if the settlement is approved, Plaintiffs will receive money for their unpaid

25  overtime wages.

26    The parties agreed to a joint notice process to inform opt-ins of the settlement. *Id.* at ¶ 30.

27  After the Court approves the Notice, the settlement administrator will mail the Notice attached as

28

JOINT MOTION                                                    GETMAN, SWEENEY & DUNN, PLLC
(3:13-cv-05136-RBL) - 6                                         260 FAIR STREET
                                                               KINGSTON, NY 12401
                                                               TELEPHONE: (845) 255-9370

Exhibit 2 to all opt-in Plaintiffs. *Id.* The settlement agreement provides for a timeline for the various settlement components. *Id.* at ¶ 31. The basic timeline of events is listed below:

| | |
|---|---|
| Notice is mailed to Plaintiffs | 7 days after the Court grants this motion and approves of the Notice |
| Deadline to opt-out and file objections | 21 days after Notice is mailed (plus potential additional time if Notices are remailed). |
| Settlement Effective Date (assuming no appeals or motion for extension of time are filed) | 33 days after the Court enters final approval order |
| Proposed FLSA approval hearing | May 11, 2018 |
| Checks mailed to Plaintiffs | 14 days after Settlement Effective Date |

The Notice provides critical settlement information. It informs each Plaintiff of their estimated settlement recovery. *Id.* at ¶ 32. Plaintiffs are told that they have one of three choices: 1) do nothing and consent to the settlement; 2) mail their objection to any of the settlement terms but remain bound by the Court approved settlement; or 3) opt-out and retain their rights. *Id.* at ¶ 33. If an opt-in agrees to be bound by the agreement, but wants to object, the person may mail the objection to the settlement administrator. *Id.* at ¶ 34. Plaintiffs will file the objection with the Court. An opt-in may opt out and choose not to be bound by the settlement agreement. *Id.* The opt-out's settlement share then reverts to Kellogg. *Id.* Importantly, the opt-out's statute of limitations is protected because the claims are tolled for an additional two months. *Id.* To opt out, the person mails a letter to the settlement administrator making that request within 21 days of the settlement administrator's mailing.[6] *Id.*

The settlement agreement provides Plaintiffs with a significant recovery. Overall, it is estimated that Plaintiffs will recover an average of over $16,000.[7] *Id.* at ¶ 36. Each Plaintiff's individual recovery is based on their pay, the weeks worked, and their position. RSRs' recovery is calculated based on a 45 hour workweek until 2013 when Kellogg eliminated the position. *Id.* Although Kellogg reinstituted the RSR position in 2014, generally RSRs did not work more than

---

[6] Kellogg may void the agreement if more than three Plaintiffs opt-out. If more than three Plaintiffs opt-out, Kellogg has 7 days to void the agreement. Dunn Dec. ¶ 35.

[7] This is before incentive payments, attorneys' fees at one-third, settlement administration payments, and court costs are deducted.

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

40 hours a week. *Id.* The TM position is based on a 55 hour workweek until August 2017.[8] *Id.* After Plaintiffs calculated the total damages, Plaintiffs prorated their settlement recovery after making deductions for service awards, attorneys' fees and costs, and minimum payments of $500. *Id.* Each of the Named Plaintiffs will receive a service award of up to $20,000, and each of the deposed opt-ins will receive a service award of up to $5,000. *Id.* at ¶ 37.

By agreeing to and participating in the settlement, Plaintiffs will release the claims that were brought or could have been brought in this litigation. *Id.* at ¶ 38. Because the Named and opt-in Plaintiffs will receive a service award, they will provide Kellogg with a general release. *Id.*

After Notice is issued, and assuming Kellogg does not exercise its right to void the agreement if more than three Plaintiffs opt out, Plaintiffs will move for approval of the FLSA settlement. *Id.* at ¶ 39. Then after the Court provides final approval, and assuming there are no appeals, the settlement administrator will issue settlement checks along with the release language. *Id.* Any checks that are uncashed after nine months will be deposited with the applicable state department of unclaimed funds. *Id.* Provided state law permits, this will allow Plaintiffs the opportunity to claim their money at a later time. *Id.*

## II.   LEGAL STANDARD

Congress designed the FLSA to protect workers from "substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981) *quoting* 29 U.S.C. § 202(a). Thus, to protect workers, a FLSA claim typically cannot be waived or settled except in two circumstances. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945). The exceptions are (1) that the Secretary of Labor supervises the back wage payments or (2) that the court approves the

---

[8] In August 2017 Kellogg changed its Snacks Division Direct-Store-Delivery model. Because discovery ended before Kellogg changed its model, Plaintiffs did not have evidence from Kellogg about the changed practices.

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

proposed settlement between the employer and employees. 29 U.S.C. § 215(b); *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353-54 (11th Cir. 1982).[9]

### A.  Notice to Opt-ins

Before courts approve FLSA settlements, particularly in collective actions, they may first authorize notice of the settlement. Notice of the settlement and its terms protects opt-ins' due process rights because it gives opt-ins the right to object before they are bound to the settlement terms. In FLSA actions like this one, Courts across the county have issued notice before approval. *Hodge v. Signia Mktg., Ltd.*, 15 Civ. 02839-KMT, 2017 WL 5900344, at *2 (D. Colo. Nov. 30, 2017) (counsel notified plaintiffs of settlement and there were no objections, but some notices were undeliverable); *Brueningsen v. Resort Express Inc.*, 2:12 Civ. 843-DN, 2016 WL 10537003, at *1 (D. Utah May 23, 2016) (preliminary approval on behalf of FLSA class who was given right to object); *Goldsby v. Renosol Seating, LLC*, 2:08-0148-KD-N, 2013 WL 6535253, at *10 (S.D. Ala. Dec. 13, 2013) (adopting two-step process to permit opt-ins to object); *Hosier v. Mattress Firm, Inc.*, 3:10 Civ. 294-J-32JRK, 2011 WL 7071062, at *3 (M.D. Fla. Dec. 29, 2011), report and recommendation adopted, 3:10 Civ. 294-J-32JRK, 2012 WL 177533 (M.D. Fla. Jan. 23, 2012) (same); *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, 06 Civ. 17430-WYD-CBS, 2010 WL 9593848, at *1 (D. Colo. Oct. 6, 2010) (same). Indeed, if the Plaintiffs here were denied the opportunity to object, the Court could reject the settlement. *Tommey v. Computer Scis. Corp.*, 11 Civ. 02214-EFM, 2015 WL 1623025, at *1 (D. Kan. Apr. 13, 2015) (refusing to approve FLSA settlement until opt-ins are notified of settlement and given right to object). Thus, the parties' agreed upon Notice permits opt-ins to object and offers an additional layer of protection because opt-ins may also opt out.

### 1.  Notice Form

Here, the parties agreed that the settlement administrator will issue the Notice. The Notice is derived from the Federal Judicial Center class action notice[10] and is similar to version this Court

---

[9] The Fifth Circuit and some district courts have found that under certain circumstances, private FLSA settlements can bind parties even without court or Department of Labor approval. *See Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) *cert. denied,* 133 S. Ct. 795, 184 L. Ed. 2d 583 (U.S. 2012), (citations omitted).

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

approved in another case. *Clemans v. New Werner Co.*, 3:12 Civ. 05186-RBL, Dkt. 51-1 (W.D. Wa. June 27, 2013). The Notice informs opt-ins of the settlement agreement, its essential terms, and the opt-ins' rights.

## 2. Service Awards

The Notice informs Plaintiffs that the settlement provides for service awards to the 11 Named Plaintiffs (up to $20,000 each) and to the additional deposed Plaintiffs (up to $5,000 each). Service awards "are fairly typical in class action cases [and] are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012) (service awards appropriate in FLSA collective actions for same reasons they apply in Rule 23 class actions). The service awards proposed here are consistent with the amounts approved by other courts in this Circuit. See, e.g., *Graham v. Overland Solutions, Inc.*, 10 Civ. 0672 BEN, 2012 WL 4009547, at *8 (S.D. Cal. Sept. 12, 2012) (awarding $25,000 to each named plaintiff); *Garner v. State Farm Mut. Auto. Ins. Co.*, 08 Civ. 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more") (collecting cases). The Notice explains that the service awards are for the Named and deposed Plaintiffs' risks, their representation of the other Plaintiffs, and for their time and efforts on behalf of the hundreds of TMs and RSRs who will recover unpaid overtime wages. As part of Plaintiffs' future motion to approve the FLSA settlement, Plaintiffs will ask the Court to approve service payments.

## 3. Attorneys' Fees and Costs

Under the FLSA, Plaintiffs are entitled to recover attorneys' fees and costs. Because the FLSA is a remedial statute designed to protect workers and guarantee that minimum labor standards are applicable across the economy, fair compensation for attorneys who take on such

---

[10] https://www.fjc.gov/sites/default/files/2016/ClaAct11.pdf

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

litigation furthers the FLSA's purpose. *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective of ensuring that every employee receives "a fair day's pay for a fair day's work"). Section 216(b) of the FLSA provides that where an employee prevails in an action, attorneys' fees under FLSA are mandatory. *Alyeska Pipeline v. Wilderness Society*, 421 U.S. 240, 261, fn. 34 (1975); *Yue Zhou v. Wang's Restaurant*, 05 Civ. 0279 PVT, 2007 WL 2298046, 1 (N.D. Cal. Aug. 8, 2007) ("Because a court supervised settlement of FLSA overtime claims is ultimately reduced to a judgment, under the FLSA an award of reasonable fees is mandatory."). Fees of one-third are typical in FLSA cases. *Goodwin*, pp. 6-7; *Ambrosino v. Home Depot U.S.A., Inc.*, 11 Civ. 1319 L(MDD), 2014 WL 3924609, at *2 (S.D. Cal. 2014) (awarding fees of 33.3% in an FLSA settlement); *Boyd v. Bank of Am. Corp.*, 13 Civ. 0561-DOC, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (same); *Rodriguez v. SGLC Inc.*, 2:08 Civ. 1971-MCE-KJN, 2014 WL 229221, at *2 (E.D. Cal. Jan. 17, 2014) (approving attorneys' fees in the amount of 34% of the settlement). In addition, litigation costs are also recoverable. *In re Media Vision Tech Sec. Litigs.*, 913 F. Supp. at 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 391-92 (1970)) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement.").

The Notice informs Plaintiffs of the attorneys' fees and costs. The settlement agreement provides for attorneys' fees of up to one-third of the settlement and an additional amount for costs, including costs for the settlement administrator.[11] These amounts are consistent with the terms of each of the opt-ins' Court approved consent to sue forms.[12] Thus, when Plaintiffs move for

---

[11] Costs are estimated at approximately $230,000 plus an approximately $21,000 for the settlement administrator. Dunn Dec. ¶ 40.

[12] "I understand that if Plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment amount on a pro rata basis with all other plaintiffs. I understand that the attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendant or 1/3 of my gross settlement or judgment amount, whichever is greater." See, Dkt. 322-1.

JOINT MOTION
(3:13-cv-05136-RBL) - 11

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

1    approval of the FLSA settlement — after the Notice period expires — Plaintiffs' Counsel will also

2    ask the Court to approve attorneys' fees and costs.

3    **B. Preliminary Approval of the FLSA Settlement**

4    Sometimes, in conjunction with issuing notice, courts enter a preliminary approval order of

5    the FLSA settlement. This is not necessary here, however, because the due process concern is to

6    ensure that plaintiffs are sent notice and provided the opportunity to object. *Hodge v. Signia Mktg.,*

7    *Ltd.*, 2017 WL 5900344, at *2 (D. Colo. Nov. 30, 2017) (plaintiffs' counsel issued notice). Other

8    courts engage in a preliminary assessment of the settlement. *In re Am. Fam. Mut. Ins. Co. Overtime*

9    *Pay Litig.*, 2010 WL 9593848, at *1 (D. Colo. Oct. 6, 2010) (asking if "the settlement is non-

10   collusive and within the range of reasonableness such that notice of the settlement to Collective

11   Action Members is appropriate.").

12   Any preliminary assessment should be done under the FLSA standard for approving

13   settlements. Most courts evaluate FLSA settlements under the Eleventh Circuit's *Lynn's Food*

14   *Stores* standard. *Lynn's Food Stores, Inc.*, 679 F.2d at 1350, *Grewe v. Cobalt Mortg., Inc.*, C16-

15   0577-JCC, 2016 WL 4014114, at *1 (W.D. Wash. July 27, 2016)*; Roberts v. City of Chula Vista,*

16   16 Civ. 1955-MMA (DHB), 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017); *Campanelli v.*

17   *Hershey Co.*, C 08-1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal. May 4, 2011). Under *Lynn's*

18   *Food Stores* (1) an FLSA settlement must involve the resolution of a bona fide dispute over an

19   FLSA provision and (2) the settlement must be fair and reasonable. *Grewe v. Cobalt Mortg., Inc.*,

20   2016 WL 4014114, at *1 (W.D. Wash. July 27, 2016) (quoting *Lynn's Food Stores*; 679 F.2d at

21   1350, *Goodwin v. Citywide Home Loans, Inc.*, 8:14 Civ. 00866-JLS-JCG, Doc. 66, p. 4 (C.D. Cal

22   Nov. 2, 2015)). A court's involvement in the settlement of FLSA claims "has less to do with the

23   due process rights of those to be bound by a settlement, and more to do with the named plaintiffs'

24   interest in vigorously pursuing the litigation and the district court's interest in 'managing collective

25   actions in an orderly fashion.'" *Trauth v. Spearmint Rhino Companies Worldwide, Inc.*, EDCV 09-

26   01316-VAP, 2012 WL 4755682, at *5 (C.D. Cal. Oct. 5, 2012); accord *Goodwin*, 8:14 Civ. 00866-

27   JLS-JCG at p. 3; *Campanelli v. Hershey Co.*, C 08–1862 BZ, 2011 WL 3583597, at *1 (N.D. Cal.

28   May 4, 2011). "'If a settlement in an employee FLSA suit does reflect a reasonable compromise

1    over issues . . . that are actually in dispute,' the district court may 'approve the settlement in order

2    to promote the policy of encouraging settlement of litigation.'" *Otey v. CrowdFlower, Inc.*, 12 Civ.

3    05524-JST, 2016 WL 304747, at *3 (N.D. Cal. Jan. 26, 2016) quoting *Lynn's Food Stores*, 679

4    F.2d at 1354.

5    ### 1.   A Bona Fide Dispute Exists Between the Parties

6            This litigation included many bona fide disputes ranging from whether TMs and RSRs are

7    due overtime wages at all, to the correct measure of damages. The issues were actively litigated

8    over the course of more than four years and until just days before the start of trial. For example,

9    Kellogg denied that Plaintiffs were due any overtime wages at all and maintained throughout the

10   litigation that it properly classified TMs and RSRs as exempt from the FLSA overtime

11   requirements under the outside sales, administrative, or combination exemptions. It raised an

12   affirmative statute of limitations defense that could have reduced recovery of FLSA claims from

13   three to two years. See 29 U.S.C. § 255 (providing for a two-year statute of limitations unless

14   employee can establish employer acted willfully). Also unresolved was whether the fluctuating

15   workweek method of calculating damages would apply. If the fluctuating workweek applied, then

16   damages would decrease by more than 70%. Kellogg also raised a good faith defense to paying

17   liquidated damages. Moreover, RSRs and TMs had an affirmative burden to establish that the

18   overtime hours that they worked for both the testifying and non-testifying class members. There is

19   no question that bona fide disputes exist between the parties.

20   ### 2.   The Proposed Settlement Is Fair and Reasonable

21           In determining fairness, courts consider the settlement negotiations between the parties, the

22   settlement amount to be paid to the plaintiffs, the individual settlement amounts to each person, the

23   scope of the release, and the litigation risks. *Ambrosino v. Home Depot U.S.A, Inc.*, 2014 WL

24   3924609, at *1 (S.D. Cal. Aug. 11, 2014); *Goudie v. Cable Commun., Inc.*, 08 Civ. 507-AC, 2009

25   WL 88336, at *1 (D. Or. Jan. 12, 2009). Although the Court does not need to consider these factors

26   now, they do establish this settlement as fair.

27

28

JOINT MOTION                                                     GETMAN, SWEENEY & DUNN, PLLC
(3:13-cv-05136-RBL) - 13                                         260 FAIR STREET
                                                                 KINGSTON, NY 12401
                                                                 TELEPHONE: (845) 255-9370

1

### a.   The Settlement Is the Result of Arm's Length Negotiations

When a settlement is the result of arm's-length negotiations and with the assistance of a mediator then there is a presumption that the settlement is "the product of serious, informed, non-collusive negotiations." *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014). See also, *Lewis v. Wells Fargo & Co.*, 08 Civ. 2670, Doc. 315, p. 4 (N.D. Cal. April 29, 2011) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"). Here, the settlement resulted after years of litigation, extensive discovery and trial preparation, and four mediations with the assistance of two different experienced mediators, including James A. Smith. The parties were also represented by experienced wage-and-hour attorneys, who have negotiated many settlements on behalf of employers and workers. Thus, both sides were in a strong position to assess their risks and liabilities. Accordingly, there is a presumption that the settlement is fair and reasonable. *Lewis*, p. 4 (N.D. Cal. April 29, 2011).

### b.   Plaintiffs' Litigation Risks Are Significant

FLSA settlements are fair and reasonable when plaintiffs' counsel considers the various risks and uses the employees' individual wage and hour data. *Ambrosino v. Home Depot U.S.A, Inc.*, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014); *Hand v. Dionex Corp.*, 06 Civ. 1318-PHX-JAT, 2007 WL 3383601, at *1 (D. Ariz. Nov. 13, 2007) (settlement fair because "the distribution directly relates to each Plaintiff's length of employment with Defendant."). Here, each Plaintiff's recovery is based on their position, length of employment, the wages they received, and hours worked. There were many risks in this case, including whether Plaintiffs could prove Kellogg willfully violated the FLSA, proving the number of hours worked, and proving the merits of the case. Further, as described above, this case involved many bona fide disputes, any one of which could have substantially reduced the Plaintiffs' recovery. The settlement reflects these litigation risks. *Lewis,* p. 4.

### c.   Plaintiffs' Recovery Is Fair and Reasonable

Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Between 2007 and 2015 the

JOINT MOTION
(3:13-cv-05136-RBL) - 14

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

average per plaintiff wage-and-hour action recovery was $1,097. See, NERA Economic Consulting, "Trends in Wage and Hour Settlements: 2015 Update."[13] Here, the average recovery is approximately $16,000. Excluding service payments, the range of recovery extends from a minimum payment of $500 to over $54,000. The recovery is also in line with the risks Plaintiffs faced in proving their case. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998) (holding that settlement should be reflection of total value of claims discounted by risks and costs of litigation). Also, considering the risks, courts within this Circuit regularly approve settlements that are less than 15% of the total damages. *See, Deaver v. Compass Bank,* 13 Civ. 00222-JSC, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (given risks, recovery equal to 10.7% of total potential liability exposure reasonable); *Ma v. Covidien Holding, Inc.*, 12 Civ. 02161-DOC (RNBx), 2014 WL 360196, at *5 (C.D. Cal. 2014) (9.1% of total value of action "within the range of reasonableness"); *Stovall-Gusman v. W.W. Granger, Inc.*, 13 Civ. 02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (concluding that settlement providing 10% of potential recovery "within the range of reasonableness in light of the risks and costs of litigation"); *Balderas v. Massage Envy Franchising, LLC*, 12 Civ. 06327 NC, 2014 U.S. Dist. LEXIS 88866, at *16, 2014 WL 3610945 (N.D. Cal. July 21, 2014) (granting preliminary approval of net settlement amount representing 5% of projected maximum recovery). Here, on average Plaintiffs recover almost 15% of maximum damages they could have received. This percentage is well within the range that courts approve and is appropriate given the high risks.

Not only does the settlement recover a significant amount for each Plaintiff, it also provides them with a recovery without having to go through a long trial and appeal process and bear the risk of being unsuccessful. Accordingly, the settlement amount is fair and reasonable.

### d.  The Settlement's Release Provision Is Proper

Courts also review the scope of the release in evaluating whether the settlement is reasonable. If the release tracks the breadth of the allegations in the action then courts find that the release is proper. *Goodwin v. Citywide Home Loans, Inc.*, 8:14 Civ. 00866-JLS-JCG, Doc. 66, p. 6

---

[13]Available at http://www.nera.com/publications/archive/2015/trends-in-wage-and-hour-settlements-2015-update.html.

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

1    (C.D. Cal. Nov. 2, 2015); *Ambrosino v. Home Depot U.S.A, Inc.*, 2014 WL 3924609, at *2 (S.D.

2    Cal. Aug. 11, 2014) (finding that the revised release "appropriately track[ed] the breadth of

3    Plaintiffs' allegations"). Here, the release is tailored to the claims that were raised or could have

4    been raised in the case. Other than the Plaintiffs who receive an incentive award, Plaintiffs will

5    release only claims that were raised, or could have been raised, in the case. The release extends

6    only until the date that the settlement agreement is finally approved. Thus, the release confirms that

7    the settlement is fair and reasonable.

8    **III.    CONCLUSION**

9            Given the substantial settlement, the parties respectfully request that the Court: 1) authorize

10   the parties to issue the Notice in Exhibit 2 to the Plaintiffs; 2) set a final approval hearing date; and

11   3) enter the order attached as Exhibit 3.

JOINT MOTION
(3:13-cv-05136-RBL) - 16

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

1 | Dated: March 14, 2018

Respectfully Submitted,

2

*/s/ Matt Dunn*_____

3 | Matt Dunn, *pro hac vice*
Michael J.D. Sweeney, *pro hac vice*

4 | **GETMAN, SWEENEY & DUNN, PLLC**
260 Fair Street

5 | Kingston, NY 12401
phone: (845) 255-9370 / fax: (845) 255-8649

6 | email: mdunn@getmansweeney.com
email: msweeney@getmansweeney.com

7

8 | Michael C. Subit, WSBA No. 29189
Frank Freed Subit & Thomas

9 | Suite 1200
Hoge Building

10 | 705 Second Avenue
Seattle, WA 98104-1729

11 | Telephone: (206) 682-6711
Fax: (206) 682-0401

12 | msubit@frankfreed.com

13

14 | *Attorneys for Plaintiffs*

15

16 | Dated:  March 14, 2018

**GREENBERG TRAURIG LLP**

17

*/s/ James N. Boudreau*_____

18 | James N. Boudreau, pro hac vice
GREENBERG TRAURIG, LLP

19 | 2700 Two Commerce Square
2001 Market Street

20 | Philadelphia, PA 19103
Telephone: (215) 988-7833

21 | Fax: (215) 988-7801
boudreauj@gtlaw.com

22

23 | James M. Nelson, WSBA No. 44652
GREENBERG TRAURIG, LLP

24 | 1201 K Street, Suite 1100
Sacramento, CA 95814

25 | Telephone: (916) 442-1111
Fax: (916) 448-1709

26 | nelsonj@gtlaw.com

27

28 | *Attorneys for Defendants Kellogg Company and*
*Kellogg Sales Company*

JOINT MOTION
(3:13-cv-05136-RBL) - 17

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370