1

2

**Honorable Ronald B. Leighton**

3

4

5

6

7

8

9

10

11

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

12

13

**PATRICIA THOMAS, et al.,**

14

        **Plaintiffs,**

15

16

**v.**

**CASE NO.: 3:13-cv-05136-RBL**


**DECLARATION OF MATT DUNN**

17

**KELLOGG COMPANY and KELLOGG**
**SALES COMPANY,**

18

        **Defendants.**

19

20

21

22

23

24

25

26

27

28

DUNN DECLARATION
(3:13-cv-05136-RBL)

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

1     1.     I am a partner in the firm of Getman, Sweeney & Dunn, PLLC ("GSD") in

2  Kingston, New York, Plaintiffs' counsel herein. GSD is a seven-attorney firm that focuses on

3  representing plaintiffs in individual and class-wide violations of federal and state wage-and-hour

4  laws.

5     2.     I make these statements based on personal knowledge and would so testify if called

6  as a witness at trial.

7     3.     Attached as Exhibit 1 is the updated list of the 750 Plaintiffs. The parties corrected

8  the list to account for three Plaintiffs who are not a part of the case and three Plaintiffs who are part

9  of the case.

10 **The Litigation**

11    4.     Named Plaintiff, Patricia Thomas, filed this case in February 2013 as a Fair Labor

12 Standards Act (FLSA) collective action on behalf of Territory Managers and Retail Store

13 Representatives (TMs and RSRs) for unpaid overtime claims. She also filed this as a Washington

14 State Rule 23 class action. Dkt. 1.

15    5.     As a result of the number of people, the complexity of the claims and defenses, and

16 litigation against a Fortune 500 company[1] (currently ranked 216), discovery was extensive. It

17 encompassed discovery from Kellogg and from every Plaintiff, including over 50 depositions that

18 took place across the country.

19    6.     The parties engaged in substantial motion practice ranging from Plaintiffs' motion

20 for FLSA conditional certification (Dkt. 81), motions to compel (Dkt. 256, 258, 311, 318, 357,

21 336), summary judgment (Dkt. 394 and 397), and motions in limine (Dkt. 336, 442, 445, and 529).

22    7.     Because this case settled days before trial, significant pre-trial work occurred,

23 including extensive expert and lay witness preparation, logistics coordination, such as scheduling

24 Kellogg's witnesses' testimony in Plaintiffs' case, negotiating jury instructions, and various

25 stipulations. Dkts. 420 (jury instructions), 496 (pretrial order), and 518 (neutral statement of the

---

[1] http://fortune.com/fortune500/kellogg/

28 DUNN DECLARATION
   (3:13-cv-05136-RBL) 1

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

1  case).

2       8.     Further, throughout litigation, the parties attempted to resolve the case through four

3  mediations, working with former U.S. Magistrate Judge Diane Welsh and Seattle-based mediator

4  James A. Smith. Dkt. 438.

5  **Notice**

6       9.     At the parties' request, the Court preliminarily approved the settlement and

7  authorized Notice to the Plaintiffs. Dkt. 535.

8       10.     The settlement administrator mailed Plaintiffs the Court-authorized Notice.

9  Declaration of Michelle J. Kopperud, Project Manager for Analytics Consulting (Kopperud Dec.),

10  Plaintiffs' Counsel also emailed Notices to Plaintiffs who were accidently left off the list of 750

11  Plaintiffs and to Plaintiffs whose notices were returned without a forwarding address. The

12  Settlement Administrator was to find a current address through skip trace.

13       11.     The Notice provided the Plaintiffs with estimated recovery and the amount for

14  attorneys' fees and service payments, and it explained that these costs would all be deducted from

15  the settlement amount. Dkt. 534-3 (approved Notice). Other than Plaintiffs who will receive a

16  minimum payment, Plaintiffs will receive more money than the estimated amount stated in the

17  Notices they received.

18       12.     The Notice also informed Plaintiffs of their rights, including their right to object to,

19  or opt-out of, the settlement and preserve their wage and hour rights. Dkt. 534-3 (approved Notice).

20       13.     No Plaintiff opted out of the settlement. Three Plaintiffs objected (but did not opt-

21  out), and even those plaintiffs ultimately withdrew their objections. Kopperud Dec.

22       14.     After each objection was received, Plaintiffs' Counsel spoke with the three Plaintiffs

23  and answered their questions and concerns.

24       15.     No Plaintiff opted out of the settlement. Kopperud Dec. The three objecting

25  Plaintiffs withdrew their objections after speaking with Plaintiffs' Counsel. Kopperud Dec.

26

27

28

DUNN DECLARATION
(3:13-cv-05136-RBL) 2

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

**Settlement Amounts and Distribution**

16.     After deductions for fees, costs and service payments, the average recovery is approximately $14,200 ($5,496,595 ÷ 750). Each Plaintiff's settlement allocation is based on his or her pay, and weeks worked within the position during the statute of limitations. The Morning Foods RSR settlement allocation is calculated based on a 45-hour workweek until 2013 when Kellogg eliminated the position. The Snack TM position settlement allocation is based on a 55-hour workweek until August 2017.[2]

17.     From the gross settlement amount, Plaintiffs deducted service payments, attorneys' fees and costs, and settlement administration costs. Dkt. 534-2, Settlement Agreement, § II(B). The remaining amount shall be distributed on a prorated basis, using each Plaintiff's total damages. *Id.* All Plaintiffs will receive a minimum payment of $500.

18.     As part of the settlement, Plaintiffs will release their wage-and-hour claims, and those Plaintiffs who receive a service payment will provide Kellogg with a general release. Dkt. 534-2, Settlement Agreement, § IX.

19.     If the Court approves of the settlement and there are no appeals, then the settlement administrator will mail settlement checks within 14 days after the settlement becomes effective. Dkt. 534-2, Settlement Agreement, § XI(B). Plaintiffs then have nine months to cash their settlement checks. Dkt. 534-2, Settlement Agreement, § VII(B)(5). After that, the settlement administrator will deposit any money remaining in the qualified settlement fund with the applicable state department of unclaimed funds. Dkt. 534-2, Settlement Agreement, § VI(A)(8).

20.     On average, Plaintiffs recover almost 15% of the maximum damages they could have received.

**Litigation Disputes**

21.     This litigation included many disputes between the parties, ranging from whether

---

[2] In August 2017, Kellogg eliminated the TM position and its Snacks Division Direct-Store-Delivery ("DSD") model.

DUNN DECLARATION
(3:13-cv-05136-RBL) 3

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

TMs and RSRs are due overtime wages at all, to the correct measure of damages. For example, Kellogg denied that Plaintiffs were due any overtime wages at all and maintained throughout the litigation that it properly classified TMs and RSRs as exempt from the FLSA overtime requirements under the outside sales, administrative, or combination exemptions. It also disputed Plaintiffs' position that their claims were subject to a three—rather than a two—year statute of limitations. Also unresolved was the method of calculating damages. If the Court applied a half-time overtime premium, as Kellogg argued it should, then damages would decrease by approximately 70%. Kellogg also raised a good faith defense to paying liquidated damages. Moreover, RSRs and TMs had an affirmative burden to establish the overtime hours that they worked for both the testifying and non-testifying class members. These issues were actively litigated over the course of more than five years and until just days before the start of trial.

22.     If Plaintiffs lost on willfulness, and liquidated damages, and overtime premium issues, but prevailed on hours and defeated the exemptions, 146 Plaintiffs would have recovered nothing. And the total recovery would then have been less than the amount to be distributed to the Plaintiffs.

**Service Awards**

23.     The settlement provides for service payments of $20,000 each to the Named Plaintiffs and $5,000 each to the deponents, who participated in the prosecution of the claims and the negotiation of settlement. Dkt. 534-2, Settlement Agreement §IV(B).

24.     The Named Plaintiffs provided testimony to support FLSA conditional certification. Dkt. 86 and 133-4 (Gibson Dec. and Deposition), Dkt. 91 and 133-7 (Sayedi Dec. and Deposition), Dkt. 93 and 133-1 (Thomas Dec. and Deposition); Dkt. 133-3 (Dye Deposition); Dkt. 133-2 (Dowling Deposition). Both the Named Plaintiffs and deponents served as discovery representatives because they sat for depositions. All were prepared to testify at trial either in person or via video. Robert Gibson, Bruce Johnson, Patricia Thomas, Laura Wisby, and Judy Brashear and deponent declarations of Aleta Stock, Gregory Oyster, Michael Carns, Kelly Moore (Kivett),

DUNN DECLARATION
(3:13-cv-05136-RBL) 4

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

Thomas Perteete, and Michael Walz Declarations. Further, the Named Plaintiffs represented the other 739 Plaintiffs during the four mediations, reviewed and approved the settlement agreement, and authorized Plaintiffs' Counsel to settle the case. After weighing Counsel's advice, the Named Plaintiffs ensured that the remaining 739 Plaintiffs received a significant value in the face of significant risks. Both the Named Plaintiffs and deponents spent a considerable amount of time educating Plaintiffs' counsel about the case, providing declarations, producing discovery, preparing for trial, and attending depositions. They also sacrificed time with their families and time to tend to their personal issues, including medical conditions. The Named and testifying Plaintiffs also bore the additional risk of potential industry repercussions by publicly bringing claims against Kellogg.[3] Indeed, many Plaintiffs were concerned about potential retaliation. Gibson, Johnson, Thomas, Wisby, and Brashear and deponent declarations of Stock, Oyster, Carns, Kelly Moore (Kivett), Perteete, and Walz Declarations.

25.    No Plaintiff objected to the service payments. Kopperud Dec. ¶ 12.

26.    Five plaintiffs signed declarations affirmatively endorsing the service awards, noting that they would not or could not have taken the time to sit for depositions. Declarations of Loren Gerwick, Eddy Miller, Deborah Ternet, David Updyke and Susan Mayhugh.

27.    Because perceived risks to those who publicly step forward to sue their employer cause many meritorious suits never to be brought, it is important to the FLSA's remedial purposes that individuals who do assume such risks are rewarded. Plaintiffs' Counsel regularly hears from individuals who learn of their rights, but ultimately do not step forward to assert them due to the fear of long-term consequences associated with publicly suing one's employer. For individuals to step forward, to sit for depositions, and to challenge corporate practices takes immense courage.

**Attorneys' Fees**

28.    The Named Plaintiff agreed in their individually-negotiated retainers that Plaintiffs'

---

[3] See the declarations of the Named Plaintiff Robert Gibson, Bruce Johnson, Patricia Thomas, Laura Wisby, and Judy Brashear and deponent declarations of Aleta Stock, Gregory Oyster, Michael Carns, Kelly Moore (Kivett), Thomas Perteete, and Michael Walz.

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

1   Counsel would recover up to one-third of the gross settlement, or counsel's hourly rate, whichever

2   was greater. In the Consent to Sue forms, which the Court approved (Dkt. 166), and the forms that

3   each opt-in Plaintiff signed and submitted to the Court state "I understand that the fees retained by

4   the attorneys will be either the amount received from the defendant or 1/3 of my gross settlement

5   or judgment amount, whichever is greater." *See* Dkt. 287-1. Named Plaintiffs all signed the

6   settlement agreement, which provided for attorneys' fees in the amount of one-third of the gross

7   settlement. Dkt. 534-2, Settlement Agreement § III(A). The Court-authorized Notice also explained

8   the allocation of the settlement fund including the amount of fees. Dkt. 534-3, Notice.

9        29.     This case involved complex factual and legal questions involving FLSA issues and

10   complex procedural issues regarding collective litigation. Kellogg raised 27 affirmative defenses,

11   including complex issues of fact and law. Kellogg's Answer, Dkt. 232. The motions for FLSA

12   certification and decertification, summary judgment, and the pretrial motions also raised complex

13   legal issues. See Kellogg decertification motion, Dkt. 392, p. 7 ("Accordingly, whether Kellogg

14   properly classified a particular Plaintiff, much less an entire class, is a complex endeavor requiring

15   the application of plaintiff-specific facts to multiple elements across exemptions."). The case also

16   involved complex issues regarding the discovery and analysis of electronically-stored information

17   for the purpose of determining the hours Plaintiffs worked and the duties they performed.

18        30.     During the litigation, Plaintiffs' Counsel did not receive any fees and undertook the

19   financial risk of unsuccessful litigation. Under the terms of the agreement, if Plaintiffs had been

20   unsuccessful, Plaintiffs' Counsel would not have recovered any fees or costs. Counsel stood to gain

21   nothing in the event the case was unsuccessful and would have lost the firm's investment in the

22   case, overhead, and salaries required to pay attorneys and paralegals with excellent credentials and

23   experience.

24   **Firm Qualifications**

25        31.     Getman, Sweeney & Dunn, PLLC currently concentrates its practice on FLSA and

26   other wage and hour litigation, though we have also handled a variety of other employment matters

27

28   DUNN DECLARATION
    (3:13-cv-05136-RBL) 6

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

for employees. All litigation of the firm is handled on a contingent basis. The firm is thus almost entirely dependent on attorneys' fees awarded in cases brought under the fee shifting statutes (FLSA, state wage and hour, etc.). Occasionally, we have performed hourly work on behalf of other firms for which we have billed at and received payment at our customary hourly rates.

32.     In addition to this case, the firm is currently handling litigation around the U.S., including collective and class actions in the Southern District of New York, a class action and appeal in the 9th Circuit (from the District of Arizona), a collective action in the Western District of Wisconsin, a collective action in Western District of Washington, a collective action in the Eastern District of Michigan, a collective and class action in the District of South Carolina and a collective action in the District of Connecticut. For a summary list of major litigation currently under litigation by the firm, see the firm's website at http://getmansweeney.com/current-cases.

33.     The firm is regularly approved as class counsel, and has never not been approved. *See above.* And for the most recent decision, *see Roseman v. Bloomberg, L.P.,* 1:14-cv-02657-DLC-KNF (S.D.N.Y.) (Certifying class noting, Getman, Sweeney & Dunn "are qualified, experienced, and able to conduct complex litigation." At p. 14).

34.     Courts throughout the country have recognized Plaintiffs' Counsel's skill and experience in FLSA litigation. See, e.g., *Cilluffo*, 12 Civ. 00886-VAP-OPx, Dkt. 298, pp. 18-19 (C.D. Cal. April 3, 2018) ("The Court remains impressed by the result achieved in this case and the time and resources invested by Plaintiff's counsel."); *Herrington v. Waterstone Mortgage Corp.*, 3:11 Civ. 00779, Dkt. 157, p. 5 (W.D. Wisc. Feb. 12, 2018) ("After many years of arbitration, plaintiffs' counsel obtained excellent results for the class."); *Roseman v. Bloomberg L.P.,* 1:14-cv-02657-DLC-KNF, Dkt. 307 (S.D.N.Y. Sept. 21, 2017) (GSD "attorneys are qualified, experienced, and able to conduct complex litigation."); *Herrington v. Waterstone Mortgage Corp.*, AAA No. 01 14 0000 4860, p. 5 (July 5, 2017) (former Second Circuit Judge stating "Throughout, [Getman, Sweeney & Dunn[4] has] performed ably, efficiently, and ethically, displaying admirable expertise,

---

[4] Getman, Sweeney & Dunn is also referred to as "GSD."

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

professionalism, and diligence in representing their many clients."); *Bredbenner v. Liberty Travel, Inc.*, 09 Civ. 1248 MF, 2011 WL 1344745, at *20 (D.N.J. Apr. 8, 2011) ("Based on the Court's experience in supervising this litigation, [GSD] has demonstrated the utmost skill and professionalism in effectively managing these consolidated actions and bringing them to a successful conclusion.").

35.    Getman, Sweeney & Dunn consists of seven (7) full-time attorneys: myself, Dan Getman, Michael Sweeney, Lesley Tse, Artemio Guerra, Alexander Dumas, and Meagan Rafferty. During the course of this litigation, the firm also employed Kimberly Webster as an associate. Our firm also employs seven paralegals and two data analysts.

<u>Michael J.D. Sweeney</u>

36.    Mr. Sweeney graduated from Fordham Law School in 1996, and since then has litigated many wage-and-hour cases in federal court. The vast majority of those cases involved class litigation, either as a FLSA collective action, a Fed. R. Civ P. 23 class action or a hybrid of the two. Cases involving class and/or collective actions in which Mr. Sweeney acted as lead counsel include: *Morangelli, et al., v. Chemed Corp.*, 10-civ-00876 (BMC) (E.D.N.Y); *Bredbenner, et al., v. Liberty Travel , Inc.*, 2:09-civ-905 (WJM) (D.N.J.); *Connell, et al., v. Liberty Travel, Inc., et al.*, 2:09-civ-01248 (WJM) (D. NJ); *Brumley v. Camin Cargo Controls, Inc.,* 08-1798 (JLL) (D. NJ); *Clark, et. al v. Ecolab Inc.*, 07-civ-8623 (PAC) (S.D.N.Y.); *Ferry, et al. v. SGS, et al.*, 06-civ-7111 (RMB) (S.D.N.Y.); *Ayers, et al. v. SGS, et al.*, 03-civ-9078 (RMB) (S.D.N.Y.); *Haviland v. Basik Funding Inc.,* 04-civ-8193 (CLB) (LMS) (S.D.N.Y.); *Llandez et al v. Service One Jantorial, Inc. & Michael R. Burgos* 04-civ-2210 (SCR) (S.D.N.Y.); *Masson v. Ecolab, Inc.,* 04 Civ 4488 (PAC) (S.D.N.Y.); *Gorbich v. Swan Lake Resort,* 01 Civ 2210 (GAY) (S.D.N.Y.); *McKissick, et al. v. Corry Publishing, Inc.,* 08-civ-125 (MBC) (W.D. Pa.); *Pilone v. Basik Funding, Inc.,* 05-civ-3798 (AET) (D.N.J.); *Porta v. United States*, No. 05-14210 (J. Firestone) (Fed. Cl.); and *Williamson v. BellSouth Long Distance, Inc.*, 04-civ-09774 (RJH) (S.D.N.Y.). Mr. Sweeney has also successfully argued *Young v. Cooper Cameron Corp., Inc.*, 586

DUNN DECLARATION
(3:13-cv-05136-RBL) 8

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

F.3d 201 (2nd Cir. 2009) and *McCluskey v. J.P. McHale Pest Management* to the Second Circuit

Court of Appeals, 147 Fed. Appx. 203 (2d Cir. 2005).

37.     Mr. Sweeney is a member of the bar of New York State and is admitted to practice

before the U.S. District Courts for the Southern and Eastern Districts of New York, the U.S. Court

of Federal Claims, and the U.S. Court of Appeals for the Second Circuit.

38.     He graduated *cum laude* from Fordham Law School and received his Juris Doctor in

June 1996. While at Fordham, he served on the editorial board of the Fordham Law Review and

received the Louis J. Lefkowitz Scholarship. Upon graduation, he was inducted into the Order of

the Coif. He received a B.S. from the State University of New York at Albany in 1985.

39.     He began his legal career as a law clerk for the Honorable Lee P. Gagliardi, U.S.

District Court Judge for the Southern District of New York. After serving in Judge Gagliardi's

chambers for a year, he returned to Fordham Law School to help establish the Joseph R. Crowley

Program in International Human Rights. He continues to serve on the Crowley Program Board of

Directors.

40.     Mr. Sweeney joined the New York office of the law firm of Debevoise & Plimpton

in 1998. While at Debevoise he represented clients before the U.S. District Courts for the Southern

District of New York and District of New Jersey, New York Supreme Court, Delaware Chancery

Court, several federal and state administrative courts and agencies, and several arbitral forums. His

responsibilities at Debevoise included managing the asbestos defense in state and federal courts in

the Southeastern United States for a large multinational corporation. In that capacity he participated

in several trials. He also directed Debevoise's political asylum program and represented several

asylees in U.S. Immigration Court and before the Board of Immigration Appeals. When he left

Debevoise & Plimpton in the spring of 2002, his billing rate was $400 per hour.

41.     Mr. Sweeney's legal work has included several impact litigations, including *James*

*Williams, et al. v. The City of New York, et al.*, 00 Civ. 9062 (RWS) (S.D.N.Y.), a class action on

behalf of participants in New York City's needle exchange programs; *Hawa AbdHe Jama, et al., v.*

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

*United States, Correctional Services Corporation (Formerly "Esmor Correctional Services, Inc.")*
*et al.*, 97 Civ. 3093 (DRD) (D.N.J.), a class action on behalf of asylum seekers subjected to human
rights violations while detained in an I.N.S. facility in Elizabeth, New Jersey; and *In Re R-A-*
(Interim Decision No. 3403), an appeal first to the U.S. Court of Appeals for the 9th Circuit and
then to the U.S. Attorney General challenging a Board of Immigration Appeals' decision rejecting
domestic violence as a basis for asylum.

42.     He has served in various consultancies with several non-profit organizations
advancing human rights, judicial independence, and government ethics both in the United States
and abroad. Domestic work includes chairing the N.Y. State Bar Assoc. Subcommittee on Town &
Village Justice Courts (appointed by the President of the NYSBA in 2009), sitting as a
commissioner on the Independent Judicial Qualifications Evaluation Commission for New York's
Third Judicial District (reappointed by the Chief Judge of the State of New York in 2008), acting as
a member of the acting as a director of the Fund for Modern Courts, acting as a member of the NY
State Bar Association's Task Force on Government Ethics (appointed in 2010) and sitting on the
New York State Bar Association's Special Committee on Court Structure and Judicial Selection.
His international work includes work with Human Rights First (formerly known as the Lawyers
Committee for Human Rights), the Association of the Bar of the City of New York, and the
Crowley Program in International Human Rights.

43.     In 2002, Mr. Sweeney joined the faculty at Fordham Law School where he had
served as an adjunct Professor of Law at Fordham Law since 1998. The courses he taught included
Federal Civil Procedure; Professional Responsibility; International Human Rights; International
Humanitarian Law; Rights of Displaced Persons under International Law; and Introduction to the
U.S. Legal System.

44.     From January 2003 into 2007, Mr. Sweeney served as Legal Counsel to the New
York State Commission to Promote Public Confidence in Judicial Elections (a/k/a the Feerick
Commission), a 29-member Commission established by the Chief Judge of New York State, Judith

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

1   S. Kaye. As Legal Counsel, he was the principal draftsperson for the Commission's three Reports

2   to the Chief Judge.

3        45.    In addition to the Commission Reports, he contributed to the following publications,

4   either as author, contributing author or editor: Judicial Professionalism in a New Era of Judicial

5   Selection, 36 Mercer Law Review 859 (2004); Detention at Guantanamo Bay: A Linguistic

6   Challenge to Law, Human Rights Magazine (Winter 2003); Impunity in Guatemala: The State's

7   Failure to Provide Justice in the Massacre Cases, 16 American University International Law

8   Review 1115 (2001); Justice on Trial: State Security Courts, Police Impunity, and the Intimidation

9   of Human Rights Defenders in Turkey, 22 Fordham International Law Journal 2129 (1999);

10  Obstacles to Reform: Exceptional Courts, Police Impunity & Persecution of Human Rights

11  Defenders in Turkey, (Lawyers Committee for Human Rights and Crowley Program in

12  International Human Rights, July 1999); The Changing Role of Private Land Restrictions:

13  Reforming Servitude Law, 64 Fordham Law Review 661 (1995).

14       46.    Mr. Sweeney joined the Law Office of Dan Getman in September 2004. He became

15  a partner in the firm in January 1, 2009 and the firm became Getman & Sweeney, PLLC. During

16  this time he has lectured on wage and hour issues and authored amici briefs and commentary on

17  wage and hour issues on behalf of National Employment Lawyers Association and the National

18  Employment Law Project.

19      <u>Dan Getman</u>

20       47.    Dan Getman, the founding partner, graduated from Yale Law School and received

21  his Juris Doctor in June 1984. He received a B.A. from Indiana University in Political Science in

22  1980.

23       48.    He has over 33 years of legal experience since graduating from law school in 1984.

24  He was admitted to practice in all New York state courts in January, 1985 by the Appellate

25  Division, Third Judicial Department. He is also a member of the bars of the U.S. Supreme Court,

26  Second, Seventh, and Ninth Circuit Courts of Appeals, the Court of Appeals for the District of

27

28  DUNN DECLARATION                                   GETMAN, SWEENEY & DUNN, PLLC
    (3:13-cv-05136-RBL) 11                                     260 FAIR STREET
                                                        KINGSTON, NY 12401
                                                        TELEPHONE: (845) 255-9370

Columbia Circuit, the Southern, Eastern, Northern and Western Districts of New York, the District

of the District of Columbia, the District of Connecticut, and the Western District of Tennessee. He

has been admitted *pro hac vice* in many more jurisdictions (including this Court, the Middle

District of Florida, the Northern District of Georgia, the District of Arizona, the Southern and

Northern Districts of Ohio, and the Eastern District of Louisiana).

49.    He has handled class actions since approximately 1985. He has represented plaintiffs

in the following certified class actions; *Enea v. Bloomberg L.P.,* 1:12-cv-04656-GBD-FM

(S.D.N.Y.); *Jackson v. Bloomberg L.P.,* 1:13-cv-02001-JPO-GWG (S.D.N.Y.); *Murphy v.

Northern Dutchess Paramedics, Inc.,* 7:11-cv-05661-LMS (S.D.N.Y.); *Zimmerman v. SunTrust

Bank*, 1:09-cv-02116-RW (N.D. Ga.); *Habenicht v. Keycorp et al*, 1:11-cv-02619-DAP (N.D. Oh);

*Riddle v. SunTrust Bank*, 1:08-civ-1411 (RWS) (N.D. Ga.); *In re: DirecTech Southwest, Inc., Fair

Labor Standards Act (FLSA) Litigation*, 581 F.Supp.2d 1370, U.S. Jud. Pan. Mult. Lit., (E.D.L.A.

2008); *Martinez-Hernandez v. Butterball*, 5-07-civ-00174-H (E.D.N.C.); *Treadway v. BGS Const.,

Inc.*, 2007 WL 2815439 (S.D. W. Va.); *Montgomery v. TAP Enterprises, Inc.*, 07-cv-3069 (W.D.

Mo.); *Grant v. Homier, Inc.*, 06-cv-4262 (N.D. Ind.); *Land v. Gaston County, North Carolina*,

3:06-cv-181 (W.D.N.C.); *Gulino v. Symbol Technologies, Inc.*, 06-civ-2810 (E.D.N.Y.); *Laichev v.

JBM, Inc*., (S.D. Ohio); *Ayers v SGS Control Services, Inc.* (S.D.N.Y., Berman, J); *Lacon v.

MortgageIT, Inc.* (S.D.N.Y., Marrero, J); *Manley v. American Home Mortgage, Inc.* (S.D.N.Y.,

Koeltl, J.); *Crosby v. Independent Living, Inc.* (S.D.N.Y. Smith Mag. J, Robinson, J), *Bragg v.

Terrier Claims Service* 05 CV 7280 (S.D.N.Y. McMahon J.); *Clair v. Arnoff Moving & Storage,

Inc.* (S.D.N.Y. Brieant, J.); *Ramirez-Mejia v. AGY Corp*. (.S.D.N.Y.), *Gonzalez-Cortes v. M & M

Produce Farms and Sales, et al.* (S.D.N.Y., Fox, Mag. J); *Innocent et al. v. Putnam County*

(S.D.N.Y.); *Alston et al. v. Coughlin, et al.,* and *Anderson, et al. v. Coughlin*, *et al.* in the Southern

District of New York among many others.

50.    In addition to these class actions, he has been lead counsel in numerous collective

and individual actions under the FLSA. An incomplete list of such cases includes: *Van Dusen v.

DUNN DECLARATION
(3:13-cv-05136-RBL) 12

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

*Swift Transportation, Inc.,* 2:10-cv-00899-JWS (D. AZ) (for over 1,000 truckers); *Thomas v. Kellogg Company et al.,* 3:13-cv-05136-RBL (WDWA) (current 850 member collective action, state classes filed); *Cilluffo v. Central Refrigerated, Inc.,* 5:12-cv-00886-VAP-OP (C.D. Cal.) *Herrington v. Waterstone Mtg. Corp.*, 3:11 Civ. 00779 (W.D. Wis.) (175 collective action); *Allen v. SunTrust Bank*, 1:06-CV-3075-RWS, 2008 WL 4394732 (N.D. Ga. 2008); *Treadway v. BGS Const., Inc.,* 2007 WL 2815439, (S.D. W.Va.) (Summary Judgment and Collective Certification granted to plaintiffs); *Grant v. Homier, Inc.*, (N.D.I.N ); *Montgomery v. TAP Enterprises, Inc.* (W.D.M.O.); *Land v. Gaston County, North Carolina*, (W.D.N.C.) (collective action settlement for EMTs approved); *Malloy v. Image Industries*, 04 CIV 113-HLA (M.D.F.L); *Gorbich v. Swan Lake Resort Hotel*, (S.D.N.Y. collective settlement); *Hunter v. Sprint* (D.D.C.); *Gjurovich v. Emmanuel's Market* (S.D.N.Y.); *Ratajczak v. JoAnne's Bed and Back Stores, Inc*., 03 CV 02247 (D.D.C. RWR, J); *Rolon v. Tri-Enterprises, Inc.,* 98 CIV 7543 (S.D.N.Y. Barrington Parker, J.); *Scott v. Mallory-Kotzen Tire Co*. (S.D.N.Y., Brieant, J.); among many others.

51.     He has been involved in numerous administrative cases before various administrative tribunals including the NLRB and New York Department of Labor (including other minimum wage cases). He was also a panelist for the National Employment Lawyers' Association wage hour conference.

52.     In April 2015, he co-presented a paper and panel at the National Employment Lawyers Association's spring conference, Protecting Pay: Representing Workers With Wage Hour Claims. He previously made a similar presentation to a NELA/NY conference.

Matt Dunn

53.     I graduated from Lewis and Clark Law School (Portland, Oregon) and received my Juris Doctor in May 2003. I received a B.A. from Kalamazoo College (Kalamazoo, Michigan) in Economics in 1996 with a concentration in Environmental Studies.

54.     During law school I worked as an intern with Magistrate Judge Dennis J. Hubel in the District Court for the District of Oregon.

55.     I was admitted to practice in all Oregon state courts in September 2003. And I was admitted to practice in all New York state courts in June 2005 by the Supreme Court, Appellate Division, Third Judicial Department. I am also a member of the bars of the U.S. District Courts for the Southern, Eastern, and Northern Districts of New York and a member of the Seventh Circuit Courts of Appeals.

56.     I began my legal career as an associate public defender with Multnomah Defenders, Inc., in Portland, Oregon and worked with that office from September 2003 until April 2005.

57.     After moving to New York, I worked with Klein and Klein, Esqs., P.C., from November 2005 until September 2006 as an associate attorney. The firm focused on asset protection and assisting the elderly. I then joined Ulster County Public Defender's office in December 2006 and continued to work as a part-time public defender until May 1, 2009.

58.     I joined Getman & Sweeney as an associate attorney in January 2007 and became a partner in January 2016.

59.     Since joining the firm, I have handled a continuous caseload as co-counsel involving matters brought under the Fair Labor Standards Act, New York State Labor Laws, and other state labor laws. In addition to cases on behalf of individual plaintiffs, I am working, or have worked, on a variety of class and collective action cases including: *Castro v. C.R. England*, 5:18 Civ. 00655−CBM−JEM (C.D. Cal.); *Hegner v. Statewide Ambulette Service, Inc.*, 7:13 Civ. 02655-CS (S.D.N.Y.); *Castro v. Swift Transportation Co.*, 2:16 Civ. 03232 (C.D. Cal.); *Herrington v. Waterstone Mtg. Corp.,* Case No. 51 160 393 12 (American Arbitration Association); *Flores v. Swift Transportation Company et al*, 2:14 Civ. 02900-ABC-E (C.D. Cal.); *Smith v. Alamo Claim Service*, 1:13 Civ. 01481 (C.D. Ill.); *Banales v. Autoclaims Direct, Inc.*, 11 Civ. 2914 (S.D. Cal.); *Habenicht v. Keycorp*, 1:11 Civ. 02619 (N.D. Ohio); *Allen v. SunTrust Bank*, 06-civ-3075 (RWS) (N.D. Ga. 2006); *Bredbenner et al. v. Liberty Travel*, No. 2:09 Civ. 905 (WJM) (D.N.J.); *Brumley v. Camin Cargo Control, Inc.*, 08-civ-1798 (JLL) (D.N.J.); *Connell, et al., v. Liberty Travel, Inc., et al.*, 2:09 Civ. 01248 (WJM) (D. NJ); *English v. Ecolab, Inc.*, 06 Civ. 5672 (PAC) (S.D.N.Y.);

*Gulino v. Symbol Technologies, Inc.*, 06-civ-2810 (JG) (E.D.N.Y.); *Lovelace v. Wachovia Mortgage Corp., et al.*, 09 Civ. 00421 (JAB) (M.D.N.C.); *McKissick, et al., v. Corry Publishing, et al.*, 1:08-civ-125 (W.D. Pa.); *Mendoza v. Hotel Chandler, LLC*, 09-civ-8029 (RMB) (S.D.N.Y.); *Moreno v. United States*, No. 05-142C (Fed. Cl.); *Ostrowski v. Corry Publishing, et al.*, No. 13050-2008 (Court of Common Pleas, Erie County, Pennsylvania); *Porta v. United States*, No. 05-14210 (Fed. Cl. 2005); and *Riddle v. SunTrust Bank*, 1:08-civ-1411 (RWS) (N.D. Ga. 2006).

60.     As a public defender, I assisted hundreds of indigent clients in New York or Oregon State courts who were accused of committing misdemeanors and felonies. And I have taken over 20 cases to trial.

61.     For a summary of the qualifications of Getman, Sweeney & Dunn's attorneys and paralegals, see the firm's website at http://getmansweeney.com/attorneys_paralegals. The paralegals and data analysts have multiple Doctorate degrees and multiple Masters degrees.

Data Scientists

62.     Michael Russo as information technology specialist and his hourly rate is $275. He holds a Bachelor's Degree in Physics from Bard College. He has worked in the information systems field since 1984. He acted as programmer and database administrator for over a decade at a time before commercial inventory management packages were fiscally feasible for small and medium-sized businesses. He trained in Cisco Networking, Oracle SQL Database Administration, and Windows Enterprise operating systems in the year 2000, and then worked as a networking and database consultant. From 2002 to 2006, he was a technology consultant for the sales force of a data communication reseller. Since 2006, he has provided technology support, specializing in technology and e-discovery for GSD.

63.     Mr. Kandel joined the data science department as GSD in early 2015 and his hourly rate in $230. In addition to his work at the firm, he has performed analysis in the fields of chemistry, biostatistics, and finance leading to the publication of several peer-reviewed journal articles over the last decade. Mr. Kandel's work focuses on development of programming

DUNN DECLARATION
(3:13-cv-05136-RBL) 15

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

1  techniques utilizing languages such as Java, Python, SQL and VBA which are necessary to

2  accommodate the millions of data points that are generated in the firm's cases. These advanced

3  analytical techniques allow the firm to create the complex damage models, scour and clean data

4  from seemingly incoherent sources, perform in-depth data driven forensic investigations, and

5  create user friendly tools to explore data trends—which ensure that our clients receive fair and

6  equitable recoveries. Mr. Kandel graduated from Marist College with a Bachelor of Science in

7  Chemistry 2005; he received a M.S. in Chemistry in 2008 from the University Of Delaware; and a

8  M.S. in Computer Science from SUNY New Paltz in 2015.

9       64.    GSD's paralegals perform sophisticated case team work, as their knowledge of the

10  facts involves great detail—involving regular client communications, discovery production with

11  clients, explaining complex case-related information, and performing document management and

12  retrieval. This work requires complete familiarity with the parties' legal positions, procedural

13  measures, and litigation posture. GSD paralegals are unique insofar as the firm exclusively hires

14  highly-educated individuals to perform the role—all at a far lower cost than could be done had the

15  work been done by attorneys, even junior attorneys. GSD's paralegals all have post-graduate

16  degrees; they have a total of seven masters, or higher, degrees. For example, the paralegal with the

17  most time in the case, Misty Emerick, has a Masters Degree in Sustainable Communities from

18  Northern Arizona University. For full biography of GSD's paralegals, *see*

19  http://getmansweeney.com/attorneys_paralegals.

20       Lodestar

21       65.    GSD's hourly rates have been regularly approved by the Courts in class and

22  collective actions. *See e.g. Herrington v. Waterstone Mortgage Corp.*, 3:11-cv-00779-bbc (EDWI)

23  in which Doc. 125-3, a partial fee award in AAA arbitration approved GSD's 2017 rates, and

24  awarded Plaintiffs a 20% enhancement to the lodestar also to be paid by Defendant); *Murphy v.*

25  *Northern Dutchess Paramedics* 11 Civ. 5661 (S.D. N.Y. Aug. 15, 2014); *Clark v. Ecolab, Inc*.,

26  1:07 Civ. 08623-PAC, Dkt. 105 (S.D. N.Y May, 11, 2010), *Young v. Cooper Cameron*, 04 Civ.

27

28  DUNN DECLARATION                           GETMAN, SWEENEY & DUNN, PLLC
        (3:13-cv-05136-RBL) 16                  260 FAIR STREET
                                                 KINGSTON, NY 12401
                                                 TELEPHONE: (845) 255-9370

1   5968 (S.D. N.Y. Mar. 30, 2009), *Ayers, et al. v. SGS*, et al., 03 Civ 9078 (S.D. N.Y. Sept. 9, 2008),

2   and *Moreno v. U.S.*, 05 Civ. 142C (Federal Court of Claims Oct. 7, 2010). Rates were also

3   approved as lodestar cross-checks in *Cilluffo v. Central Refrigerated Services, Inc.* 12 Civ. 00886-

4   VAP-OPx, Dkt. 298, pp. 14-16 (C.D. Cal. April 3, 2018); *Castro v. Swift Transportation Co.,* 2:16

5   Civ. 03232-AB-E (C.D. Cal. April 17, 2017); *Driscoll v. The George Washington University*, 1:12

6   Civ. 00690-ESH, Dkt. 98, p. 23 (D. D.C. July 17, 2014) (approving GSD rates based on the Laffey

7   Matrix); *Morangelli v. Roto-Rooter Services Com.*, 1:10 Civ. 00876-BMC, Dkt. 292, p. 9 (E.D.

8   N.Y. Jan. 7, 2014) (awarding counsel fee request based on the percentage of the fund method)*;*

9   *Martinez-Hernandez v. Butterball*, 5-07 Civ. 00174-H (E.D. N.C. 2012) and *Salazar-Martinez v.*

10  *Fowler Bros. Farm,* 6:10 Civ. 06257 (W.D. N.Y. 2012); *Smith v. Nagai*, 1:10 Civ. 08237 (PAE)

11  (JCF), Dkt. 35 (S.D. N.Y. May 5, 2012); *Morocho v. Eddie*, 12 Civ. 0308 (VB) (LMS), Dkt. 100

12  (S.D. N.Y. Dec. 10, 2012); *Llandez v. Service One Janitorial,* 04 Civ. 2210 (SCR), Dkt. 22 (S.D.

13  N.Y. Jan. 25, 2007); *Williamson v. BellSouth,* 04 Civ. 9774 (RJH)(KNF), Dkt. 27 (July 21, 2006);

14  *Bragg v. Terrier Claims Services,* 05 Civ. 7280 (CM)(LMS), Dkt. 28 (S.D. N.Y. July 21, 2006);

15  *Crosby v. Independent Living, Inc.,* 02 Civ. 8314 (SCR)(LMS), Dkt. 33 (S.D. N.Y. Aug. 16, 2006);

16  *Gjurovich v. Emmanuel's Marketplace, Inc.,* 03 Civ. 1166 (LMS), Dkt. 74 (S.D. N.Y. March 22,

17  2006); *Brumley v. Camin Cargo Controls, Inc.,* 2:08 Civ. 01798-JLL-MAH, Dkt. 234 (D. N.J. Mar.

18  26, 2012); *Bredbenner et al. v. Liberty Travel*, 2:09 Civ. 905, 2011 WL 1344745, *22 (WJM) (D.

19  N.J. April 8, 2011).

20

21

22

23

24

25

26

27

28

DUNN DECLARATION
(3:13-cv-05136-RBL) 17

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

66.     The rates and lodestar in this case is set forth below:

| Getman, Sweeney & Dunn, PLLC | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hours** | **Rate** | **Lodestar** |
| Alex Dumas | Attorney | 191.10 | $ 355.00 | $ 67,840.50 |
| Matt Dunn | Partner | 2,797.42 | $ 665.00 | $ 1,860,284.30 |
| Dan Getman | Partner | 719.85 | $ 880.00 | $ 633,468.00 |
| Megan Rafferty | Attorney | 181.80 | $ 330.00 | $ 59,994.00 |
| Michael Sweeney | Partner | 1,110.50 | $ 765.00 | $ 849,532.50 |
| Kimberly Webster | Attorney | 364.10 | $ 385.00 | $ 140,178.50 |
| Jason Kandel | Data Scientist | 549.10 | $ 260.00 | $ 142,766.00 |
| Mike Russo | Senior Data Scientist | 1,549.90 | $ 310.00 | $ 480,469.00 |
| Paralegal | Paralegals | 6,456.51 | $ 215.00 | $ 1,388,149.65 |
| Clerical work | Clerical | 526.45 | $ 120.00 | $ 63,174.00 |
| **Subtotal** | | **14,446.73** | | **$ 5,685,856.45** |

| Frank Freed Subit & Thomas LLP | | | | |
|---|---|---|---|---|
| Michael C. Subit | Partner | 49 | $ 825.00 | $ 40,425.00 |
| Marc Cote | Partner | 2.8 | $ 595.00 | $ 1,666.00 |
| **Subtotal** | | **51.8** | | **$ 42,091.00** |

| Edward Tuddenham | | | | |
|---|---|---|---|---|
| Edward Tuddenham | Attorney | 264.2 | $ 880.00 | $ 232,496.00 |

| **Total** | **14,762.73 Hours** | | **$ 5,960,443.45** |
|---|---|---|---|

See Exhibit 2; Tuddenham Declaration; and Subit Declaration. In addition, GSD incurred a minimum of $33,722 in additional billings from April 5, 2018 to May 9, 2018, and many billing records were not captured. The total lodestar is $5,994,165.

67.     Attached as Exhibit 2 is a copy of GSD's billing records. Edits were made to correct spelling, add clarity, and redact confidential and/or sensitive information. Counsel made billing judgments to exclude records. Further, Plaintiffs' Counsel will continue to work on the case, which will include an appearance at the final approval hearing, monitoring payments to Plaintiffs, and answering clients' questions about the settlement.

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370

**Expenses**

68.      Plaintiffs' Counsel has incurred $239,223.73 in expenses. These expenses include filing fees, service of the complaint, copies, deposition transcripts, travel, postage, the mock trial, mediation fees, and lodging. Plaintiffs' expenses are provided in Exhibit 3. They are summarized by category below:

| Category | Amount |
|---|---|
| Consulting | $ 17,450.00 |
| Filing Fees | $ 876.00 |
| Firm Meetings | $ 81.64 |
| Legal Library | $ 12,983.91 |
| Lodging | $ 25,402.88 |
| Meals | $ 4,673.14 |
| Mediation Services | $ 23,265.90 |
| Office Supplies | $ 509.87 |
| Postage and Delivery | $ 7,103.95 |
| Printing and Reproduction | $ 37,238.39 |
| Telephone | $ 433.27 |
| Transcription/Stenographic | $ 48,057.31 |
| Travel | $ 58,910.67 |
| Witness fees | $ 2,142.00 |
| Edward Tuddenham Expenses | $ 94.80 |
| **Total** | **$ 239,223.73** |

69.      The cost for the settlement administrator is $20,990.

70.      All of these costs were necessary to the prosecution of the litigation and were incurred reasonably.

Dated: May 10, 2018                              Respectfully Submitted,

                                                 /s/ Matt Dunn
                                                 Matt Dunn, *pro hac vice*
                                                 **GETMAN, SWEENEY & DUNN, PLLC**
                                                 260 Fair Street, Kingston, NY 12401
                                                 phone: (845) 255-9370 / fax: (845) 255-8649
                                                 email: mdunn@getmansweeney.com

DUNN DECLARATION
(3:13-cv-05136-RBL) 19

GETMAN, SWEENEY & DUNN, PLLC
260 FAIR STREET
KINGSTON, NY 12401
TELEPHONE: (845) 255-9370